1

2

## UNITED STATES DISTRICT COURT

3

### DISTRICT OF NEVADA

4
* * *

CANDACE SLAGOWSKI, *et al.*,                    )

5                                                )

Plaintiff,                   )

6                                                )        2:11-cv-00142-MMD-VCF

v.                                               )

7                                                )        **O R D E R**

CENTRAL WASHINGTON ASPHALT, *et al.*,            )

8                                                )        (Motion to Stay Civil Proceedings (#73),
                                                 )        Counter-Motion for Attorney Fees , Court
9                                                )        Costs, and Sanctions (#81), Motion for
                                                 )        Sanctions (#98), Emergency Motion  for
10                                               )        Protective Order (#99), and Counter-Motion
                                                 )        for Attorney Fees, Costs, and Sanctions
11                                               )        (#101)).

Defendant.                   )

12 _____)

13          Before the court is defendants Central Washington Asphalt, Inc., Donald Hannon, James

14 Wentland and Jerry Goldsmith's Motion to Stay Civil Proceedings Pending Anticipated Criminal

15 Proceedings. (#73).   Third-Party Defendant Mitchell Zemke filed an Opposition (#78) and plaintiffs

16 Doreen Lea Law and Phillip Law (hereinafter "Law Plaintiffs") filed an Opposition (#79).  Counter-

17 Claimants Mitchell Zemke and Kathryn Zemke (#83), third-party defendants Chip Edward Fenton and

18 Fenton Trucking, LLC (hereinafter "Fenton Defendants")(#84), plaintiffs Anika Slagowski, Candace

19 Slagowski, Quentin Slagowski, Rowan Slagowski (hereinafter "Slagowski Plaintiffs") (#85), and the

20 Law Plaintiffs (#87) filed Joinders to Zemke's Opposition.  The defendants filed a Reply in Support of

21 the Motion to Stay. (#89).  Slagowski Plaintiffs filed a Supplemental Response (#116), and defendants

22 filed a Reply (#122).

23          Also before the court is the Law Plaintiffs' Counter-Motion for Attorney Fees , Court Costs, and

24 Sanctions. (#81).  Defendants Opposed the Counter-Motion in their Reply in Support of their Motion

25 to Stay (#89), and the Law Plaintiffs did not file a Reply.

26          Also before the court are the defendants' Motion for Sanctions Regarding Discovery Against

Third-Party Defendant Chip Fenton for Failure to Appear for His Deposition (#98), and *Emergency* Motion for Protective Order (#99).  Third-Party Defendant Zemke, Slagowski Plaintiffs, and the Fenton Defendants filed Oppositions to the *Emergency* Motion (#99).  (#100, #104, and #107).  Defendants filed a Supplement in Support of the Motion for Sanctions (#113) and a Notice of No Response to the Motion for Sanctions (#121).

Also before the court is Third-Party Defendants Mitchell Forest Zemke's Counter-Motion for Attorney Fees, Costs, and Sanctions.  (#101).  Slagowski Plaintiffs, the Law Plaintiffs, and the Fenton Defendants filed Joinders thereto.  (#102, #106, and #109).   Defendants filed an Opposition (#113), Third-Party Defendant Zemke filed a Reply (#118), and Counter-Claimant Mitchell Zemke and Plaintiff Kathryn Zemke filed a Joinder thereto (#120).

The court held a hearing on June 27, 2013.  (#123).

## I.    Procedural Background

On January 26, 2011, plaintiff Candace Slagowski filed a petition and order for appointment of guardian Ad Litem to initiate a wrongful death case (#1 and #2).  Plaintiff Candace Slagowski alleges that her husband, and the father of her minor children, died in an automobile accident, and that the children have a cause of action for wrongful death.  (#2-2).  On January 27, 2011, the court issued an order granting the motion to appoint guardian Ad Litem.  (#4).  On January 28, 2011, Slagowski Plaintiffs and plaintiff Patricia Dean filed a motion to remove Candace Slagowski as guardian Ad Litem for Patricia Dean.  (#5).  The court denied the motion (#5) on May 31, 2011.  (#29).  On June 9, 2011, Slagowski Plaintiffs filed a complaint for damages against Central Washington Asphalt, Inc. (referred to herein as "CWA" or "Central Washington"), Donald Hannon, James Wentland, and Jerry Goldsmith alleging claims for (1) general negligence/wrongful death and (2) exemplary damages.  (#30).

On July 22, 2011, defendants filed their answer, asserting seventeen affirmative defenses.  (#32). The parties filed their proposed discovery plan and scheduling order on November 28, 2011 (#38), which the court signed on December 12, 2011 (#39).  On May 1, 2012, defendants filed a motion for

leave to file third-party complaint.  (#40).  Slagowski Plaintiffs filed a non-opposition to the motion (#40) on May 15, 2012.  (#42).  The court granted the defendants' motion on May 17, 2012.  (#43). Defendants filed the third-party complaint (#44) on the same day.  Third-party defendants Chip Edward Fenton and Fenton Trucking, LLC (hereinafter "Fenton Defendants") filed their answer on July 17, 2012.  (#48).  Third-party defendant Mitchell Forest Zemke filed an answer to the third-party complaint and a counterclaim against all defendants on August 8, 2012.  (#53).

On August 31, 2012, defendants filed an answer to the counterclaim.  (#55).  The parties filed a proposed discovery plan on September 4, 2012 (#56), which the court signed on September 6, 2012 (#57).  On September 24, 2012, third-party defendant Doreen Law filed her answer to the third-party complaint.  (#59).  On November 6, 2012, third-party defendant Law filed a motion to consolidate cases (#62), and on November 8, 2012, third-party defendant Zemke and Slagowski Plaintiffs filed non-oppositions (#63 and #64).  On November 27, 2012, the court issued a minute order granting the motion to consolidate (#62).  (#67).  The consolidation order brought in Phillip Law and Kathryn Zemke.  *Id.* On February 20, 2013, plaintiff Candace Slagowski filed a petition and order to substitute William Terrel as guardian Ad Litem (#69), and the court granted the motion on March 11, 2013 (#71).

On April 8, 2013, defendants filed a motion to stay civil proceedings pending anticipated criminal proceedings (#73) and an *emergency* motion for protective order regarding depositions of defendants Hannon, Wentland, and Goldsmith ("individual defendants") (#74).  On April 9, 2013, third-party defendant Zemke filed an opposition to the *emergency* motion for protective order (#74).  (#75).

Defendants asked this court to issue a protective order to prevent the depositions of the individual defendants currently scheduled for April 18 and April 19, 2013, from going forward until the court has considered the parties' full briefing on the defendants' motion to stay proceedings (#73). (#74).  Defendants stated in the pending motion to stay proceedings, that they "seek a narrowly tailored stay of the depositions and testimonial discovery of Hannon, Wentland and Goldsmith pending the resolution of criminal proceedings that may arise from the accident."  (#73).

3

Defendants asserted in the *emergency* motion for protective order that they have "recent reason to anticipate criminal indictment," as "[t]he Nye County District Attorney's office recently confirmed that, although no criminal charges have been filed yet, it is actively reviewing the Nevada Highway Patrol traffic accident report of the motor vehicle accident at the center of this civil case and Hannon's, Wentland's and Goldsmith's conduct in relation to the accident." (#74). Defendants argued that the depositions undermine the defendants' "Fifth Amendment right against self-incrimination and threaten to unjustly prevent [d]efendants from defending against liability in this action." *Id.* Defendants also asserted that without a protective order, they will "be faced with the impossible decision of either asserting their Fifth Amendment privilege against self incrimination or waiving the privilege and testifying, as required for [d]efendants to comprehensively defend against civil liability in this case." *Id.*

Third-party defendant Zemke argued in his opposition that defendant Hannon should be subject to deposition and assert the Fifth Amendment privilege **"on a question by question basis** consistent with Nevada and Federal law." (#75)(emphasis in original). Zemke also argued that Wentland and Goldsmith have no basis to assert the Fifth Amendment, and that there are no parallel criminal proceedings and thus no real threat of prosecution. *Id.*

The court issued an order on April 9, 2013, granting the *emergency* motion for protective order regarding the depositions (#74) and staying the depositions until resolution of the motion to stay (#73). (#77). The court held that "[t]emporarily staying the depositions until the court rules on the pending motion to stay (#73) will not prejudice any of the parties," and that "[r]equiring the defendants to testify at their depositions before the court rules on the motion to stay (#73), however, *may* hinder defendants' ability to defend this action." *Id* (emphasis in original).

Oppositions to the motion to stay and joinders thereto were filed (#78, #79, #85, and #87), and Slagowski Plaintiffs filed a countermotion for attorneys' fees (#81). Defendants' filed a reply in support of their motion to stay (#73) and an opposition to the countermotion (#81). (#89). On May 8,

4

2013, the parties filed a stipulation to extend discovery (#92), which the court signed on May 10, 2013 (#93). On May 17, 2013, the court scheduled a hearing on the motion to stay (#73) and the countermotion for attorneys' fees (#81) for June 6, 2013. (#95). On May 28, 2013, defendants filed a motion for sanctions regarding Chip Fenton's failure to appear at his deposition (#98), and an *emergency* motion on order shortening time for protective order to stay the rogue deposition of Chip Fenton (#99). Third-Party defendant Zemke filed an opposition to the *emergency* motion (#100) and a countermotion for cost, fees, and sanctions (#101). On May 29, 2013, plaintiffs filed a joinder to Zemke's countermotion for costs, fees, and sanctions (#101). (#102).

The court entered a minute order on May 29, 2013, stating that "the deposition of Chip Fenton is stayed pending the resolution of Defendants' Emergency Motion (#99)," and scheduling a hearing on the *emergency* motion (#99), motion to stay (#73), and countermotion (#81) for June 6, 2013, at 1:30 p.m. (#103). On May 29, 2013, Slagowski Plaintiff filed an opposition to defendant's *emergency* motion for protective order regarding deposition of Chip Fenton (#99). (#104). On May 30, 2013, the Fenton Defendants filed an opposition to defendants' *emergency* motion for protective order (#99). (#107). The Zemkes filed a joinder in opposition to defendants' motion to stay civil proceedings. (#108). Fenton Defendants filed a joinder to Zemke's countermotion for costs, fees, and sanctions. (#109).

## II.  Motion To Stay Proceedings (#73)

### A.  Relevant Substantive Facts

The complaint arises from an accident allegedly caused by individual defendants, all drivers for defendant Central Washington Asphalt, trying to pass a slower semitruck driven by third-party defendant Fenton, which resulted in seven tragic injuries and one fatality. (#73). Mr. Fenton alleges that when he announced over the radio that the individual defendants were responsible for the accident, he heard someone say "I'm in trouble." *Id.* Individual defendants deny having any involvement and claim that they drove on with no knowledge of the accident. *Id.* The individual defendants were not

cited for the accident or criminally charged to date, but the accident report was given to the Nye District Attorney's Office and the Nevada Attorney General's Office for review. *Id.* The individual defendants assert that they recently learned that they may be indicted, and indicate that the statute of limitations for a misdemeanor passed, and that the statute of limitations for a felony charge expires on December 12, 2013. *Id.*

### B. Defendants' Arguments

Defendants argue that "[i]t is well-settled that a court has the authority to stay discovery in a civil case where a party faces concurrent criminal charges and the proceedings will be adversely affected. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995); *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989); *see also Aspen Fin. Servs., Inc. v. Eighth Jud. Dist. Ct.*, 128 Nev. Adv. Op. 57, 289 P.3d 201, 204-05 (2012)." (#73). Defendants state that without a stay of the depositions and testimonial discovery involving the individual defendants, the individual defendants will be in the "untenable position of choosing between their defense in this action and their Fifth Amendment privilege against self incrimination," and that "Central Washington Asphalt, Inc.'s ability to defend against claims of vicarious liability, through no fault of its own," will be in jeopardy. *Id.*

The defendants assert that "[d]etermining whether to grant such a stay is a fact-intensive, case-by-case determination that requires a delicate balancing of the 'competing interests involved in the case.'" *Aspen Fin. Servs., Inc.*, 289 P.3d at 206 (quoting *Molinaro*, 889 F.2d at 902)." *Id.* The Ninth Circuit has held that "court must analyze "the extent to which the defendant's fifth amendment rights are implicated," as well as the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it; (2) the burden which may be imposed on the civil defendants, (3) the convenience of the court in the management of its cases; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and

criminal litigation. *Keating,* 45 F.3d at 324-25; *see also Aspen Fin. Servs., Inc.*, 289 P.3d at 206.

Defendants argue that "there is complete overlap between this civil proceeding and the accident-related felonies for which the Nye County District Attorney is considering to indict Hannon, Wentland and Goldsmith. Defendants' civil liability and the criminal charges alike depend on the facts surrounding the accident and its aftermath. Defendants will not be able to present a comprehensive defense if Hannon, Wentland and Goldsmith, vital witnesses, invoke the Fifth Amendment. And when coupled with adverse inferences regarding the facts of the accident, the scenario will be a de facto grant of summary judgment against Defendants on liability." (#73).

Defendants assert that "a significant overlap increases the risk of self-incrimination and heightens the need for a stay." *Aspen Fin. Servs., Inc.*, 289 P.3d at 207 (citing *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 400 n.8 (S.D. Tex. 2009); see also *Trustees of Plumbers Pen. Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1139 (S.D.N.Y.1995)." *Id.* Defendants also assert that "a significant overlap also exacerbates the detrimental effect on a defendant's civil case if he elects to claim privilege because the court may draw an adverse inference from the refusal to testify on Fifth Amendment grounds. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558 (1976); *see also Aspen Fin. Servs., Inc.*, 289 P.3d at 209 (quoting *Volmar Distribs. v. N.Y. Post Co.*, 152 F.R.D. 36, 39-40 (S.D.N.Y. 1993))." *Id.* Defendants analyze each of the remaining factors, and argue that they weigh in favor of staying the depositions of the individual defendants. *Id.*[1]

---

[1]   Defendants analysis is as follows:

(1) the stay will not prejudice the plaintiffs or any other party in this action, as (a) the stay is limited to only the deposition and testimonial discovery of three individuals, (b) additional time that passes while a stay is in place will have a negligible, if any, impact on the individual defendants' memories, (c) the stay will have no effect on plaintiffs' ability to conduct other discovery in the interim, and (d) the stay will have a definite end date of December 12, 2013, and that "[t]his case is relatively new and the requested stay will have no affect on the parties' ability to continue with discovery or on the parties' right to take this case to trial within the five year rule;"

(2) in addition to having to make the "impossible choice between waiving the constitutional right against self incrimination and sacrificing the ability to defend against civil liability, "the individual defendants and Central Washington Asphalt, Inc. each face significant prejudice if the case is not stayed."

- "If Hannon, Wentland and Goldsmith are forced to testify, they risk inadvertently revealing weak points of their case to the criminal prosecutor if they invoke privilege as to certain questions. *Id.* at 209 (quoting

C.     **Oppositions**

1.     **Third-Party Defendant Zemke's Opposition[2]**

Third-Party Defendant Zemke filed an opposition to the defendants' motion (#73), asserting that the stay is unwarranted because there is no evidence that the individual defendants will be criminally charged.  (#78).  Zemke argues that the depositions of Officer Scott Simon and Officer Guy Davis evidence that "[a]s a result of the investigation, Officer Simon concluded that the sole cause of the accident was the actions of Donald Hannon in entering the NIB lane of travel when it was unsafe to pass, a violation of NRS 484B.213," that the police viewed the case as being closed and not requiring any further investigation, that any prosecution would be from the DA's office, and that Davis "had not been in contact with any prosecuting agency as a result of this incident."  *Id* (Exhibits A and B).

Zemke asserts that all parties agreed to the individual defendants' depositions, but that after the

*Afro-Lecon, Inc. v. U.S.*, 820 F.2d 1198, 1203 (Fed. Cir. 1987))." "[D]iscovery in this civil action "may eventually inure to the benefit of the government prosecution, thereby effectively broadening the scope of criminal discovery." *Id.* (internal quotations omitted)."  If prosecuted and convicted, defendants face prison time "for a minimum term of not less than 2 years and a maximum term of not more than 15 years and by a fine of not less than $2,000 nor more than $5,000." NRS 484E.010(3)." *Id.*

- "Central Washington Asphalt, Inc. will nonetheless suffer severe prejudice if it is forced to litigate without the testimony of Hannon, Wentland and Goldsmith, vital witnesses for its defense." *Id.* "[I]f Hannon, Wentland and Goldsmith are coerced to assert their Fifth Amendment privilege, their silence will hinder more than their own civil defense. It will hinder Central Washington Asphalt, Inc.'s ability to mount a comprehensive defense as well." *Id.*

(3) The court and the non-parties will be minimally affected by the narrow stay of depositions, as courts have recognized that stays of up to three years may be warranted in situations such as this. *Id:See Wehling v. Columbia Broad. Sys.* 608 F.2d 1084, 1089 (5th Cir. 1979) (stating that "[a]lthough a three year hiatus in the lawsuit is undesirable from the standpoint of both the court and the defendant, permitting such inconvenience seems preferable at this point to requiring plaintiff to choose between his silence and his lawsuit.").  The District Attorney's office has indicated that the individual defendants remain subject to criminal indictment. *Id.*  Any indictment would need to be filed within the next few months, and the stay would not be indefinite or even for years, and the "applicable time periods can be reassessed at a scheduling conference either when Defendants are indicted or when the criminal statute of limitations has expired, whichever is sooner." *Id.*

(4) The narrow stay will minimally affect the public's interest in the civil and criminal matters: the requested stay is narrowly tailored and may expire as early as December 12, 2013, approximately 90 days after the current discovery deadlines, and the "likelihood that the case will be justly determined on its merits is, in contrast, severely threatened if Defendants' ability to defend is undermined by the exercise of their Fifth Amendment rights." *Id.*

[2]  On April 17, 2013, plaintiff Kathryn Zemke and counterclaimant Mitchell Zemke filed a joinder to third-party defendants Zemke's opposition (#78).  (#83).   On April 18, 2013, third-party defendant Doreen Law filed a joinder to Zemke's opposition (#78).  (#87).

depositions of the officers discussed above, the defendants sent correspondence indicating that the individual defendants fear criminal prosecution.  *Id* (Exhibit D).

Zemke's opposition is summarized as follows: (a) Wentland and Goldsmith have no justified fear of prosecution, and they have no Fifth Amendment privilege against testimony which may incriminate Donald Hannon. *See Thomas v. Bible*, 694 F.Supp. 750 (D. Nev. 1988), (b) defendant Hannon's Fifth Amendment privilege does not extend to prevent all discovery, as "[t]he only way the privilege [against self-incrimination] can be asserted is on a question-by-question basis, and thus, as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right." (*quoting Doe v. Glazner*, 232 F.3d 1258, 1263 (9th Cir.2000). *See also Davis v. Fendler,* 650 F.2d 1154, 1159 (9th Cir.1981); *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir.l981), (c) no indictment has been filed against Hannon, and "[t]he need for a stay is "far weaker" when "[n]o indictment has been returned." *Securities & Exchange Com'n v. Dresser Indus.*, 628 F.2d 1368, 1376 (D.C. Cir.1980),"[3] (d)  Hannon waived any Fifth Amendment privilege by stating his verison of the facts under oath (citing *Rogers v. United States*, 340 U.S. 367, 372-73,71 S.Ct. 438, 95 L.Ed. 344 (1951)(holding that a party may, however, waive his ability to invoke his privilege to subsequent questioning by answering questions that already disclosed incriminating facts.), (e) defendants cannot meet the "heavy burden[4] necessary to justify a stay," and a stay of civil discovery pending the outcome of a related criminal matter should not be granted lightly because it "is an extraordinary remedy appropriate for extraordinary

---

[3]  As a general rule, pre-indictment requests for a stay are denied "because there is less risk of self-incrimination, and more uncertainty about the effect of a delay on the civil case." *Walsh Securities v. Cristo Property Management*, 7 F.Supp.2d 523, 527 (D.NJ.l998); see *King,* 16 P.3d at 56 ("Where there is not yet a formal charge, resolution of the criminal matter may be so remote it should not be awaited.").

[4]  "A movant must carry a heavy burden" in order to demonstrate that a stay is warranted. *See Alcala v. Texas Webb County*, 625 F.Supp.2d 391,397-98 (S.D.Tex.2009) ("[T]here is a strong presumption in favor of discovery, and it is the party who moves for a stay that bears the burden of overcoming this presumption."). *See also Gordon v. Federal Deposit Insurance Corp*., 427 F.2d 578, 580 (D.C.Cir.1970) (holding that the overall interest of the courts that justice be done does not allow halting all civil litigation pending the outcome of a related criminal prosecution).

1   circumstances." (quoting *Weil v. Markowitz*, 829F.2d 166, 174n. 17 (D.C. Cir.1987)), (f) Nevada law[5]

2   does not favor a stay and an analysis of the Ninth Circuit's factors in *Keating*, 45 F.3d at 325[6] does not

3   favor a stay, and (g) the motion was brought in bad faith, as the officer's testimony did not indicate that

4   the defendants were being investigated or were going to be indicted, calls to the Nye County DA

5   indicate that no indictment was filed, and the "basis" for the requested stay is a phone call initiate by

6   defense counsel "which asserts through hearsay upon hearsay that a criminal prosecution is still a

7   possibility." *Id.* Zemke asserts that since the motion was made in bad faith, he is entitled to costs and

8   fees (under Rule 37(B)) and defendants should be sanctioned. *Id.*

9   **2.   Law Defendants' Opposition**[7]

10   The Law Plaintiffs asserts that the Nevada Supreme Court has already decided the issue before

11   the court in the matter of *Aspen Financial Services, Inc. v. Eighth Judicial District Court*, 128 Nev.

---

13     [5] *See Aspen Financial Services v. Dist. Ct.*, 289 P.3d 201 (Nev.,2012) (holding that "[t]he touchstone for

14   evaluating a pre-indictment motion to stay is considering whether "special circumstances" justify granting a stay despite the absence of an indictment One such instance is where the issuance of a formal indictment is "an eventuality." *See,*

15   *e.g., Chao*, 498 F.Supp.2d at 1039 (internal quotation marks omitted). Another circumstance in which a pre-indictment stay may be warranted is where the government has initiated the civil proceeding and also controls the simultaneous

16   criminal investigation. *See, e.g., S.E.C. v. Healthsouth Corp.*, 261 F.Supp.2d 1298, 1326 (N.D.Ala.2003). In such a circumstance, "the government itself has an opportunity to escalate the pressure on defendants by manipulating

17   simultaneous civil and criminal proceedings" and, as a result, "there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means." *Sterling*, 175 F.Supp.2d at 578-79.")

18

19     [6] Zemke argues that (1) the delay would prejudice plaintiffs' ability to present their case, as witness' memories would fade, evidence would be harder to acquire, plaintiffs need to depose witnesses to learn more regarding the

20   accident and these witnesses are key, Zemke and the other third-party defendants sued by CWA have a right to discovery of the claims against them, (2) the burden upon the defendants in going forward is low, as Wentland and

21   Goldsmith have no rational fear of prosecution and Hannon could assert a privilege on a question by question basis, and "[d]efendants have made no showing of the specific harm that could result other than general  assertions of the "choice" between risking self-incrimination and an adverse interest instruction" (3) this action has been pending since June 9,

22   2011, and the district court has an interest in clearing its docket, *Federal Sav. & Loan Ins. Com. v. Molinaro*, 18 899 F.2d 899, 903 (9th Cir. 1989), and (4) the public interest in resolving litigation already filed outweighs any speculation

23   about criminal matters which may never be filed. *See U.S. ex reI. Gonzalez v. Fresenius Medical Care North America*, 571 F.Supp.2d 758 (W.D. Tex. 2008) ("The public interest in proceeding in an important civil enforcement matter that

24   has already been filed seems to outweigh speculation about if and when an indictment will be returned").

25     [7]  On April 18, 2013, third-party defendant Doreen Law filed a joinder to the Law Plaintiffs' opposition (#79). (#87).

26

1    Adv. Rep. 57, 289 P.3d 201 (2012).  (#79).  The Law Plaintiffs assert that none of the factors relied

2    upon by the Nevada Supreme Court are found here, and that "Nevada Supreme Court held at the outset

3    that a corporation, such as Defendant CWA, does not possess a Fifth Amendment right against self

4    incrimination. See *Afro-Lecon, Inc. vs. U.S.*, 820 F.2d 1198, 1206 (Fed Cir. 1987), *Aspen, supra* at P.7."

5    *Id.*  The Law Plaintiffs address the following factors from *Aspen*, and argue that the court here should

6    not enter a stay: (1) the implication of the Fifth Amendment privilege,[8] (2) plaintiffs' interests and

7    potential prejudice,[9] (3) convenience and efficiency of the court,[10] (4) interests of non-parties to the civil

8    proceedings,[11] and (5) interest of the public in the civil and criminal matters.[12]  *Id.*

9

10

11        [8] The Law Plaintiffs argue that even though "there would appear to be overlap between the actions of the
CWA's drivers and any criminal investigation of their actions which resulted in death and serious injuries to others,"
12   "the Aspen decision further stated that the "touchstone for evaluating a pre-indictment motion for stay" is considering
whether "special circumstances" justify granting a stay despite the absence of an indictment," such as whether a formal
indictment is an "eventuality."  (#79).

13        [9] The Law Plaintiffs assert that "[t]he Aspen defendants' concerns of asserting their Fifth Amendment privilege
14   were based on far more compelling factors than the Defendant CWA drivers in this case," and that "concerns [found
here] are further offset by the prejudice that a stay would cause to the interests of both groups of Plaintiffs in this case
15   who have suffered death and serious injuries due to the actions of the Defendant CWA drivers on this case."  (#79).  The
Law Plaintiffs make many of the same arguments that Zemke made regarding the parties' need to conduct discovery and
16   how the stay will deprive them of this right.  *Id.*  The Law Plaintiffs argue that "the chance that Defendant CWA drivers
may be subject to criminal indictment is less than the "faint possibility" it was for the Aspen defendants, with far more
17   compelling facts for a stay in that case."  *Id.*

18        [10]The Law Plaintiffs assert that "[a] stay would...frustrate this Courts caseload as it did for the Court in Aspen
due to the defenses and counter-claims and third-party complaints filed by the Defendant CWA drivers."  (#79).  They
19   also assert that "convenience of the courts is best served when motions to stay proceedings are discouraged." *U.S. v.
Private Sanitation Industry Ass'n*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992), Aspen, Supra, at Page 11."  *Id.*

20        [11]The Law Plaintiffs assert that the next factor in the "Aspen decision concerned the interests of non-parties
21   such as key corporate officials and officers when its employees are compelled to assert their Fifth Amendment privilege
against self incrimination and thus leave these corporate officials "defenseless.""  (#79).  Law Plaintiffs argue that this
22   factor weighs against a stay, "as no separate causes of action have been alleged against any CWA corporate officers or
directors."  *Id.*

23        [12]The Law Plaintiffs argue that "the public should...have a interest in rooting out hazardous public safety
24   threats on the state highways of Nevada, as is being alleged against the Defendant CWA drivers who were verbally
warned by another commercial vehicle driver that passing other vehicles on highway 318 was dangerous and then when
25   told by the same driver they had caused a severe multi vehicle collision, simply drove away in attempting to escape."
(#79).  They also assert, as in Aspen, that "the public has a significant interest in a system that encourages individuals to
come to court for the settlement of their disputes."  *Id.*

26                                              11

The Law Plaintiffs also ask this court to award attorneys' fees and costs and impose sanctions against defendants for filing the motion to stay. *Id.*[13]  They assert that since "[d]efendant CWA and its [d]efendant drivers have been unable to present any evidence whatsoever, that criminal charges are being considered, are imminent or are being investigated, more than two years after this subject incident took place," and defense counsel was informed in writing that they had no legal basis for seeking a stay, the court should award their reasonable attorneys' fees and court costs and consider monetary sanctions for the filing of defendants motion for stay under Rule 11(b). *Id.*

### 3.      Fenton Defendants' Opposition

The Fenton Defendants assert that "CWA's motion should be denied as neither it nor its employees have a good faith basis for asserting the Fifth Amendment in staying their depositions," and that they "join[] in and incorporate[] by reference herein the oppositions filed by Doreen and Philip Law as and by Third Party Defendant, Mitchell Zemke." (#84).  The Fenton Defendants also assert that the motion should be denied because a stay would prejudice Mr. Fenton. *Id.*  The Fenton Defendants state that such prejudice is apparent because (1) "he will be required to be deposed without knowing the factual basis of Mr. Hannon's (or Wentland and Goldsmith's) allegations against him," (2) "with the current expert deadline of June 1, 2013, Mr. Fenton would be required to produce an expert report, which would be incomplete at best and require supplementation after the CWA employee depositions are completed," and (3) "depositions of the other witnesses and experts may need to be re-taken, which subjects him with undue burden and expense." *Id.*

### 4.      Slagowski Plaintiffs' Joinder and Opposition

The Slagowski Plaintiffs filed a joinder to the two oppositions (#78 and #79) and supplemented the joinders with points and authorities. (#85).  The Slagowski Plaintiffs emphasize arguments made

---

[13] The Law Plaintiffs filed one document containing the opposition and a counter-motion for attorneys' fees and costs and for sanctions. (#79).  Pursuant to Special Order 109, the clerk separated the document into plaintiffs' Opposition (#79) and plaintiffs' Counter-Motion (#81).

in the two oppositions (#78 and #79) and assert that the oppositions make clear that a stay is not warranted. *Id.* Slagowski Plaintiffs contend that defendants "created their own emergency," and that "defense counsel had knowledge for almost two years of the fact that criminal charges may be potentially filed against his clients, and he could have moved to stay this case or moved for a protective order well over one year ago." *Id.*

Slagowski Plaintiffs also contend that even though this action has been pending for nearly two years, defendants did not raise the Fifth Amendment concerns until now. *Id.* Slagowski Plaintiffs assert that the Highway Patrol "issued a 123-page report documenting that this accident was solely caused by CWA driver Hannon, who attempted a dangerous passing maneuver that forced the Zemke vehicle off the roadway, causing the multi-vehicle collision. Hannon then fled the accident scene, along with his fellow driver, James Wentland," and that NHP "forwarded their report to the Nye County District Attorney more than two years ago on February 24, 2011, recommending Hannon be prosecuted for violations of NRS 484B.213 Limitations on overtaking on left side; NRS 484E.010, Duty to stop at scene of accident involving death or personal injury; and NRS 484E.030, Duty to give information and render aide." *Id.*

Slagowski Plaintiffs outline the procedural history of the action for the court, and state that at no time did defendants assert self-incrimination as a defense or otherwise notify the court of any concern about any criminal prosecution or the need to stay the civil action. *Id.* Slagowski Plaintiffs also assert that "on November 19, 2012, Hannon responded to Zemke's interrogatory asking about his knowledge of the accident. Significantly, Hannon raised no Fifth Amendment objection, and expressed no concern about any potential criminal action." *Id.* Slagowski Plaintiffs state that after the depositions of the officers were taken, which "confirmed the facts and conclusions of their investigation, and... that they had had no contact with the Nye County District Attorney's Office for over two years," "defense counsel Jaffe first raised purported Fifth Amendment concerns about the driver depositions..." *Id.*

13

Slagowski Plaintiffs argue that "[t]he above chronology shows that counsel for CWA has had nearly two years to raise Fifth Amendment concerns," and that "[a]t all times, counsel for CWA was aware of the potential for criminal charges being filed in this case." *Id.* Slagowski Plaintiffs argue that (1) the information in the declaration of CWA's counsel, Ashlie Surur, is hearsay within hearsay, (2) the fact the Nye County District Attorney has taken no action whatsoever, over two years after the MAIT report was sent to his office strongly suggests this matter will never be criminally prosecuted, (3) the investigating NHP Troopers have testified they have had no contact with the Nye County District Attorney in over two years, and (4) counsel for CWA does not report any contact by the Nye County District Attorney with CWA or the individual defendant drivers. *Id.*

Slagowski Plaintiffs join in with the other oppositions and assert that defendant Hannon is the only defendant that is implicated and would even remotely face criminal charges, and the requested stay will halt discovery, as the defendants are "key percipient witnesses." *Id.* Plaintiffs also argue that the stay will severely prejudice the minor plaintiffs in this action, as the ultimate "outcome will determine their standard of living now and affect their choices regarding educational and other opportunities in the future." *Id.*

Slagowski Plaintiffs ask for attorneys' fees and costs and that sanctions be entered against defendants, as "[d]efendants' creation of an "*Emergency* Motion" and frivolous request for a Stay of the civil action has thrown the current discovery schedule in disarray." *Id.* Slagowski Plaintiffs assert that "[i]n light of defendants' bad faith tactics to scuttle the agreed upon discovery plan, plaintiffs' counsel requests that this Court order CWA to produce its three drivers for depositions in Las Vegas where this action is pending. This Order will make it much easier to reschedule the three CWA defendant driver depositions as only two attorneys will need to travel to Las Vegas for these depositions, and Las Vegas is easily accessible." *Id.*

**D.    Defendants' Reply**

Defendants assert that the court should grant the motion (#73), as the individual defendants

"remain susceptible to felony charges until the three-year statute of limitations expires on December 12, 2013.  (#89).  Defendants contend that they can subpoena the District Attorney for an affidavit if the opposing parties (the court refers to all who filed oppositions or joinders in opposition as "opposing parties") take issue with the admissibility of the representations of counsel in counsel's affidavit.  *Id.* Defendants argue that not granting the stay and forcing the defendants to choose between the Fifth Amendment and defending this action "is contrary to the Supreme Court's and Ninth Circuit's clear admonitions that a party should not suffer a "costly" penalty for exercising his Fifth Amendment right, which includes the "costly" dismissal of a civil case. *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967); *Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979); *see also Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979); *Doe v. Sipper*, 869 F. Supp. 2d 113, 117 (D.D.C. 2012)." *Id.*

### 1.     Defendants' Fear of Prosecution/Delay in Filing Motion

Defendants assert that counsel calling the District Attorney's office demonstrates that defendants filed the motion in *good faith*, and that counsel was re-affirming the possibility that indictments could be filed *before* filing the motion.  *Id.*   The defendants assert that there is no merit to the opposing parties' argument that defendants should be sanctioned for filing the motion in bad faith. *Id.* The individual defendants each face the possibility of prosecution, defendants assert, and the "Fifth Amendment privilege against self-incrimination applies not only to evidence which may directly support a criminal conviction, but to "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461 (1975) (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)) (emphasis added); see also *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir. 1990)." *Id.*

Defendants argue that the assertion of a privilege does not require an imminent criminal prosecution or even investigation, rather "the right to assert one's privilege against self-incrimination

does not depend upon the likelihood, but upon the possibility of prosecution." *In re Master Key Litigation*, 507 F.2d 292, 293 (9th Cir.1974) (emphasis added); accord *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000)." *Id.* Defendants state that the opposing parties cannot challenge that each of the defendants are susceptible to criminal prosecution, regardless of their alleged involvement.[14]

Defendants contend that they were not aware of the possibility of prosecution before the officer's depositions in April 2013, and that they filed the instant motion only <u>after</u> learning that they were being accused of causing the accident and being investigated for such conduct. *Id.* Defendants quote the officer's testimony, wherein the officer states that the defendants "were being accused of causing a fatal accident as soon as Sergeant Davis made contact with them," and that "[t]hey were being investigated as being in the proximity of that crash and being identified by not one but two people."[15] *Id.*

Defendants assert that the opposing parties erroneously assert that the individual defendants waived the privilege by answering interrogatories, and argue that ""a waiver is 'not to be lightly

---

[14]  "Plaintiffs do not (and cannot) seriously challenge Hannon's potential liability under NRS 484E.010, "a category B felony [punishable] by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years," for allegedly leaving the accident scene."  (#89).  "Culpability for NRS 484E.010 extends to "[t]he driver of any vehicle involved in an [injury] accident" that fails to stop at the accident, which would include Wentland, the driver of the second Central Washington Asphalt truck. And Nevada criminal law further provides for accessory liability for a person who "harbors, conceals or aids" a criminal offender—an offense that is also punishable as a felony, whether or not the offender himself is indicted or convicted. NRS 195.030(1); NRS 195.040(1). Thus, like Hannon, Wentland and Goldsmith face the possibility of criminal prosecution under either of these statutes if they testify regarding their respective roles in and knowledge of the accident."  *Id.*

[15]  Defendants also include the following testimony: *Compare* (#78-1)*,* at 198:4-5 ("It's my job to make recommendations. *It's the DA's job to make the accusations*." (emphasis added)); *id.* at 205:16-19 (noting investigation was "submit[ted] *to the District Attorney's Office for criminal prosecution*" (emphasis added)), *with id.* at 199 ("I'm more interested in the driver accused of doing the damage because *my job is to put people in jail* . . . . So my job is to ultimately find you, find what's what's wrong, *prosecute you*, and be a good witness for the State of Nevada and *put you in jail*." (emphasis added)).

inferred,'"[16] and will only be inferred in the most convincing and compelling circumstances.[17]  *Id.* Defendants assert that the court should follow the court in *Snipper,* and find that a defendant cannot knowingly waive his Fifth Amendment right "months before they learned of their possible prosecutions through the officers' depositions."  *Id.*

### 2. *Keating* Factors

Defendants assert that, in light of the unique circumstances of this action, the *Keating* factors weigh in favor of granting the stay:

(1) the case severely implicates the individual defendants' Fifth Amendment Rights, and the defendants' privilege against self-incrimination "is especially critical in this case because it involves all the same underlying facts as the criminal investigation. *See Milton Pollack*, *Sr. J., U.S. Dist. Ct. S.D.N.Y., Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1990) (recognizing overlap between civil and criminal issues as "the most important factor" for courts to consider)."  *Id.*

(2) the narrow stay will cause minimal prejudice to the opposing parties, as the arguments advanced by them have no merit.  *Id.*  The individual defendants' memories will not fade in the next couple months, and the opposing parties waited over two years since the accident and over a year after the Rule 26(f) to notice their depositions.  *Id.*  The alleged delay in recovery argument is outweighed by the fact that defendants, not opposing parties, potentially face "life-changing consequences" as a result of this case.  *Id.*  The "adverse inference" opposing parties suggest they are entitled to draw is improper, and the "fact that a stay may thwart Plaintiffs' efforts to obtain an evidentiary windfall at the

---

[16]  *Doe v. Sipper*, 869 F. Supp. 2d 113, 118 (D.D.C. 2012) (quoting *Smith v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949)).

[17]  *See Allstate Ins. Co. v. Plambeck*, CIV.A. 12-175, 2012 WL 1597308 (E.D. La. May 7, 2012) ("As a constitutional right, waiver of the privilege must be knowingly and voluntarily made, *Gardener v. Broderick*, 392 U.S. 273, 276 (1968), and waiver will only be inferred in the most convincing and compelling circumstances. *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981).").

expense of the Fifth Amendment privilege fails to demonstrate "prejudice."" *Id.*[18]

(3) defendants would be severely burdened without a stay, as "the fact that the individual defendants are mere months away from the expiration of the statutes of limitations— ***but the matter remains open and active with the District Attorney*** —suggests the District Attorney is waiting for potentially incriminating testimony proffered in this action to trigger indictment and prosecution." *Id* (emphasis in original).   Defendants also assert that this is a critical phase of their criminal plight, and that this outweighs any slight prejudice to the opposing parties.  *Id.*  Defendants argue that Central Washington would be severely prejudiced, and that since plaintiffs' "claims against Central Washington Asphalt, Inc. are premised on, among other theories, vicarious liability, which imputes liability of an employee to the employer. See, e.g., *Busch v. Flangas*, 108 Nev. 821, 824, 837 P.2d 438, 440 (1992)," if the individual defendant assert their Fifth Amendment, "***Central Washington Asphalt, Inc. will also be rendered defenseless, through no fault of its own***." *Id* (emphasis in original).

(4) the seven month stay will minimally effect the court, non-parties, and the public, and <u>not</u> staying the action and forcing the defendants to assert the privilege on a question-by-question basis would result in a waste of the court's and the parties' time, resources, and money.  *Id* (citing *Jones v. City of Indianapolis*, 216 F.R.D. 440, 452 (S.D. Ind. 2003) (stay granted where inefficient use of resources to allow discovery and court "will not suffer an inconvenience if a limited stay is granted"); *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 41-42 (S.D.N.Y. 1993) (stay granted to avoid "additional expenses for the parties without expediting the discovery process"); *see also* Fed. R. Civ. P. 1.)."

### 3.      Opposing Parties' Request for Sanctions, Fees, and Costs

---

[18]   The individual defendants assert that the opposing parties' argument that they need to obtain more factual information is belied by the fact that if the stay does not take effect, defendants will invoke their Fifth Amendment and opposing parties will not gain any information from them.  *Id.*  The defendants assert that "[t]hey are willing to expand the stay to all discovery and/or modify the current discovery deadlines to accommodate Plaintiffs' apparent desire to depose Defendants before proceeding with other discovery, if Plaintiffs prefer."  *Id.*

Defendants assert that the opposing parties' requests for sanctions, fees, and costs are unsupported by law and unwarranted.  (#89).  Defendants argue that they filed the motion in good faith after the officers' deposition testimony gave rise to the issue of criminal prosecution, and that checking with the District Attorney's office "simply underscores their good faith basis for this motion."  *Id.*  Defendants also argue that the opposing parties' requests lack any support in the law, as neither Rule 37 nor Rule 11 permit sanctions in a situation such as this.  *Id.*  Defendants assert that the opposing parties' request to further sanction defendants by forcing them to be deposed in Nevada is unsupported, as they haven't satisfied the requirements of Rule 26(b) or moved for a protective order.  *Id.*

### C.    Supplemental Opposition

The Slagowski Plaintiffs filed their supplement on June 18, 2013.  (#116).  Slagowski Plaintiffs contend that after they filed their opposition, counsel attempted to contact the District Attorney's office to confirm whether the office was "actively investigating" the accident.  *Id.*  Counsel was able to reach Mr. John Friel, Esq, and ask him about the alleged pending criminal investigation against the individual defendants.  *Id.*  Mr. Friel submitted a declaration testifying that he was "assigned to review the NHP police report in connection with the incident involving the multi-vehicle collision that occurred on December 12, 2010 in Nye County on State Route 318," and that the District Attorneys' office is "not actively investigating this matter at this time."  (#116-1)(Declaration of John Friel).

Slagowski Plaintiffs assert that any argument from the defendants that the potential of criminal prosecution is still real should not be accepted by the court, as to accept such an argument would set the precedent that "anytime a police report is sent to a District Attorney to consider the filing of criminal charges, any related civil case should be automatically stayed, even absent any evidence of an ongoing criminal investigation."  *Id.*  The Slagowski Plaintiffs ask this court to deny the motion to stay in light of this new evidence.  *Id.*

### E.    Discussion

The court finds that Mr. Friel's declaration (#116-1) stating that his office is "not actively

investigating this matter at this time," does not conclusively determine the issue before the court, as the individual defendants' deposition testimony could trigger the District Attorney's office to investigate further or indict the defendants between now and the December 2013, statute of limitations.  The Ninth Circuit has held that "the right to assert one's privilege against self-incrimination does not depend upon the *likelihood,* but upon the *possibility* of prosecution. *See Hoffman v. United States*, 341 U.S. 479, 486-487, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *Isaacs v. United States*, 256 F.2d 654, 658 (8 Cir. 1958)." *In re Master Key Litig.*, 507 F.2d 292, 293 (9th Cir. 1974)(emphasis added).

There is still a "possibility" of prosecution here, regardless of Mr. Friel's statement that his office is not investigating "at this time," and each individual defendant, regardless of their involvement, could still be subject to criminal charges.[19]   As the court finds that the declaration (#116-1) is not determinative of the issues before the court, the court must still engage in an analysis of the *Keating*[20]

---

[19]   Hannon is subject to charges under NRS 484E.010, "a category B felony [punishable] by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years," for allegedly leaving the accident scene." Culpability for NRS 484E.010 extends to "[t]he driver of any vehicle involved in an [injury] accident" that fails to stop at the accident, which would include Wentland. And Nevada criminal law provides for accessory liability for a person who "harbors, conceals or aids" a criminal offender—an offense that is also punishable as a felony, whether or not the offender himself is indicted or convicted. NRS 195.030(1); NRS 195.040(1).

[20]   In the *Keating* case, heavily relied upon by all the parties involved, the Office of Thrift Supervision (hereinafter "OTS") filed a notice of charges against Keating on August 9, 1990, and an Administrative Law Judge was appointed to oversee the proceedings.  *Keating*, 45 F.3d at 324.  The OTS's final order banned Keating from the federally insured banking industry and directed him to pay restitution.  *Id.*  Keating appealed based on, among other grounds, the assertion that the ALJ should have granted Keating's request to stay the civil proceedings pending the resolution of the criminal proceedings against him.  *Id.*  Keating argued on appeal that the pending criminal proceedings forced him to "invoke his Fifth Amendment privilege during the OTS hearing, depriving him of an opportunity to testify on his own behalf."  *Id.*
On November 15, 1990, the ALJ denied Keating motion to stay the proceedings pending the resolution of all criminal proceedings against him.  *Id* at 324.  The OTS hearing was conducted on July 1-3, and 8-12, 1991, and the trial began in state court on August 4, 1991, resulting in a conviction on December 4, 1991.  *Id* at 325.  Federal charges were filed on December 12, 1991.  *Id* at 325.   Keating filed a motion to reconsider the order denying the request to stay civil proceedings pending the resolution of the criminal charges, and the ALJ denied the motion on February 28, 1991.  *Id* at 324 n.1.  The OTS hearing resumed on April 27, 1992, and the federal trial began on November 2, 1992.  *Id* at 325.  The Ninth Circuit states that Keating did not have the opportunity to invoke his Fifth Amendment privilege in the OTS hearing before the hiatus (during which the state and federal indictments took place), and that *after* the federal indictment, the OTS severed two administrative counts that overlapped with the federal indictment.  *Id.*  Keating argued that there was a significant overlap between the federal charges and the OTS charges, which made it necessary to invoke his Fifth Amendment, and during the OTS hearing he asserted the privilege when asked questions about certain transactions.  *Id.*

factors, consider the ruling in *Doe,* and balance the outcome of granting or denying the stay.

The Ninth Circuit held in *Keating* that while the "Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.1989); *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C.Cir.), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)," the court "may decide in its discretion to stay civil proceedings ... 'when the interests of justice seem [ ] to require such action.'" *Id* at 324 (internal citations omitted).   The court also held that the "decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case," *Molinaro*, 889 F.2d at 902," and that the court must consider ""the extent to which the defendant's fifth amendment rights are implicated."" *Id.*

In *Keating,* the federal charges were filed on December 12, 1991, and the ALJ denied the motion to reconsider the order denying the request to stay civil proceedings pending the resolution of the criminal charges on February 28, 1991.  *Id* at 324 n.1.  At the time of the motion to reconsider the motion to stay, the federal indictment was already filed against Keating.  *Id.*  The ALJ determined, however, that the civil charges were not related to the federal charges and did not overlap in a way to force Keating to assert his Fifth Amendment.  *Id* at 325.  Here, no indictment has been filed against the defendants and the Slagowski Plaintiffs presented Mr. Friel's declaration (#116-1) stating that his office is not investigating the matter "at this time."  As stated above, this declaration is not determinative, and

---

The Ninth Circuit found that "any remaining overlap between the OTS and criminal proceedings did not make the ALJ's refusal to stay the OTS proceeding an abuse of discretion," as "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id* at 325-26.  The court held that [i]n contrast to Keating's interests, which were not overly burdened by proceeding with the hearing, the public's interest in a speedy resolution of the controversy and the OTS' concern for efficient administration would have been unnecessarily impaired had the proceeding been stayed." *Id* at 326.  The court also addressed the "inordinate amount of media attention" the case gained, and held that any delay "would have been detrimental to public confidence in the enforcement scheme for thrift institutions."  *Id.*

there is still a "possibility" of prosecution.  *See In re Master Key Litig*., 507 F.2d at 293.  Any allegations contained in an indictment against the defendants would overlap with the claims in this action, as they would both directly relate to the accident, the individual defendants' responsibility for the accident, and the actions taken after the accident occurred.  This overlap supports defendants' argument for a stay.

The court in *Keating* enumerated five factors for the court to analyze: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation."  *Keating*, 45 F.3d at 325.

Rule 1 of the Federal Rules of Civil Procedure provides for the "just, speedy, and inexpensive determination" of all civil matters.  The court recognizes that all parties in this action and the court have an interest in the speedy resolution of this action, and that a five and one half month delay in taking critical parties' depositions could hinder those interests.  The Slagowski Plaintiffs and the Law Plaintiffs have an interest in recovery for their damages, third-party defendant Zemke has an interest in deposing the defendants and filing a dispositive motion in this action, and the court has an interest in seeing that actions are resolved and do not remain dormant on its docket.  The parties and the court's interests weigh in favor of not granting a stay.  *See Keating*, 45 F.3d at 325.

The court recognizes that if a stay is not granted individual defendants will have to choose between asserting their Fifth Amendment right and defending this action, and that this choice would impact defendant Central Washington's ability to defend itself.  This possible prejudice, however, could be addressed by the court permitting the defendants to be re-deposed *after* the December 12, 2013, statute of limitations expires.  While there is a possibility of prejudice to the defendants without a stay, since this prejudice can be cured through the defendants being re-deposed, the court finds the second

factor is neutral.  *See Keating*, 45 F.3d at 325.  The court also finds that since none of the parties have

identified non-parties whose interests would be affected by the stay, the fourth factor is neutral.  *Id.*

      The public's interest, however, in having parties resolve their disputes and be held accountable

for their actions, is an important factor for the court to consider, and a stay would not serve those

interests.  *See Keating* at 326.  After examining the *Keating* factors, the court finds that a stay of the

defendants' depositions is not appropriate.  The parties may depose the individual defendants, and the

defendants can assert their Fifth Amendment privilege on a "question by question" basis as provided

for in *Doe v. Glanzer,* 232 F.3d 1258, 1265 (9th Cir. 2000)(holding that "in a civil case, the Fifth

Amendment's protections against self-incrimination are invoked on a question-by-question basis, *see*

*Rendahl*, 746 F.2d at 555, and therefore the assertion of the privilege necessarily attaches only to the

question being asked and the information sought by that particular question.").[21]  If, after the December

12, 2013, statute of limitations expires, no criminal indictments are filed against the individual

defendants, and any party wishes to depose the individual defendants again,  the individual defendants

may be re-deposed.  The depositions will be limited to those questions where defendants previously

asserted their Fifth Amendment privilege.  The parties may also elect to postpone the depositions of the

individual defendants until *after* the December 12, 2013, statute of limitations' expiration[22].  The

depositions of the individual defendants must be conducted on or before January 3, 2014.  The

dispositive motions deadline is moved to January 15, 2014, and the Joint Pre-Trial Order deadline is

February 14, 2014.

      Defendants argue that it would be unfair to permit the depositions to be conducted in this

fashion, as the parties would be able to draw negative inferences from the invocation of the privilege.

---

[21] The parties may also stipulate to which questions the defendants intend to assert their Fifth Amendment privilege regarding.

[22] If the parties agree to postpone the depositions until after December 12, 2013, the parties must schedule the deposition dates now to ensure the depositions are conducted by the court's January 3, 2013, deadline.

1   (#73).  The Ninth Circuit held in *Doe,* however, that "an adverse inference can be drawn when silence

2   is countered by independent evidence of the fact being questioned, but that same inference cannot be

3   drawn when, for example, silence is the answer to an allegation contained in a complaint. *See Nat'l*

4   *Acceptance Co. v. Bathalter*, 705 F.2d 924, 930 (7th Cir.1983).  In such instances, when there is no

5   corroborating evidence to support the fact under inquiry, the proponent of the fact must come forward

6   with evidence to support the allegation, otherwise no negative inference will be permitted. *See LaSalle*

7   *Bank*, 54 F.3d at 391."  *Doe,* 232 F.3d at 1264.

8            With regard to the opposing parties' requests for fees, costs, and sanctions, defense counsel

9   asserts that the motion was necessary in light of the deposition testimony (Exhibits A and B) of the

10  officers.  (#73).   As counsel pointed out during the hearing, Officer Davis testified at his deposition

11  that defendant Hannon "could have been arrested" and that "charges [could have been] filed just off of"

12  defendants' interrogatory answer.  (#78-2 Page 60).  Officer Davis also testified that he had been shown

13  defendant Hannon's interrogatory answer in preparation for his deposition.  *Id* at Page 67-68.  Officer

14  Simon testified that he did not contact Central Washington regarding the defendants, because he is

15  "more interested in the driver accused of doing the damage because [his] job is to put people in jail,"

16  that the defendants "were being accused of causing a fatal collision as soon as Sergeant Davis made

17  contact with them," and that "[t]hey were being investigated as being in the proximity of that crash and

18  being identified by not one but two people."  (#78-1 Page 199-200).  Defense counsel owes a duty to

19  his clients to protect their interests, and it is reasonable that the above testimony coupled with a phone

20  call to the DA's office resulted in a fear of criminal prosecution.  Defendants did not bring the instant

21  motion (#73) in bad faith, and sanctions, costs, and fees are unwarranted.

22  **III.    Motion for Sanctions (#98), Emergency Motion for Protective order (#99), and Counter**

23  **Motion (#101).**

24  **A.    Procedural History**

25  On May 28, 2013, defendants filed a motion for sanctions (#98) and an *emergency* motion for

26

24

protective order to stay the deposition of third-party defendants Chip Fenton scheduled for June 3, 2013 (#99). On May 29, 2013, defendant Zemke filed an opposition to the motion for protective order (#100) and a counter-motion for costs, fees, and sanctions (#101), and plaintiffs filed a joinder thereto (#102). Also on May 29, 2013, the court issued a minute order stating that "the deposition of Chip Fenton is stayed pending the resolution of Defendants' *Emergency* Motion (#99)," and scheduling a hearing on defendants' *Emergency* Motion (#99) for 1:30 p.m., on June 6, 2013, in Courtroom 3D. (#103).

On the same day, Slagowski Plaintiffs filed an opposition to the defendants' *emergency* motion for protective order. (#104). On May 30, 2013, the Law Plaintiffs filed a joinder to the opposition (#104) and to the counter motion for attorney fees, costs, and sanctions (#101). (#105 and #106). Also on May 30, 2013, the Fenton Defendants filed an opposition to the *emergency* motion for protective order (#99). (#107). On May 31, 2013, the Fenton Defendants filed a joinder to the countermotion for fees, costs, and sanctions (#101). (#109). On June 17, 2013, defendants filed an opposition to the countermotion (#101) and a supplement to its motion for sanctions (#98). (#113). On June 20, 2013, defendant Zemke filed a reply in support of his motion for fees, costs, and sanctions (#118), and on June 24, 2013, the Law Plaintiffs filed a joinder thereto (#119).

**B.    Relevant Facts**

 Defendants offer the following chronology in support of this requested relief:

- February 19, 2013, Central Washington's counsel noticed the deposition of Chip Fenton, for March 26, 2013 (See Notice of Taking Videotaped Deposition, attached hereto as Exhibit "A") and sent a letter to Mr. Fenton's attorney requesting that he contact Central Washington's counsel if Mr Fenton is unavailable (See Letter from Hall, Jaffe & Clayton ("HJC") to Bruce Dickinson, Esq., attached hereto as Exhibit "B") ;

- March 8, 2013, Central Washington's counsel conducted a conference call with counsel for the various parties, including counsel for Mr. Fenton, (with the exception of Phillip Law's attorney George Bochanis, Esq.) to discuss deposition dates and discovery issues (See Declaration of Ashlie L. Surur, Esq., attached hereto as Exhibit "C"). During the conference call, Mr. Fenton's attorney advised that Mr. Fenton was not available for deposition on March 26, 2013, but was unable to provide any alternative dates at that time despite the fact that the purpose of the conference call was to discuss deposition dates *(Id.)*;

- March 15, 2013, Central Washington's counsel vacated the deposition of Chip Fenton, scheduled for March 26, 2013 (See Notice Vacating Videotaped Deposition, attached hereto as Exhibit "D");

- March 18, 2013, Central Washington's counsel sent a letter to all counsel summarizing the deposition dates and locations agreed to during the March 8, 2013 conference call and proposed that Mr. Fenton's deposition take place on May 16, 2013 in Las Vegas when all counsel indicated they could be present. (Letter from HJC to all counsel dated March 18, 2013, attached hereto as Exhibit "E"). Alternatively, Central Washington's counsel proposed taking Mr. Fenton's deposition in Idaho, his place of residence, on May 16, 2013. (*Id.*);

- March 21, 2013, Central Washington's counsel sent Mr. Fenton's attorney an e-mail again indicated that Central Washington wanted to take Mr. Fenton's deposition on May16, 2013. (E-mail from Ashlie Surur to Bruce Dickinson dated March 21, 2013, attached hereto as Exhibit "F");

- March 24, 2013, Mr. Fenton's attorney responded to the March 21, 2013, e-mail from Central Washington's attorney stating that he placed a call to his client, Mr. Fenton, and that he would provide Central Washington with a deposition date by March 29, 2013. (See Ex. "F");

- March 29, 2013, Central Washington's counsel contacted Mr. Fenton's counsel by telephone during which Mr. Fenton's counsel advised that they were still working on obtaining dates from Mr. Fenton for his deposition. (See Ex. "C");

- April 3, 2013, after no response from Mr. Fenton's counsel, Central Washington's counsel sent letter to Mr. Fenton's counsel informing them that Mr. Fenton's deposition was being noticed for May 16, 2013 (see Letter from HJC to Bruce Dickinson, dated April 3, 2013, attached hereto as Exhibit "G") and formally noticed the deposition of Chip Fenton, for May 16, 2013 (See Amended Notice of Taking Videotaped Deposition, attached hereto as Exhibit "H");

- April 8, 2013, Mr. Fenton's counsel sent an e-mail to Central Washington's counsel insisting that Mr. Fenton be deposed in North Dakota because he is working in that state and that Mr. Fenton's deposition proceed after the depositions of the individual Defendants, even though Central Washington had filed an Emergency Motion for Protective Order regarding those depositions; there is no indication that Mr. Fenton is unavailable for his May 16, 2013 deposition. (See E-mail from Bruce Dickinson to Ashlie Surur, attached hereto as Exhibit "I");

- April 9, 2013, this Court granted Central Washington's Emergency Motion for Protective Order Regarding Depositions [Doc 77], and orders that the depositions of the individual Defendants are temporarily stayed pending resolution of Central Washington's Motion to Stay [Doc 77];

- April 17, 2013, Mr. Fenton's counsel sent an e-mail to Central Washington's counsel stating, for the first time, that Mr. Fenton was unavailable May 16, 2013 and that Mr. Fenton's counsel has been working with Plaintiffs' counsel to arrange a date and

location for Mr. Fenton's deposition to be taken in North Dakota. (See E-mail from Bruce Dickinson to Ashlie Surur, attached hereto as Exhibit "J");

- April 18, 2013, Plaintiffs' counsel noticed the deposition of Chip Fenton for June 3, 2013, at a location to be determined in North Dakota, and after Central Washington had duly noticed Mr. Fenton's deposition for May 16, 2013. (See Plaintiffs' Notice of Taking Videotaped Deposition of Chip Edward Fenton, attached hereto as Exhibit "K");

- April 30, 2013, Central Washington's counsel sent an e-mail to Mr. Fenton's counsel addressing the issues related to the scheduling of Mr. Fenton's deposition, including the fact that Mr. Fenton's counsel failed to provide Central Washington with potential deposition dates despite Mr. Fenton's counsel's apparent cooperation with Plaintiff's counsel who noticed Mr. Fenton's deposition for June 3, 2013 without any input from Central Washington and Central Washington's counsel's inability to vacate Mr. Fenton's May 16 deposition under the scheduling order in place at that time. (E-mail from Ashlie Surur to Bruce Dickinson dated April 30, 2013, attached hereto as Exhibit "L");

- May 1, 2013, Central Washington's counsel conducted a conference call with counsel for all parties to discuss the deposition of Chip Fenton. (See Ex. "C"). Central Washington's counsel was agreeable to rescheduling its noticed May 16, 2013 deposition to June 3, 2013 solely as an accommodation to Mr. Fenton and his attorney so long as the parties and the court agreed to extend the existing discovery deadlines to ensure Mr. Fenton was deposed before the initial expert disclosure deadline. (*Id.*). Central Washington never agreed to vacate its May 16 notice or to allow Plaintiffs to proceed first on any June 3 deposition. (*Id.*).

- May 3, 2013, Central Washington's counsel joined in the notice served by Plaintiffs' counsel for the deposition of Chip Fenton, in Bismarck, North Dakota, on June 3, 2013. (See Joinder to Plaintiffs' Notice of Taking Deposition, attached hereto as Exhibit "M");

- May 6, 2013, Central Washington's counsel verbally discussed with counsel for Plaintiffs and Third Party Defendant Mr. Fenton to permit counsel for Central Washington to conduct Mr. Fenton's deposition, in an attempt to resolve the matter, causing Mr. Fenton's counsel to defer the decision until after he privately discussed the request with Plaintiffs' counsel (Declaration of Steven T. Jaffe, Esq., attached hereto as Exhibit "N");

- May 8, 2013, counsel for Mr. Fenton refused to relent on Plaintiffs' counsel taking the lead on the deposition, for the first time suggesting that counsel for the Plaintiffs have sought a date for this deposition for quite some time (See E-mail dated May 8, 2013, from Bruce Dickinson, within e-mail chain attached hereto as Exhibit "O");

- May 8, 2013, counsel for Central Washington responded by suggesting that the deposition notice for May 16, 2013 (erroneously noted as May 17), remains in effect, but that counsel would agree to vacate it in exchange for being allowed to conduct the lead in the deposition on June 3. (See E-mail dated May 9, 2013, from Steven Jaffe, within e-mail chain attached Ex. "O");

- May 9, 2013, counsel for Mr. Fenton refused to relent, erroneously suggesting that this had to do with prior agreements to accommodate parties being deposed out of state. (See email dated May 9, 2013, from Bruce Dickinson, within e-mail chain attached hereto as Ex. "O");

- May 9, 2013, counsel for Central Washington again responded to counsel for Fenton, pointing out how this had nothing to do with accommodating clients out of state, and again offering to compromise and vacate the May deposition in exchange for an agreement that counsel for Central Washington conduct the lead in taking Mr. Fenton's deposition. (See email dated May 9, 2013, from Steven Jaffe, within email chain attached hereto as Ex. "O");

- May 10, 2013, counsel for Fenton refused to relent, suggesting that counsel for Central Washington file a motion with this court (See email dated May 10, 2013, from Bruce Dickinson, within e-mail chain attached hereto to as Ex. "O");

- May 10, 2013, counsel for Central Washington wrote to counsel for Fenton, expressing concern that counsel for Fenton and Plaintiffs were engaging in collusion, laying out the basis for counsel for Central Washington to proceed taking the deposition, and making one final attempt to resolve the matter without filing a motion. (See letter dated May 10, 2013, from Steven Jaffe to Bruce Dickinson, attached hereto as Exhibit "P");

- May 10, 2013, counsel for Plaintiffs confirmed that no agreement exists between counsel for Plaintiffs and Mr. Fenton, confirming that he and counsel for Mr. Fenton have been openly communicating about the deposition without including counsel for Central Washington in those discussions, and refusing to relent and allow counsel for Central Washington to conduct the lead in the deposition of Mr. Fenton, suggesting that counsel for Central Washington file this motion (See e-mail dated May 10, 2013, from Tim Tietjen, attached hereto as Exhibit "Q");

- May 13, 2013, counsel for Mr. Fenton confirmed that Mr. Fenton will not agree to being deposed until June 3, 2013, in Bismarck, North Dakota. (See e-mail dated May 13,
2013, from Bruce Dickinson, attached hereto as Exhibit "R");

- May 16, 2013, Chip Fenton failed to appear for his deposition, causing counsel for Central Washington to take a Notice of Non-Appearance, after confirming with his counsel during the deposition that he would not be appearing. (See Transcript, dated May 16, 2013, attached hereto as Exhibit "S").

(#98).

## C.    Defendants' Arguments

Defendants ask this court to sanction Mr Fenton for failing to appear for his deposition on May 16, 2013, as scheduled, "including striking his defenses, or for other sanctions as this Court deems appropriate; or, in the alternative, for an order allowing counsel for Central Washington to conduct Mr.

28

Fenton's deposition, in Bismarck, North Dakota, on June 3, 2013, as lead counsel." (#98). Defendants argue that counsel for Fenton previously took the position that since defendants brought Fenton into the law suit, "the obligation to prove the case against Mr. Fenton during depositions fell to Central Washington, before Mr. Fenton became obligated to respond." *Id.* Defendants use the deposition of Trooper Michael Simon as an example of this, where Fenton's counsel deferred questioning until defendants' counsel could examine the witness. *Id.*

Defendants assert that the "facts clearly suggest that counsel for Mr. Fenton wants Plaintiffs' counsel, who never chose to sue Mr. Fenton, to take this deposition and establish his client's innocence; rather than allow counsel for Central Washington to depose Mr. Fenton and potentially attack him, and raise issues about his liability." *Id.* Defendants also assert that "Mr. Fenton apparently intentionally refused to appear for two depositions in Las Vegas, and his counsel acted to make sure that a friendly attorney depose his client, rather than an adverse attorney, to try and sanitize the deposition, even though Central Washington sued Mr. Fenton." *Id.* Defendants state that their counsel "openly sought Mr. Fenton's deposition for several months," and that if plaintiff's counsel sought Fenton's deposition, "it was only through private discussions between counsel, without including counsel for Central Washington in those discussions," which was improper. *Id.*

Defendants seek sanctions under Rule 37 for "refusing to abide by a duly issued deposition notice, without obtaining a protective order, including striking his defenses; or, in the alternative, for an order allowing Central Washington to conduct the lead in Mr. Fenton's deposition on June 3." *Id.* Defendants assert that when determining whether to impose sanctions in the form of striking affirmative defenses and the answer, the court must "weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir.1987)." *Id.*

29

Defendants assert that Fenton's failure to appear at the deposition should result in one of the two sanctions: (A) an order for sanctions against Mr. Fenton, which include the following:1. Striking Mr. Fenton's defenses; 2. Preventing any further depositions of Mr. Fenton; and 3. Compelling Mr. Fenton to reimburse Central Washington for having to file this motion and for the fees and costs incurred taking his deposition when he did not appear; or (B) if this court denies the request to strike Mr. Fenton's defenses and to preclude his deposition from proceeding, then it asserts that it should be permitted to proceed as lead counsel during Mr. Fenton's deposition on June 3, 2013, and to be reimbursed the costs and fees by Mr. Fenton for having to file this Motion and for the fees and costs incurred taking his deposition when he did not appear. *Id.*

Defendants assert that **it is "abundantly obvious"** that Mr. Fenton is colluding with Plaintiffs' counsel against Central Washington," and provides several situations to support this assertion. *Id* (emphasis in original). Defendants also assert that it is "disingenuous for Mr. Fenton's counsel to work with Plaintiffs' counsel to conduct this deposition, to the exclusion of Central Washington's counsel." *Id.* Defendants state that they were left no choice but to file the motion with the court and ask the court to issue an order granting one of the requested forms of relief.

The motion for protective order (#99) filed on the same day as the motion for sanctions sought a protective order to prevent Mr. Fenton's June 3, 2013, "rogue deposition from proceeding" pending the court's ruling on the motion for sanctions (#98). The court's order scheduling the hearing on this matter, ordered that "the deposition of Chip Fenton is stayed pending the resolution of Defendants' Emergency Motion (#99)." (#103). The motion (#99), therefore, was granted by the minute order. *Id.*

### D.     Counter-Motion for Costs, Fees, and Sanctions  (#101)

Third-party defendant Zemke filed a counter-motion for costs, fees, and sanctions, asserting that defendants' version of the "facts" are incorrect, and providing the following "correct and pertinent facts:"

1)      The deposition of Chip Fenton was noticed on April 18, 2013, and set for June 3, 2013

in Bismark, North Dakota.

2) On May 1, 2013, during a conference call on discovery, the parties discussed the deposition of Chip Fenton. It was unanimously agreed that the deposition would occur June 3, 2013, in Bismark. North Dakota.

3) On May 3, 2013, CWA filed[23] a "joinder" to the June 3, 2013, notice of Deposition.

4) On May 6, 20 13, (during a break from the deposition of Mitchell Zemke) CWA once again confirmed the June 3, 2013 date for the deposition of Chip Fenton. Counsel for Mitchell Zemke made flight arrangements and hotel arrangements that same day, during a break in the deposition.

5) Following confirmations on May 13 and May 16 by CW A that the deposition of Chip Fenton was still going forward, counsel for Mitchell Zemke (the undersigned) informed counsel for CW A that the undersigned was not available on May 16, that the undersigned had relied upon the June 3, 2013 setting agreed upon at the May 1, 2013 conference call, and confirmed on May 3 and May 6, and that the undersigned would be seeking sanctions (costs and fees) if the June 3, 2013 deposition did not proceed as scheduled.

(#101).

Zemke argues that defendants' counsel agreed that the deposition would occur on June 3, 2013, and that counsel even served a Joinder to the deposition notice (Exhibit "M" to defendants' motion). *Id.* Zemke asserts that the "pattern of conduct by CW A in this case is to wait until the last moment before filing emergency discovery motions, requesting that depositions be cancelled." *Id.* Zemke also asserts that the motion was "filed because CW A feels it is being denied its "right" to question Mr. Fenton first," but that counsel "does not allege that it will have insufficient time to ask his questions, or that the party that noticed Fenton's deposition (Slagowski) will usurp too much time at the deposition." *Id.* "Instead, CW A's reason for cancelling the deposition is because it cannot question the witness first. This argument is not an issue supported by law, is not a matter of an "emergency" nature, and is unworthy of the Court's time." *Id.*

Zemke argues that the motion is an abuse of the discovery rules and that the court should impose sanctions, and award fees and costs to him for having to file the instant motion and oppose the emergency motion. *Id.*

Slagowski Plaintiffs filed a joinder to Zemke's counter-motion (#101), stating that they join in

---

[23] The defendants did not "file" a joinder on the court's docket, rather the defendants served a joinder to the deposition notice.

1   the request for fees, costs, and sanctions against CWA and its attorney Steve Jaffe for filing the

2   frivolous motion pursuant to Rule 37(B) and Rule 11.  (#102).  The Law Plaintiffs filed a joinder to

3   Zemke's counter-motion (#101).  (#106).  The Fenton Defendants also filed a joinder to Zemke's

4   counter-motion (#101) seeking fees, costs, and sanctions against CWA and its attorney.  (#109).

5          **E.     Oppositions to Emergency Motion for Protective Order (#104) and (#107)**

6          On May 29, 2013, Slagowski Plaintiffs filed an opposition to defendants' *emergency* motion for

7   protective order (#99), asking this court to deny the motion (#99) and issue sanctions against defendants

8   and counsel for engaging in "improper conduct."  (#104).  The motion for protective order sought to

9   stay the June 3, 2013, deposition.  (#99).  On May 29, 2013, the court ordered "that the deposition of

10  Chip Fenton is stayed pending the resolution of Defendants' *Emergency* Motion (#99)."  (#103).  The

11  court, therefore, granted the defendants' requested relief and need not address each of the Slagowski

12  Plaintiffs' arguments relating to staying the June 3, 2013, deposition (#104).  The Law Plaintiffs filed

13  a joinder to the Slagowski Plaintiffs' opposition (#104) regarding the deposition on June 3, 2013.

14  (#105).

15         The Fenton Defendants' opposition asserts that all of the attorneys agreed to conduct Mr.

16  Fenton's deposition on June 3, 2013, in Bismarck, and that Mr. Fenton, who owns and operates a small

17  trucking company and almost works exclusively in rural North Dakota, arranged to take off the entire

18  day from work and travel to attend the deposition.  (#107).[24]  The Fenton Defendants ask the court to

19  deny the motion (#99), to permit the June 3, 2013, deposition to proceed as noticed, and to enter

20  sanctions against CWA for reasonable attorney fees for being required to prepare and file the

21  opposition.  *Id.*  The court already stayed the deposition for June 3, 2013.  (#103).  The court, therefore,

22

23         [24] On June 26, 2013, defendants filed a notice of no response to their motion for sanctions against third-party
24  defendant Fenton (#98).  (#121).  As the court noted during the hearing (#123), the court construes the Fenton
    Defendants' opposition to the motion for protective order (#99) as an opposition to both the motion for sanctions (#98)
25  and the motion for protective order (#99).  In the future, counsel must link any opposition or reply to the appropriate
    motions they address.

26                                                      32

need only determine if sanctioning CWA and its attorney is appropriate, and whether the newly scheduled deposition should take place in Mr. Fenton's residence or principle place of employment and which party may examine Mr. Fenton first.

### F.    Defendants' Opposition to Counter-Motion (#113)

Defendants filed their opposition in response to Zemke's counter-motion (#101) and the joinders thereto (#102 and #106), and as a supplement to their motion for sanctions against Mr. Fenton (#98). (#113).  The defendants assert that they were willing to take the deposition on June 3, 2013, but that all they requested in return was to be afforded the right to proceed with the deposition as lead counsel given that defendants had noticed the deposition twice before, with one notice that remained in effect. *Id.*

Exhibit A to the opposition is a letter from defense counsel dated May 10, 2013, wherein counsel states that (1) the deposition scheduled for May 16, 2013, was still going forward, (2) if Fenton Defendants wanted a protective order to file a motion, (3) that if Fenton fails to appear, counsel will take a non-appearance and move for sanctions, (4) that when counsel agreed to the June 3, 2013, date counsel did <u>not</u> agree to take second position and never intended to, (5) that counsel will vacate the May 16, 2013, deposition <u>only</u> if the Fenton Defendants agree that defendants proceed as the lead counsel, (6) if counsel will not agree to that, Mr. Fenton is required to appear or to file a protective order, (7) defense counsel will move for a protective order stopping the deposition of June 3, 2013, if Mr. Fenton does not appear at the May 16, 2103 deposition, and (8) he is concerned that there is some agreement between Fenton counsel and counsel for the plaintiffs.  (#113 Exhibit A).

Defendants argue that this letter confirms that all parties were aware that the motions (#98 and #99) would be filed if Mr. Fenton did not appear at the May 16, 2013, deposition and the parties would not agree to defense counsel taking lead at the June 3, 2013, deposition. (#113).  The motions (#98 and #99), filed after Mr. Fenton failed to appear and counsel would not agree that defense counsel would take lead at the June 3, 2013, deposition, were properly filed and in good faith. *Id.*  Zemke's "counter-

33

motion" and the joinders thereto, however, were not properly filed, defendants argue, as the defendants' motions (#98 and #99) were directed towards Mr. Fenton and his conduct, and not Zemke or any other party. *Id.* Zemke could have filed a separate motion, but the "counter-motion" was inappropriate. *Id.*

Defendants argue that their only option was to file a motion for protective order staying the June 3, 2013, deposition until the court could resolve the issue, and that this was proper and in good faith in light of Mr. Fenton's choice not to appear. *Id.* The defendants contend that any fees and costs have been incurred due to Mr. Fenton's failure to appear, and that defendants provided the parties with sufficient notice of their intent to file the motions (#98 and #99) and attempted to resolve the dispute *before* bringing it to the court's attention, but the parties could not to resolve the issue. *Id.*

Defendants assert that Zemke only provides the court with a portion of the e-mail chain and "intentionally omitt[ed]...all remaining segments of the e-mail chain, most notoriously the one that unqualifiedly established beyond any doubt that Zemke's counsel had knowledge of the dispute and about a potential protective order three weeks before the rogue deposition of Mr. Fenton noticed for June 3." *Id.* Defendants ask this court to "dismiss or deny the Third-Party Defendant Mitchell Zemke's Countermotion for Costs, Fees, & Sanctions (Doc 101), Plaintiff's Joinder (#102) and Doreen and Phillip Law's Joinder (106)," or in the alternative, properly "assess any recoverable attorney's fees and costs related to the depositions of Mr. Fenton..." *Id.*

On June 18, 2013, defendants filed an ERRATA containing the e-mail chain inadvertently left off of the Exhibit attached to the opposition (#113). (#114). The e-mail chain demonstrates that:

> (1) on May 10, 2013, plaintiffs' counsel sent an email in response to the May 10, 2013, letter, stating that defense counsel does not have priority to depose Mr. Fenton first, does not have jurisdiction to compel Mr. Fenton to appear in Las Vegas for his deposition, and can depose Mr. Fenton on June 3, 2013, <u>after</u> plaintiffs' counsel deposes him for approximately 2 hours, and that counsel can either agree to that or "seek an order from the court attempting to change the current plan;"

> (2) on May 10, 2013, counsel for Zemke emailed stating that he made specific travel plans for the deposition on June 3, 2013, to be conducted in North Dakota after no one objected to the specific date and time of the deposition, that he is not available for May 16, 2013, for the deposition, that it was his understanding that the May 16, 2013,

deposition was off when the June 3rd date was agreed upon, that he expected the June 3rd deposition to proceed, and that he will seek fees and costs if he has to file any sort of opposition to a motion to vacate the June 3, 2013, deposition;

(3) on May 12, 2013, defense counsel responded that he acknowledged that they all agreed to the June 3, 2013, deposition date, and that he was willing to vacate the May 16, 2013, deposition if *he could be lead on the deposition*, and that the May 16, 2013, (as the parties agreed to take depositions in the deponents' state of residency) deposition could be moved to North Dakota to accommodate Mr. Fenton; and

(4) On May 13, 2013, counsel for Zemke responded that if the deposition on June 3, 2013, did not go forward, counsel would be seeking costs and fees from the responsible party.

(#114-1).

### G.    Zemke Reply in Support of Counter-Motion (#118)

Zemke argues that the assertion that all parties were on notice of the May 16, 2013, deposition proceeding as noticed is without merit, as "[i]t was unanimously agreed that the deposition would occur on June 3, 2013 in Bismark, North Dakota," and while there were discussions during a deposition on May 6, 2013, regarding who would depose Mr. Fenton first, "there was never a suggestion that the deposition would not go forward." (#118). Zemke states that further discussions regarding this issue were exclusively between plaintiffs' counsel, CWA counsel, and Fenton, thereby making it so Zemke was unaware that the issue had not been resolved. *Id.* Zemke asserts that May 10, 2013, was the first time Zemke was made aware of the issue, and that he re-confirmed that he was not available on May 16, 2013, at that time. *Id.*

Zemke also argues that his counter-motion was proper, as "[t]he "issue" was a properly noticed and agreed upon deposition, to be attended by all parties on June 3. When that deposition was improperly cancelled, Zemke (and Plaintiffs) had every right to oppose CWA's actions and requests costs and fees incurred." *Id.* Zemke asserts that "[w]hen the schedules of attorneys are interrupted, as in the present case, they are entitled to seek a remedy. Furthermore, the conduct of CWA in cancelling last minute depositions cannot be supported or condoned." *Id.*

Slagowski Plaintiffs filed a joiner to Zemke's reply (#119), and counterclaimant Mitchell Zemke

and plaintiff Kathryn Zemke filed a joinder to Zemke's reply (#120).

**H.    Discussion**

The court finds that the sequence of events leading up to the filing of these motions (#98 and #99) is important to note.   On April 3, 2013, defendants noticed the deposition of Mr. Fenton for May 16, 2013, at 9:00 a.m. in Las Vegas, Nevada.  (#98-9).  On April 18, 2013, the Slagowski Plaintiffs noticed the deposition of Mr. Fenton for June 3, 2013, at 9:30 a.m. in North Dakota.  (#98-12).  During the June 27, 2013, hearing, the parties represented to the court that *all* parties agreed on a May 1, 2013, conference call that the deposition of Mr. Fenton would be on June 3, 2013.  (#123).  There was no discussion during the conference call of which attorney would depose the witness first, and on May 3, 2013, defendants served a document entitled "Joinder to Plaintiffs' Notice of Taking Videotaped Deposition of Chip Edward Fenton," Date: June 3, 2013, Time: 9:30 a.m."  (#98-14 Exhibit M).   The joinder did not contain any conditions or a stipulation that defense counsel would only agree to the June 3, 2013, deposition *if* counsel was able to depose Mr. Fenton first.  *Id.*

Federal Rule of Civil Procedure 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)."  Pursuant to Rule 30(b)(1), "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address."  Fed. R. Civ. P. 30(b)(1).  Rule 30 permits *any* party to notice the deposition of Mr. Fenton in this action, and does not require that the noticing party be the party that brought Mr. Fenton in this action.  *See* Fed. R. Civ. P. 30.  The Slagowski Plaintiffs' notice of Mr. Fenton's deposition for June 3, 2013, was served on all parties on April 18, 2013, which is "reasonable...notice" as required by Rule 30(b)(1).  (#98-12).  The notice was also proper, as it stated that the deposition would take place on June 3, 2013, at 9:30 a.m. in North Dakota, "at a site to be assigned..." *Id*; Fed. R. Civ. P. 30(b)(1).

As the Slagowski Plaintiffs properly noticed the Fenton deposition (#98-12), plaintiffs' counsel

is permitted to re-notice the Fenton deposition and examine Mr. Fenton first.  The court finds that this is appropriate, as plaintiffs noticed the deposition (which was joined by defendants (#98-14)), plaintiffs have an interest in obtaining Mr. Fenton's deposition testimony, and plaintiffs' counsel represented to the court that he intends to examine Mr. Fenton for approximately two hours, leaving five hours of examination for defense counsel. *See* (#123); Fed. R. Civ. P. 30 (d)(1)(providing that depositions are limited to one day of seven hours).  Defense counsel argued during the hearing that since the deposition testimony of Mr. Fenton may need to be used at trial in the event Mr. Fenton fails to appear at the trial, and defendants brought Mr. Fenton into the action, defense counsel is entitled to depose Mr. Fenton first. (#123).  The court finds that if this is a legitimate concern and the deposition testimony may need to be presented at trial, this supports a finding that plaintiff should be afforded the opportunity to examine Mr. Fenton first as they would at trial.

The court finds that awarding sanctions, fees, and costs in this action is not appropriate at this time.  Mr. Fenton's counsel relied upon the agreement of all the parties and the Slagowski Plaintiffs properly served deposition notice in concluding that Mr. Fenton's deposition would take place on June 3, 2013.  (#98-12, #98-14, and #123).  Defense counsel sent a May 10, 2013, letter regarding the May 16, 2013, deposition and the issue of which counsel could depose Mr. Fenton first if the June 3, 2013, deposition proceeded. (#114-1 Exhibit A)).  Defense counsel also stated that he intended on conducting the May 16, 2013, deposition and taking a notice of non-appearance if he could not examine Mr. Fenton first at the June 3, 2013, deposition, and the Slagowski Plaintiffs' counsel responded via email welcoming a motion from defense counsel if he took issue with being second at the June 3, 2013, deposition. *Id.* Mr. Fenton did not appear at the deposition, and defendants took a notice of non-appearance and filed the motion.  (#98).

The court finds that both parties are responsible for the fees and costs associated with the motion practice surrounding the issue of the Fenton deposition, and that awarding fees and costs and issuing sanctions is inappropriate.

Accordingly, and for good cause shown,

IT IS ORDERED that defendants Central Washington Asphalt, Inc., Donald Hannon, James Wentland and Jerry Goldsmith's Motion to Stay Civil Proceedings Pending Anticipated Criminal Proceedings (#73) is DENIED.

IT IS THEREFORE ORDERED that:

(1)  The parties may depose the individual defendants, and the defendants can assert their Fifth Amendment privilege on a "question by question" basis as provided for in *Doe v. Glanzer,* 232 F.3d 1258, 1265 (9th Cir. 2000).[25]

(2) If, after the December 12, 2013, statute of limitations expires, no criminal indictments are filed against the individual defendants, and any party wishes to depose the individual defendants again,  the individual defendants may be re-deposed.  The depositions will be limited to those questions where defendants previously asserted their Fifth Amendment privilege.

(3) The parties may also elect to postpone the depositions of the individual defendants until *after* the December 12, 2013, statute of limitations expires.  If the parties do so, they must schedule the depositions now to ensure they are completed by the court's January 3, 2014, deadline.

(4) The depositions of the individual defendants must be conducted on or before January 3, 2014.

IT IS THEREFORE ORDERED that the dispositive motions deadline is January 15, 2014, and the Joint Pre-Trial Order deadline is February 14, 2014.

IT IS FURTHER ORDERED that Law Plaintiffs' Counter-Motion for Attorney Fees, Court Costs, and Sanctions  (#81) is DENIED.

---

[25] The parties may also stipulate to which questions the defendants intend to assert their Fifth Amendment privilege.

1    IT IS FURTHER ORDERED that defendants' Motion for Sanctions Regarding Discovery

2  Against Third-Party Defendant Chip Fenton for Failure to Appear for His Deposition (#98) is DENIED.

3    IT IS FURTHER ORDERED that defendants' *Emergency* Motion for Protective Order (#99)

4  was GRANTED in the court's May 29, 2013, Minute Order (#103) staying the June 3, 2013, deposition.

5    IT IS THEREFORE ORDERED that the Slagowski Plaintiffs' counsel may re-notice Mr.

6  Fenton's deposition and examine Mr. Fenton first.

7    IT IS FURTHER ORDERED that Third-Party Defendants Mitchell Forest Zemke's Counter-

8  Motion for Attorney Fees, Costs, and Sanctions (#101) is DENIED.

9    DATED this 2nd day of July, 2013.

10   _____

11   **CAM FERENBACH**
     **UNITED STATES MAGISTRATE JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                              39