UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CANDACE SLAGOWSKI *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL WASHINGTON ASPHALT, INC., *et al.*, <br><br> Defendants. | Case No. 2:11-cv-00142-APG-VCF <br><br> **ORDER** |

This Order addresses the Objections to Magistrate Judge Ferenbach's December 9, 2013 Order [Dkt. #189] filed by Third-party Defendant Doreen Lea Law [Dkt. #204], Third-party Defendant Mitchell Forest Zemke [Dkt. #205], Defendants Central Washington Asphalt, Inc. and Jerry Goldsmith [Dkt. #208], and Defendants Donald Hannon and James Wentland [Dkt. #210]. For the reasons set forth below, the December 9 Order is affirmed in part and modified in part.

## I.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The factual background and procedural posture of this discovery dispute are detailed in Judge Ferenbach's two orders, dated July 2, 2013 [Dkt. #124 (published as *Slagowski v. Cent. Washington Asphalt*, 291 F.R.D. 563 (D. Nev. 2013))] and December 9, 2013 [Dkt. #189]. This case arises from a December 12, 2010 fatal automobile accident on Nevada State Route 318. Plaintiffs contend that Defendants caused that accident. Defendants Wentland, Hannon and Goldsmith feared prosecution for crimes related to the accident. They sought to stay their depositions in this case until December 12, 2013, when the statute of limitations for most of the potential criminal charges expired. Otherwise, they argued, the potential for prosecution would force them to invoke their Fifth Amendment rights against self-incrimination during their depositions. This could give rise to negative inferences against them in this civil case.

Judge Ferenbach's July 2 Order thoroughly analyzed the competing interests and case law, and established a procedure to resolve the problem in a fair and inexpensive manner. Judge Ferenbach allowed Wentland, Hannon, and Goldsmith to be deposed immediately under the following conditions: (1) they could assert their Fifth Amendment rights on a question-by-question basis; and (2) Plaintiffs could redepose them after December 12, 2013 with regard to questions to which they asserted the privilege. *See Slagowski*, 291 F.R.D. at 585-86. Alternatively, the parties could postpone the depositions in their entirety until after December 12, 2013, provided that the depositions were completed by January 3, 2014. *Id.*

Plaintiffs chose the former path and deposed Wentland and Hannon on August 21 and 22, 2013. Hannon answered approximately 943 questions [Dkt. #172 at 9:24], and pled the Fifth approximately 319 times (Dkt. #159 at 6:13]. Wentland answered approximately 990 questions [Dkt. #172 at 10:12], and pled the Fifth approximately 191 times [Dkt. #159 at 6:14].

On August 28, 2013, Defendants issued notices that they would depose Wentland, Hannon, and Goldsmith in Seattle. [Dkt. #172-17.] The Plaintiffs moved for a protective order (1) compelling Wentland, Hannon, and Goldsmith's depositions to take place in Las Vegas after December 12, 2013; (2) preventing Defendants from questioning these defendants until after Plaintiffs' counsel finished questioning them; and, (3) imposing monetary sanctions against defense counsel and Wentland, Hannon, and Goldsmith for abusing the Fifth Amendment privilege. [Dkt. #159 at 13:4–12.]

On December 9, 2013 Judge Ferenbach entered his Order finding that Hannon and Wentland abused the Fifth Amendment privilege. [Dkt. #189 at 12:15-21.] Accordingly, he vacated the Seattle depositions and ordered Hannon, Wentland, and Goldsmith to be re-deposed in Las Vegas after December 12, 2013 but before the Defendants depose them. He further ordered that "the scope of Hannon, Wentland, and Goldsmith's depositions will be limited to: (1) any previously asked question to which Hannon or Wentland asserted the Fifth Amendment privilege, and (2) any other area of inquiry not previously pursued." [*Id.* at 12:22-24.] Judge Ferenbach also ordered that defendants Central Washington Asphalt, Hannon, Wentland, and

Goldsmith are barred from "withdrawing assertions of the Fifth Amendment or testifying about the same subject[] matters with regard to Central Washington Asphalt, Hannon, Wentland, and Goldsmith's claims against [Third-party Defendants Chip] Fenton and Fenton Trucking, LLC." [*Id.* at 13:1-4 (citing *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008)).]

Objections to the December 9 Order were filed by Third-party Defendants Law [Dkt. #204] and Zemke [Dkt. #205], Defendants Central Washington Asphalt and Goldsmith [Dkt. #208], and Defendants Hannon and Wentland [Dkt. #210]. The crux of the Objections is whether Hannon and Wentland properly invoked their right against self-incrimination under the Fifth Amendment. If so, then the sanctions imposed against the Defendants unfairly punish them. On the other hand, if Hannon and Wentland abused the privilege, then Third-party Defendants Law and Zemke request the same evidentiary benefit as the Fenton parties (i.e., barring Defendants from withdrawing their assertions of the privilege and from offering testimony in support of their third-party claims against them).

## II.   STANDARD OF REVIEW

Although discovery orders generally are considered non-dispositive, courts "must look to the effect of the motion, in order to determine whether it is properly characterized as 'dispositive or non-dispositive of a claim or defense of a party.'" *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004) (quoting *Maisonville v. F2 America*, 902 F.2d 746, 747 (9th Cir. 1990)). Here, Judge Ferenbach's December 9 Order precludes Defendants from supporting their claims against the Fenton parties with testimony from Hannon, Wentland and Goldsmith that contradicts their assertions of the privilege. Defendants are not precluded from offering other evidence to support their claims.[1] While the December 9 Order hampers the Defendants' ability to support their claims, it is not dispositive of those claims. Thus, the December 9 Order will be

---

[1] Indeed, Defendants have offered other evidence in opposition to the Motion for Summary Judgment [Dkt. #143] that the Fenton parties joined. [*See generally*, Dkt. #156.]

upheld unless it is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A); Local Rule IB 3-1. "The 'clearly erroneous' standard applies to the magistrate judge's factual determination and discretionary orders and will be overturned 'only if the district court is left with the definite and firm conviction that a mistake has been made.'" *Ctr. for Biological Diversity v. Fed. Highway Admin.*, 290 F. Supp. 2d 1175, 1199-1200 (S.D. Cal. 2003) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir.1997)).

### III. ANALYSIS

#### A. The Fifth Amendment Privilege

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "[T]he privilege [against self-incrimination] . . . can be asserted in any proceeding . . . in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding." *United States v. Balsys*, 524 U.S. 666, 672 (1998); *see also Francis v. Wynn Las Vegas, LLC*, 262 P.3d 705, 711 (Nev. 2012).

> The privilege afforded not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would ***furnish a link in the chain of evidence needed to prosecute the claimant*** for a . . . crime. . . . But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. . . . It is for the court to say whether his silence is justified, . . . and ***to require him to answer if "it clearly appears to the court that he is mistaken."*** . . . However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, ***it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.***

*Hoffman v. U. S.*, 341 U.S. 479, 486-87 (1951) (emphasis added, citations omitted). *See also Pillsbury Co. v. Conboy*, 459 U.S. 248, 266 n.1 (1983) (Marshall, J., concurring) ("A witness is generally entitled to invoke the Fifth Amendment privilege against self-incrimination whenever there is a realistic possibility that his answer to a question can be used in any way to convict him of a crime."); *Kastigar v. United States*, 406 U.S. 441, 445 (1972) (same); *United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998) (same).

"The court should order a witness invoking his Fifth Amendment rights to answer questions '"only if it is 'perfectly clear' that the witness is mistaken and the answers 'cannot possibly' tend to incriminate. In making this determination the judge must liberally construe the privilege in favor of the right it was intended to secure."'" *United States v. Castorena-Jaime*, 285 F.3d 916, 931 (10th Cir. 2002) (quoting *United States v. Nunez*, 668 F.2d 1116, 1121 (10th Cir. 1981)).

"[I]n civil cases where related criminal charges are involved, tension will arise between plaintiffs' rights to a just and timely adjudication and defendants' rights to refuse to answer under the Fifth Amendment upon a reasonable fear of prosecution." *Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 932 (7th Cir. 1983). "Where the invoking party makes a timely request for accommodation of a legitimate self-incrimination concern, courts 'should explore all possible measures' to accommodate the privilege." *Francis*, 262 P.3d at 711. As the *Francis* court pointed out, "a special effort to accommodate the privilege may be warranted where the defendant faces parallel civil and criminal proceedings ... arising from the same set of facts." *Id.* Judge Ferenbach's July Order was such an accommodation to Hannon, Wentland and Goldsmith.

### B. Application of the Privilege.

In his December 9 Order, Judge Ferenbach found that Wentland and Hannon abused the Fifth Amendment's protections. [Dkt. #189 at 10:1.] Among other things, Judge Ferenbach was

troubled by their assertion of the privilege regarding: (1) training Hannon received in the 1980s; (2) accidents, if any, Hannon incurred as an earth moving equipment operator; (3) Hannon's knowledge of the Federal Motor Carrier Safety Regulations; (4) whether Hannon and Wentland worked for Central Washington Asphalt; (5) whether Wentland had driven from Moses Lake to Phoenix on behalf of Central Washington Asphalt before the underlying accident occurred; and, (6) whether Central Washington Asphalt ever reimbursed Wentland for his meals. [*Id.* at 10:12-23 (including citations to other alleged abuses).]

However, as explained in the Objections filed by Hannon and Wentland [Dkt. #210], the answers to these questions could provide a link in the chain of evidence needed to prosecute them. Plaintiffs allege that Hannon, Wentland and Goldsmith caused the death of one person and serious injuries to others by their improper operation of motor vehicles. [*See, generally*, Dkt. #30.] Hannon, Wentland and Goldsmith reasonably feared being prosecuted for, among other crimes, Vehicular Homicide (under NRS 484B.657), Reckless Driving (under NRS 484B.653), and Conspiracy (under NRS 99.480). [*See* Dkt. #210 at 10:2 - 12:23.] Their fear is bolstered by the Nevada Highway Patrol's recommendation that the Nye County District Attorney prosecuted them for violating "limitations on overtaking on left side," (NRS 484B.213), "leaving the scene of an accident" (NRS 484E.010), and "failure to render aid and give information" (NRS 484E.030). [*See* Dkt. #210-3.]

Testimony about the training Hannon and Wentland received, their knowledge of federal safety regulations, and their familiarity with the particular stretch of highway could provide links in the chain of evidence as to whether they acted negligently or recklessly, thereby helping the potential prosecution. [*See* Dkt. #210 at 14:21 - 17:4.] Testimony in response to questions about their cell phones, calls they may have made, and employment with Central Washington Asphalt could be used to place the Defendants at the scene of the accident, providing another link in the

chain of prosecution. [*See Id.* at 18:23–19:24, 20:14–21:7.][2] And even though such evidence may have been developed already through other sources (e.g., phone records), the Defendants cannot be compelled to testify about such evidence in violation of their Fifth Amendment rights.

While the Third-party Defendants argue that the specific topics and questions, on their face, do not incriminate these defendants, the

> questions and answers need not be directly incriminating. If a reply to a seemingly innocuous question reasonably will tend to sculpt a rung in the ladder of evidence leading to prosecution the privilege appropriately may be invoked. . . . In other words, testimony which might lead indirectly to evidence that then could be used in a future criminal prosecution is eligible for Fifth Amendment protection.

*United States v. Castro*, 129 F.3d 226, 229-30 (1st Cir. 1997). Here, the questions at issue could have provided evidence leading to the prosecution of these defendants. Even the Supreme Court has recognized that "a case may arise where there is a substantial allegation that furnishing identity . . . would have given the police a link in the chain of evidence needed to convict the individual of a separate offense. In that case, the court can then consider whether the privilege applies. . . ." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 191 (2004). Even in a close call, caution must be exercised and the privilege must be protected. *Castorena-Jaime*, 285 F.3d at 931 ("The court should order a witness invoking his Fifth Amendment rights to answer questions "'only if it is 'perfectly clear' that the witness is mistaken and the answers 'cannot possibly' tend to incriminate. In making this determination the judge must liberally construe the privilege in favor of the right it was intended to secure.""'"). Based on the foregoing, Hannon and Wentland's invocations of their right against self-incrimination were proper.[3]

---

[2] The Defendants' Objections provide additional justifications for the other instances when they invoked the Fifth Amendment privilege. [*See* Dkt. #210.]

[3] Judge Ferenbach was, no doubt, moved in part by the inappropriate threat by defense counsel that if Plaintiffs went forward with the depositions before the expiration of the statute of

7

While it might be argued that some of the witnesses' invocations of the privilege were not proper, the vast majority were proper. The July 2 Order permitted the witnesses to assert the privilege and then be re-deposed to answer questions to which they previously asserted the privilege. The error in the December 9 Order is in taking back that right provided in the July 2 Order, and now barring the Defendants "from withdrawing assertions of the Fifth Amendment or testifying about the same subject[] matters with regard to [their] claims against Fenton and Fenton Trucking, LLC." [Dkt. #189 at 13:1-4.] This punishes the Defendants for their mostly-proper invocation of the privilege.

Judge Ferenbach was rightly concerned about the Defendants using the privilege as "a sword and a shield," especially as it impacts the Fenton parties. [*Id.* at 11:11-23.] However, the procedures established in the July 2 Order prevented that by permitting the witnesses to be deposed a second time, after the statute of limitations expired. This procedure (confirmed in the December 9 Order) properly avoids the "sword and shield" problem discussed in *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992), because the parties (including the Third-party Defendants) still have the opportunity to fully question Hannon and Wentland under oath to prepare for trial (and to prepare dispositive motions). Hannon and Wentland now confirm unequivocally that they will testify without invoking the Fifth Amendment because the limitations periods for most of the potential crimes have now expired. [*See* Dkt. #231 at 3:24-4:25.] If they refuse to so testify at their second depositions without a proper basis, then significant sanctions may be warranted.

---

limitations, the witnesses would testify to "name, rank and serial number only." [Dkt. #179 at 4:17-20.] Such a threat is not only unprofessional (and a poor strategy), it casts a nefarious cloud upon the subsequent assertions of the privilege. Nevertheless, the Court must review those assertions in the context of the questions being asked. *United States v. Neff*, 615 F.2d 1235, 1239-40 (9th Cir. 1980) ("In determining whether such a real and appreciable danger of incrimination exists, a trial judge must examine the implications of the question(s) in the setting in which (they) are) asked. . . ." (internal quotation marks and citation omitted)).

The Fenton parties complain that they have been forced to incur "enormous time and expenses to defend the charges that the defendants have brought" against them, including "attending the 12 depositions which have been taken. . . ." [Dkt. #225 at 5:7-9.] But such expenses were not caused by Hannon and Wentland's invocation of the Fifth Amendment. Rather, they are litigation costs normally incurred in connection with such lawsuits. If the third-party claims filed against them are frivolous, they have recourse under Fed.R.Civ.P. 11, and other potential remedies. Moreover, the procedures set forth in the July 2 Order gave the parties the choice of waiting to depose Wentland, Hannon, and Goldsmith until after December 12, or proceeding with those depositions at the risk that the witnesses would have to be deposed a second time after invoking their Fifth Amendment rights. *Slagowski*, 291 F.R.D. at 586. Plaintiffs chose to proceed under that risk. If the witnesses properly asserted the privilege, then the Third-party Defendants suffered no harm because they would have to take the depositions a second time anyhow. Thus, the only harm they could suffer is having to re-ask questions that were improperly objected to, if any. Given that few, if any, of the assertions of privilege were improper, any prejudice is minimal.[4]

Because the court has a "definite and firm conviction that a mistake has been made," the December 9, 2013 Order must be modified in part. *Ctr. for Biological Diversity*, 290 F. Supp. 2d at 1199-200 (internal quotation marks and citation omitted). Specifically, the portion ordering that "Central Washington Asphalt, Hannon, Wentland, and Goldsmith are barred from withdrawing assertions of the Fifth Amendment or testifying about the same subject[] matters with regard to [their] claims against Fenton and Fenton Trucking, LLC" punishes Defendants for the rightful exercise of their Fifth Amendment rights.

---

[4] To the extent that the Fenton parties contend they are prejudiced because their expert witness already prepared his report [Dkt. 225 at 5:11-12], Magistrate Judge Ferenbach may consider allowing supplementation of that report after the depositions are completed.

Finally, the December 9 Order improperly limits the scope of Goldsmith's deposition to: "(1) any previously asked question to which Hannon or Wentland asserted the Fifth Amendment privilege, and (2) any other area of inquiry not previously pursued." [Dkt. #189 at 12:22-24.] Because Goldsmith was not previously deposed, the scope of his deposition should not be limited.

Based on the foregoing,

IT IS HEREBY ORDERED that the Objections filed by Law [Dkt. #204] and Zemke [Dkt. #205] are DENIED AS MOOT because the remedy awarded to the Fenton parties in the December 9 Order is hereby reversed. The two Objections filed by the Defendants [Dkt. ##208, 210] are GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Hannon, Wentland, and Goldsmith will be re-deposed in Las Vegas, but the Defendants may not commence their questioning until after the other parties complete their portions of the depositions of Hannon, Wentland, or Goldsmith.

IT IS FURTHER ORDERED that the scope of Hannon and Wentland's depositions will be limited to: (1) any previously asked question to which Hannon or Wentland asserted the Fifth Amendment privilege and (2) any other area of inquiry not previously pursued.

IT IS FURTHERER ORDERED that the parties will notify Magistrate Judge Ferenbach when the depositions will occur so that he may be available by phone to resolve objections if requested.

DATED this 18th day of February, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE