**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| CANDICE SLAGOWSKI, *et al.*, | |
| Plaintiffs, | 2:11–cv–00142–APG–VCF |
| vs. | **ORDER** |
| CENTRAL WASHINGTON ASPHALT, *et al.*, | |
| Defendants. | |

This matter involves the Slagowski family's wrongful death action and the Law family's consolidated personal injury action. Four motions are before the court. First, Third-Party Defendant Mitchell Zemke filed a motion *in limine* (#251[1]). Five parties joined in the motion. (*See* Docs. #253, #254, #256, #257, #258). Defendant Central Washington Asphalt responded (#260); and Zemke replied (#261).

Second, Zemke filed a supplemental motion *in limine* (#266). Three parties joined in the supplement. (*See* Docs. #267, #268, #269). In response, Central Washington Asphalt filed the third motion: a motion to strike (#271). Zemke opposed Central Washington Asphalt's motion to strike (#282). One party joined (*See* Doc. #283).

Fourth, Zemke filed an emergency motion for a protective order (#279). Three parties joined. (*See* Docs. #280, #281, #284). No oppositions were filed. For the reasons stated below, Zemke's motions are denied and Central Washington Asphalt's motion to strike is denied as moot.

---

[1] Parenthetical citations refer to the court's docket.

1

# BACKGROUND

For purposes of the motions before the court, the relevant facts include the circumstances surrounding (1) the collision and (2) the discovery dispute before the court. Both are addressed below.

**I.     The Collision[2]**

On December 12, 2010, Defendants James Wentland, Jerry Goldsmith, and Donald Hannon were driving trucks owned by Defendant Central Washington Asphalt. They were headed southbound on Nevada State Route 318. Route 318 is a two-lane road. It was six o'clock at night and dark.

Wentland and Goldsmith were driving in one truck, followed by Hannon in a second truck. Wentland pulled into the oncoming traffic lane, and passed four vehicles. Now, four more were in front of him, including a third truck driven by Third-Party Defendant Chip Fenton.

Having safely returned to the southbound lane, Wentland got on his citizens band ("CB") radio and told Hannon, who was driving behind him, that it was still safe to pass Fenton.

It was not. A GMC Envoy, driven by Third-Party Defendant Mitchell Zemke, was headed northbound. Fenton saw Zemke's approaching and told Hannon that it was not safe to pass. Hannon, nevertheless, relied on Wentland's advice, pulled into the oncoming traffic lane, and accelerated directly towards Zemke.

Zemke's wife, Kathryn, looked up from her phone and yelled at her husband because there were headlights in the northbound lane. It was Hannon. Zemke swerved right, drove into the dirt, temporarily lost control, overcorrected, and collided with three cars as he pulled back onto the road. Five people were injured, including Doreen and Phillip Law, and one person—Jon Slagowski—died.

---

[2] The facts regarding the collision are stated for background purposes only and do not constitute the court's factual findings. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

Fenton radioed Wentland, Goldsmith, and Hannon. He told them what had happened, and asked them to stop. In response, someone replied, "I'm in trouble."

Wentland, Goldsmith, and Hannon did not stop. They drove on for another forty miles until the Nevada Highway Patrol pulled them over, at which point they denied having any knowledge of the accident.

## II.     The Discovery Dispute

On June 9, 2011, the Slagowski family filed suit against Central Washington Asphalt, Wentland, Hannon, and Goldsmith. (*See* Compl. (#30 at 2).

On May 17, 2012, Central Washington Asphalt, Wentland, Hannon, and Goldsmith answered and filed an action, as third-party plaintiffs, against Doreen Law, Mitchell Zemke, Chip Fenton, and Fenton Trucking, LLC. (*See* Third Party Compl. (#44 at 1).

On August 8, 2012, Zemke answered the third-party complaint and counterclaimed against Central Washington Asphalt, Wentland, Hannon, and Goldsmith. (Answer (#53) at 5).

On August 13, 2012, Doreen and Phillip Law filed a separate action against Central Washington Asphalt, Wentland, Hannon, and Goldsmith. *See Doreen Law, et al. v. Central Washington Asphalt, Inc. et al.*, No. 12–cv–1435, Compl. (#1) at 2, (D. Nev. Aug. 13, 2012). In the separate action, Central Washington Asphalt counterclaimed against the Laws. (Counterclaim #12).

On November 27, 2012, the court consolidated both actions. *See Doreen Law, et al. v. Central Washington Asphalt, Inc. et al.*, No. 12–cv–1435, Min. Order (#15) (D. Nev. Nov. 27, 2012); *see also Slagowski et al. v. Central Washington Asphalt, Inc. et al.*, No. 12–cv–1475, Min. Order (#67) (D. Nev. Nov. 27, 2012).

Plaintiffs and counterclaimants contend that Hannon, Wentland, and Goldsmith are liable for the accident for two reasons: (1) Hannon failed to yield the right-of-way and caused Zemke to veer off the

3

road; and (2) Wentland mistakenly told Hannon that it was safe to pass. In support of these contentions, Plaintiffs and counterclaimants proffer, *inter alia*, Lew Grill's expert report. In pertinent part, it states that Hannon failed to exercise "due care" by providing Zemke with enough space and time to safely pass, deposition testimony of the parties demonstrates that the Central Washington drivers (i.e., Hannon, Wentland, and Goldsmith) operated their vehicles dangerously and "caused this accident," and the collision was preventable because the Central Washington drivers acted negligently. (*See* Grill Report (#260-3) at 10, 18–20, 27–28).

In response, Hannon argues that (1) his passing maneuver afforded Zemke reasonably sufficient space and time to safely pass and, (2) even if it did not, Zemke was forced to remain in the northbound lane by Fenton, who allegedly refused to permit Zemke to reenter. In support of these contentions, Hannon proffers Larry Miller's rebuttal report. To rebut Grill's conclusions, Miller's report states that Zemke was speeding and failed to react to Hannon until he was alerted by his wife, which caused Zemke to overcorrect and crash. (*See* Miller Report (#251-2) at 4 ¶ 5).

Now, Zemke argues that Miller's report improperly exceeds the scope of a rebuttal report. Accordingly, Zemke filed three motions: a motion *in limine* (#251), supplemental motion *in limine* (#266), and an emergency motion for a protective order, which requests a ruling on the motions *in limine* (#279). This order follows.

## LEGAL STANDARD

Federal Rules of Civil Procedure 26(a)(2) governs expert disclosures. Expert disclosures are subject to time and content requirements. Rule 26(a)(2)(D) governs timing and states that expert disclosures must be made "at least 90 days before the date set for trial" and that rebuttal expert disclosures must be made "within 30 days after the other party's disclosures." FED. R. CIV. P. 26(a)(2)(D)(i)–(ii). In the District of Nevada, these deadlines are shortened by Local Rule 26-1(e)(3),

4

which states that expert disclosures must be made "sixty (60) days before the discovery cut-off date" and that rebuttal expert disclosures must be made "thirty (30) days after the initial disclosure of experts." These deadlines are subject to modification by the court's entry of a discovery plan and scheduling order. *See* LR 26-1(e)(3).

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) governs the content of rebuttal experts and states that a rebuttal expert's testimony is limited to testimony that "contradict[s]" or "rebut[s]." *See* FED. R. CIV. P. 26(a)(2)(D)(ii); *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008). This means that an expert's rebuttal testimony may not introduce new, alternative or previously unconsidered theories. *See United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir.), *cert. denied*, 446 U.S. 939 (1980) ("'The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party,' and the decision to admit rebuttal testimony 'is entrusted to the sound discretion of the district court.'"); *see also In re Piasecki*, 745 F.2d 1468, 1472 (Fed. Cir. 1984) (stating that rebuttal expert reports must include "a showing of facts supporting the opposite conclusion"). Rebuttal testimony must address the same subject matter and refute the previous expert's conclusions regarding that subject matter. *Luschen*, 614 F.2d at 1170; *In re Piasecki*, 745 F.2d at 1472.

Rule 37 "gives teeth" to these requirements by forbidding the use at trial of any information that is not properly disclosed. *Goodman v. Staples*, 644 F.3d 817, 827 (9th Cir. 2011). Rule 37(c)(1) was implemented by the 1993 amendments to the Federal Rules of Civil Procedure to broaden of the court's sanctioning power. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)). The Advisory Committee Notes state that Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for the proper disclosure of material." FED. R. CIV. P. 37 Advisory Comm. Notes (1993). Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been

precluded. *Yeti by Molly*, 259 F.3d at 1106 (citing *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)). Because the rules are designed to be self-executing, the nonmoving party bears the burden of demonstrating that that an allegedly improper disclosure is either proper, harmless, or substantially justified. *Torres v. City of Los Angeles*, 548 F.3d 1197, 12123 (9th Cir. 2008) (citing *Yeti by Molly*, 259 F.3d at 1107).

## DISCUSSION

Zemke's three motions present two questions: (1) whether paragraph five of Larry Miller's rebuttal report exceeds the scope of Lew Grill's expert report and (2) whether the court should enter a protective order limiting the scope of the parties' supplemental reports. Both questions are addressed below.

### I.   Whether Miller's Rebuttal Report is Overbroad

Rebuttal testimony must address "the same subject matter" as the initial expert's testimony, "contradict" it, and include "a showing of facts supporting the opposite conclusion." *See* FED. R. CIV. P. 26(a)(2)(D)(ii); *In re Piasecki*, 745 F.2d at 1472; *Luschen*, 614 F.2d at 1170. Here, Zemke's initial expert testified that: (1) Hannon failed to exercise "due care" by providing Zemke with enough space and time to safely pass; (2) the Central Washington drivers (i.e., Hannon, Wentland, and Goldsmith) operated their vehicles dangerously and "caused this accident;" and (3) the collision was preventable because the Central Washington drivers acted negligently. (*See* Grill Report (#260-3) at 10, 18–20, 27–28).

In response, Miller's report opines on the same subject matter (i.e., the cause of the accident), opines—in contradiction to Grill—that the Central Washington drivers were not ultimately at fault, and provides the following facts in support of his opinion: (1) Zemke was speeding, which contributed to the accident and (2) Zemke failed to react to Hannon's presence in the northbound lane until Zemke was

6

alerted by his wife, which caused Zemke to overcorrect and crash. (*See* Miller Report (#251-2) at 4 ¶ 5). Miller's report complies with Rule 26(a)(2)(D)(ii).

Zemke argues that Miller's report is improper for five reasons. First, Zemke asserts that Miller's report is improper because Grill did not opine as to whether Zemke was the proximate cause of the collision. (*See* Docs. (#251) at 6:8; (#279) at 6:7). This argument is misplaced. Rebuttal reports do not need to mirror the initial expert's report or provide tit-for-tat testimony. Rebuttal reports must simply address "the same subject matter," "contradict" the initial expert's conclusion, and offer facts in support of the opposite conclusion. *See* FED. R. CIV. P. 26(a)(2)(D)(ii); *In re Piasecki*, 745 F.2d at 1472; *Luschen*, 614 F.2d at 1170.

Here, the subject matter of Grill's report is whether the Central Washington drivers (i.e., Hannon, Wentland, and Goldsmith) "operated their vehicles dangerously and caused this accident." (*See* Grill Report (#260-3) at 18–20). Grill concludes that the Central Washington drivers did. Miller contradicts this conclusion, stating that Zemke "largely contribut[ed]" to the accident. (Miller Report (#260-2) at 4 ¶ 5). In support, Miller proffers the following facts: (1) Zemke was speeding and (2) Zemke failed to see Hannon until Zemke's wife altered him to Hannon's presence. (*Id.*) This satisfies Rule 26(a)(2)(D)(ii). This is sufficient. *See Luschen*, 614 F.2d at 1170 ("'The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party,' and the decision to admit rebuttal testimony 'is entrusted to the sound discretion of the district court.'").[3]

Second, Zemke argues that Miller's report is improper because rebuttal evidence may not be used to establish a party's case-in-chief. (*See* Docs. (#251) at 6:12; (#279) at 6:11) (citing *Marmo*

---

[3] Stated differently, Zemke's initial expert theorizes that the Central Washington drivers are liable because of their own actions. In contradiction, Central Washington's rebuttal expert theorizes that Central Washington drivers are not solely liable because Zemke's actions contributed to the accident. This contradictory theory satisfies Rule26(a)(2)(D)(ii).

*v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief."))[4] This argument is misplaced. At this stage, the court is not admitting or excluding evidence. It is managing discovery to prepare the parties' action for trial. Here, the question is limited to whether Miller's report complies with Rule 26(a)(2)(D)(ii). Whether Miller or Grill's report is admissible is a different question, which will be decided by the District Judge immediately before trial, presumably by a properly made motion *in limine*.[5]

Third, Zemke argues in a supplemental motion, which is really a sur-reply, that Miller's report is improper because neither Hannon nor Wetland testified that Zemke contributed to the accident. This argument is procedurally improper. Neither the Federal Rules of Civil Procedure nor the local rules permit sur-replies. *See, e.g.*, *Smith v. United States*, No. 2:13–CV–039–JAD–GWF, 2014 WL 1301357, at *5 (D. Nev. March 28, 2014) ("Nothing in the [local] rule[s] authorizes any documents beyond the motion, response, and reply 'unless otherwise ordered by the Court.'") (citation omitted). Additionally, the argument is unpersuasive.[6] The testimony that is the subject of Zemke's sur-reply was provided after both Grill and Miller completed their reports. Accordingly, it fails to shed any light on the question here: whether paragraph five of Miller's rebuttal report exceeds the scope of Grill's expert report.

Fourth, Zemke and Fenton appear to argue that that Miller's report should be stricken because only paragraph six of Miller's report mentions Grill by name. (*See* Doc. (#251) at 7:7–17); (Joinder

---

[4] (*See also* Fenton Joinder (#253) at 2) (making the same argument and stating that "Mr. Allen's [*sic*] trial testimony" should be excluded).

[5] A motion *in limine* is not a discovery motion. "*In limine*" means "at the threshold" or "at the outset" and indicates that the subject matter of the motion is to be decided immediately before trial by the District Judge, not the Magistrate Judge. Here, Zemke mistakenly filed two discovery motions as motions *in limine*. Motions *in limine* are not referred to Magistrate Judges. Zemke's improper designation resulted in the motions not being addressed until after Zemke refiled the motions a motion for a protective order on June 25, 2014.

[6] Because the court addressed the merits of Zemke's sur-reply, Central Washington Asphalt's motion to strike is denied as moot.

(#253) at 2). This argument is also unpersuasive. While mentioning an initial expert by name signals that the rebuttal expert is responding to the initial expert, there is no such formal requirement that the rebuttal expert identify the initial expert by name. As discussed throughout, the key question is whether the rebuttal expert addresses the same subject matter. *Luschen*, 614 F.2d at 1170; *In re Piasecki*, 745 F.2d at 1472.

## II.     Whether the Court Should Limit the Scope of the Parties' Supplemental Reports

Zemke's motion presents a second question: whether the court should enter a protective order that limits the scope of the parties' supplemental expert reports. Zemke argues that a protective order is appropriate because the Central Washington Defendants "will attempt improper supplementation." (*See* Reply (#261) at 12:13; 12–13) (Zemke is simply asking that all experts be limited to proper expert supplementation under the rules. . .").

Federal Rule of Civil Procedure 26(c) governs motions for protective orders. In pertinent part, Rule 26(c) empowers the court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . [f]orbidding the disclosure of discovery. FED. R. CIV. P. 26(c)(1)(A). This includes the power to prevent discovery that would reveal a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 26(c)(1)(G).

Rule 26 places the burden of persuasion on the party seeking the protective order. *U.S. Equal Emp't Opportunity Comm'n v. Caesars Entm't, Inc*., 237 F.R.D. 428, 432 (D. Nev. 2006) (citing *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3rd Cir. 1986)). To meet this burden, the movant must demonstrate a particular need for the protection sought. The rule requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id*. For each particular document the movant seeks to protect, the movant must show that specific prejudice or harm

will result if no protective order is granted. *Phillips v. Gen. Motors*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also Cipollone*, 785 F.2d at 1121. ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *Deford v. Schmid Prods. Co*., 120 F.R.D. 648, 653 (D.Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples"). "[C]onclusory or speculative statements about the need for a protective order" is insufficient. *U.S. Equal Emp't Opportunity Comm'n*, 237 F.R.D. at 432 (citing *Frideres v. Schlitz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993)). A mere showing that the discovery may involve some inconvenience or expense does not establish good cause. *Turner Broad. Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997). The law confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Phillips v. Gen. Motors Corp*., 307 F.3d 1206, 1211 (9th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 38 (1984)).

Zemke's motion for a protective order limiting the scope of the expert's supplemental reports is denied for two reasons. First, the relief Zemke seeks is an advisory opinion concerning a dispute that is not ripe for review. He argues that a protective order should be entered because Central Washington defendants "will attempt improper supplementation." This is an improper request for relief. *See* U.S. CONST. art. III, § 2. Second, Zemke also argues that the court should enter a protective order because additional discovery will be costly. (*See* Reply (#261) at 13:19–23). General concerns regarding cost, without more, are an insufficient basis for imposing a protective order. *See Caesars Entm't, Inc*., 237 F.R.D. at 432 (citing *Cipollone*, 785 F.2d at 1121) (stating that Rule 26 requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning.").

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Third-Party Defendant Mitchell Zemke's motion *in limine* (#251) is DENIED.

IT IS FURTHER ORDERED that Third-Party Defendant Mitchell Zemke's supplemental motion *in limine* (#266) is DENIED

IT IS FURTHER ORDERED that Central Washington Asphalt's motion to strike (#271) is DENIED.

IT IS FURTHER ORDERED that Third-Party Defendant Mitchell Zemke's emergency motion for a protective order (#279) is DENIED.

IT IS SO ORDERED.

DATED this 1st day of July, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

11