1

2

3                    **UNITED STATES DISTRICT COURT**

4                         **DISTRICT OF NEVADA**

5                                   ***

6

7   WILLIAM TERRELL, *et al.*,

                        Plaintiffs,                    Case No. 2:11–cv–142–APG–VCF
8
    vs.
9                                                      **ORDER**
    CENTRAL WASHINGTON ASPHALT, INC., *et*
10  *al.*,

11                      Defendants.

12

13        This matter involves a consolidated personal-injury action arising from a multi-vehicular accident.

14  Five motions are before the court: (1) Central Washington Asphalt's Motion to Reopen Discovery (#342[1]);

15  (2) the parties' Stipulated Discovery Plan (#374); (3) Mitchell Zemke's Counter Motion for Attorney's

16  Fees and Costs (#351); (4) Central Washington Asphalt's Motion to Preclude (#370); and (5) Doreen and

17  Phillip Law's Motion for Determination of Good Faith Settlement (#387).

18        For the reasons stated below, Central Washington's Motion to Reopen Discovery is granted, the

19  parties' Stipulated Discovery Plan is rejected, Zemke's Counter Motion for Attorney's Fees and Costs is

20  denied, Central Washington's Motion to Preclude is denied, and the court defers ruling on the Laws'

21  Motion for Determination of Good Faith Settlement pending additional briefing.

22

23

24

25  [1] Parenthetical citations refer to the court's docket.

                                                    1

## BACKGROUND

The facts underlying the parties' disputes are straightforward. For ease of presentation, the court divides its discussion into four sections, beginning with the circumstances surrounding the collision.

### I.   The Multivehicle Collision[2]

On December 12, 2010, Defendants James Wentland, Jerry Goldsmith, and Donald Hannon were driving trucks owned by Defendant Central Washington Asphalt, Inc. They were headed southbound on Nevada State Route 318, a two-lane road. It was six o'clock at night and dark.

Wentland and Goldsmith were driving in one truck, followed by Hannon in a second truck. Wentland pulled into the oncoming traffic lane, and passed four vehicles. Now, four more were in front of him, including a third truck driven by Third-Party Defendant Chip Fenton.

Having safely returned to the southbound lane, Wentland got on his citizens band ("CB") radio and told Hannon, who was driving behind him, that it was still safe to pass Fenton.

It was not. A GMC Envoy, driven by Third-Party Defendant Mitchell Zemke, was headed northbound. Fenton saw Zemke approaching and told Hannon that it was not safe to pass. Hannon, nevertheless, relied on Wentland's advice, pulled into the oncoming traffic lane, and accelerated directly towards Zemke.

Zemke's wife, Kathryn, looked up from her phone and yelled. Headlights were in the northbound lane. It was Hannon. Zemke swerved right, drove into the dirt, temporarily lost control, overcorrected, and collided with three cars as he pulled back onto the road. Five people were injured, including Doreen and Phillip Law, and one person—Jon Slagowski—died.

---

[2] The facts regarding the collision are stated for background purposes only and do not constitute the court's factual findings. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."); *accord* FED. R. CIV. P. 60(b).

Fenton radioed Wentland, Goldsmith, and Hannon. He told them what had happened, and asked them to stop. In response, someone replied, "I'm in trouble."

Wentland, Goldsmith, and Hannon did not stop. They drove on for another forty miles until the Nevada Highway Patrol pulled them over, at which point they denied having any knowledge of the accident.

Six months later, the Slagowskis, Laws, and Zemkes commenced this consolidated personal-injury action against Wentland, Goldsmith, and Hannon and their employer, Central Washington Asphalt, Inc. Now, the parties are negotiating settlement offers as discovery winds down. Four motions are before the court.

## II. Central Washington Moves to Reopen Discovery

On October 15, 2014, Central Washington moved to reopen discovery for the limited purpose of disclosing a trucking expert limited to addressing the Slagowskis newly added aiding-and-abetting claim. (*See* Doc. #342). The Slagowskis allege that Central Washington, Goldsmith, Wetland, and Hannon aided and abetted each other in violating the Motor Carrier Act. §§ 31101, *et seq.* and Federal Motor Carrier Safety Regulations, 49 C.F.R. § 392.3, which prohibit drivers from operating commercial motor vehicles while fatigued. (*See* Amend. Compl. #329 at 6). Oppositions were filed by Zemke (#349, #357), Fenton (#350), the Laws (#353), and the Slagowskis (#355) who contend that Central Washington could have conducted this discovery, but did not. The circumstances preceding this dispute follow.

On October 1, 2013, the expert-disclosure deadline elapsed. At that time, Defendants had designated Larry Miller as their trucking expert and Plaintiffs designated Lew Grill as their trucking expert. On June 6, 2014, Plaintiffs served Grill's supplemental report on Defendants. The report addressed driver fatigue and the Federal Motor Carrier Safety Regulations. On July 9, 2014, Defendants served Miller's supplemental report. It did not address driver fatigue or the regulations. It merely stated that the

"[d]rivers were given the flexibility to plan their routes and take rests as they deemed appropriate." (Doc. #349-2 at 3).

On June 18, 2014, the Slagowskis moved to amend their complaint to add an aiding-and-abetting claim. On July 22, 2014, this court recommending denying the motion to amend.

On September 29, 2014, Miller was scheduled to be deposed in Los Angeles. Counsel for the Zemkes traveled from Las Vegas to appear for the deposition. (Doc. #366 at 5:25–26).   However, immediately before the deposition was scheduled to begin, Central Washington announced that it had made a strategic decision "to re-designate Miller from a testifying expert to a consulting expert." (*Id*. at 5 –6). The deposition was cancelled.

On September 30, 2014, the Honorable Andrew P. Gordon, U.S. District Judge, granted the Slagowski Plaintiffs' motion to amend. On October 15, 2014, Defendants filed the instant motion to reopen discovery for the limited purpose of addressing the new cause of action in the amended complaints." (Doc. #342 at 1:23, 27–8). On October 23, 2014, Zemke opposed Central Washington's motion and filed the instant Counter Motion for Attorney's Fees and Costs. (Doc. #351 at 9–10). Zemke seeks $18,775.71 in reimbursement for expenses he incurred in preparing for Miller's deposition. (Michalek Aff. (#351) at 3).

### III.   Central Washington Moves to Preclude Privileged Information

The parties' second discovery dispute arises from a different set of facts. On November 19, 2012, Defense Counsel inadvertently served Hannon's draft answers to Zemke's Interrogatories, rather than Hannon's final answers. (*Id*. at 3:2). Four months later, on March 27, 2013, Plaintiffs deposed Nevada Highway Patrol Trooper Michael Simon. (Doc. #377 at Ex. 2). During the deposition, Plaintiffs used Hannon's draft answers to examine the witness. (*See id*.) Defense Counsel asserted a foundation objection, but no privileged objection was raised. (*Id*.)

4

After the deposition ended, Defense Counsel discovered that he had inadvertently served Hannon's draft answers, rather than the final answers, and that the draft answers—which Defense Counsel considered privileged—had been used during Trooper Simon's deposition. Accordingly, Defense Counsel drafted a letter to opposing counsel, which explained the error, and placed it in the U.S. Mail. (Doc. #370 at 15). Corrected answers were appended to the letter. (*Id*. at 16–25).

The next day, on March 28, 2013, Plaintiffs deposed a second Nevada Highway Patrolman, Trooper Guy Davis. (Doc. #377 at 4:16). During the deposition, Plaintiffs' Counsel used the draft answers to examine Trooper Davis. (*Id*. at 4:17). Defense Counsel asserted form and foundation objections, but no privilege objection. (*Id*.) Defense Counsel then cross examined Trooper Davis and questioned him about the same draft interrogatory answers. (*Id*. at 4:19–20).

On April 1, 2013, Plaintiff's Counsel received Defense Counsel's March 27 letter and corrected interrogatory answers. (Doc. #377 at 4:24–25). In pertinent part, the letter read:

> On November 12, 2012, my office served you with Third-Party Plaintiff Donald Hannon's Answers to Third-Party Defendant Mitchell Forest Zemke's Interrogatories. The Answers were not signed by me. In reviewing my file, it has come to my attention that my office inadvertently served the draft Answers and not the final Answers that were verified by my client. Under 26(b)(5)(B) . . ., this document is privileged and must be returned and/or destroyed. [. . .] If you do not agree with the above, please advise so I can file the appropriate motion with the court. Otherwise, please destroy and/or return the document.

(Doc. #370 at Ex. 1). Four months later, Hannon was deposed on August 21, 2013. (Doc. #370 at 3:12–23). During the deposition, Plaintiffs' Counsel used the draft answers to examine Hannon and Defense Counsel objected on privilege grounds. On May 6, 2014, Hannon was re-deposed and admitted that he verified the draft answers. (Doc. #377 at Ex. 1).

On June 16, 2014, Defendants deposed Plaintiffs' trucking expert, Lew Grill. During the deposition, the draft answers were again used or referenced. (Doc. #370 at 4:15–28). Defense Counsel objected. (*Id*.) This scenario repeated itself five months later. On November 13, 2014, Plaintiffs deposed

Mike Dilich, Defendants' trucking expert. During the deposition, the draft answers were used, and Defense Counsel objected. (Doc. #370 at 5:26). Defendants filed the instant motion to preclude use of the inadvertently disclosed document the next day.

## IV.    The Laws Move for a Determination of Good Faith Settlement

Finally, on December 18, 2014, the Laws moved for a determination of good-faith settlement (#387). Philip and Doreen Law have agreed to settle their claims against Central Washington for $1,500,000.00 and $160,000.00, respectively. (Doc. #387 at 4:9, 11). If the court finds that the settlement was reached in good faith, the plaintiff's release discharges Central Washington from all liability for contribution and for equitable indemnity to any other tortfeasor under Nevada Revised Statute § 17.245(1)(b).

On January 30, 2015, discovery closed. On February 3, 2015, the court heard oral argument on the parties' motions. During the hearing, additional oral motions were raised, which the court denied. This order follows.

## DISCUSSION

The parties' filings present four questions: (1) whether discovery should be extended to permit Central Washington to designate an expert and conduct discovery in the adding-and-abetting claim; (2) whether Zemke should be awarded attorney's fees and costs in connection with Miller's cancelled deposition; (3) whether the court should enter a protective order precluding the parties from using Hannon's draft answers to Zemke's interrogatories; and (4) whether the Laws' settlement satisfies Nevada Revised Statutes § 17.245's good-faith requirement. Each is discussed below.

/// /// ///

/// /// ///

/// /// ///

I.      **Whether Discovery should be Reopened**

The first dispute concerns Central Washington's motion to reopen discovery for the limited purpose of addressing the new cause of action in the Slagowskis' amended complaints. The court begins its analysis with the governing law.

A.      *Legal Standard*

Federal Rule of Civil Procedure 16(b)(4) governs the modification of scheduling orders. In pertinent part, it provides that "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). In the context of Rule 16, good cause is measured by diligence. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992)). The rule permits modification of a scheduling order, but only if the existing deadlines cannot be met despite the diligence of the party seeking the extension. *Coleman*, 232 F.3d at 1295. Where the movant "fail[s] to show diligence, the inquiry should end." *Id*. (citation and quotation marks omitted).

Local Rule 26-4 supplements Federal Rule 16. It states that scheduling orders may be modified for good cause, provided that a motion to extend is made "no later than twenty-one (21) days before the expiration of the subject deadline." LR 26-4. Additionally, a motion to extend discovery must include: (1) a statement specifying the discovery completed; (2) a specific description of the discovery that remains to be completed; (3) the reasons why the deadline was not satisfied or the remaining discovery not completed within the time set by the discovery plan; and (4) a proposed schedule for completing all remaining discovery. *Id*.

If, however, a request is made after the expiration of the subject deadline, the movant's request "shall not be granted" unless the movant demonstrates that the failure to act was the result of "excusable neglect." LR 26-4. Excusable neglect approximates negligence. *See Lemoge v. United States*, 587 F.3d

7

1188, 1195 (9th Cir. 2009). Courts consider four factors when determining whether neglect is excusable: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). This determination is equitable, *Pioneer*, 507 U.S. at 395, and left to the district court's discretion. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004).

Scheduling orders are critical to the court's management of its docket. The court is charged with securing "the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. Delay frustrates this command. Accordingly, the Ninth Circuit has emphasized that a case management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Mammoth Recreations, Inc.*, 975 F.2d at 610 (internal quotations and citations omitted).[3]

## B.   *Central Washington's Motion to Reopen Discovery is Granted*

Central Washington's motion to reopen discovery is granted for two reasons. First, Central Washington satisfied Local Rule 26-4's twenty-one day requirement. It filed its motion on October 15, 2014, 107 days before discovery closed on January 30, 2015.

---

[3] During the court's February 3, 2015 hearing, the parties made at least two oral motions to modify the scheduling order. (*See* Mins. Proceedings #399). The court denied the motions for two reasons. First, neither motion attempted to comply with Local Rule 26-4's requirements. Second, while not prohibited by the Federal Rules of Civil Procedure or the Local Rules of Civil Practice, oral motions are generally disfavored. *See* FED. R. CIV. P. 7(b) ("A request for a court order must . . . be in writing"); LR 7-2(a) ("All motions . . . shall be in writing. . . "). The writing requirement is not a mere formality. It protects the parties' right to due process of law by curtailing *ad hoc* determinations that are based on an underdeveloped record.

Second, Central Washington has demonstrated good cause for extending the scheduled deadline. FED. R. CIV. P. 16(b)(4). Central Washington moves to reopen discovery to designate an expert and conduct discovery in connection with the Slagowskis' recently added aid-and-abetting claim. Its rationale: the expert-disclosure deadline closed on October 1, 2013; however, the Slagowski's motion to amend was not granted until September 30, 2014. Two weeks later, Central Washington moved "to reopen discovery for the limited purpose of addressing the new cause of action in the amended complaints." (Doc. #342 at 1:23, 27–8). This satisfies Rule 16's good-cause standard because Central Washington was diligent in moving to extend the deadline, *see Mammoth Recreations, Inc*., 975 F.2d 604 at 609, and because it is impossible for Central Washington to conduct discovery on the Slagowski's newly added claim under the current scheduling order.

Zemke opposes Central Washington's argument because Central Washington "already had the opportunity to rebut the 'new' aiding and abetting claim." (Doc. #349 at 7:12; Doc. #351 at 7:14). Zemke reasons that the Slagowskis' claim should not be treated as "new" because Central Washington retained counsel before litigation commenced and "was in possession of its own files, which revealed that [its] drivers" operated trucks while fatigued. (Doc. #349 at 7:19–26; Doc. #351 at 7:19–26). Zemke similarly asserts that Central Washington should have conducted discovery on the aiding-and-abetting claim because it was addressed in Plaintiffs' expert report. (Doc. #349 at 7–8; Doc. #351 at 7–8).

The court disagrees. The Slagowskis' motion to amend was not granted until September 30, 2014, nearly a year after the expert-disclosure deadline elapsed. This prevented Central Washington from conducting discovery on the aiding-and-abetting claim. Rule 26(b)(1) limits party-controlled discovery to "any nonprivileged matter that is relevant to any party's claim or defense." *See In re Cooper Tire & Rubber Co*., 568 F.3d 1180, 1188–89 (10th Cir. 2009) (explaining the difference between court-controlled and party-controlled discovery under Rule 26(b)(1)); *accord Fed. Trade Comm'n v. AMG Servs. et al.,*

9

No. 2:12–cv–536–GMN–VCF, 2015 WL 176417, at *1 (D. Nev. Jan. 14, 2015). Because there was no aid-and-abetting claim, Rule 26(b)(1) prevented Central Washington from conducting discovery on the then nonexistent claim.

Zemke's fallback argument—*viz.*, that Central Washington caused its own problem because it de-designated its trucking expert, Larry Miller—is similarly unavailing. When Miller was scheduled to be deposed, no aiding-and-abetting claim existed. Any testimony that Miller would have provided regarding the aid-and-abetting claim would have been irrelevant to "any party's claim or defense." FED. R. CIV. P. 26(b)(1). During the hearing, Zemke argued that the Slaglowski's pending motion to amend placed the aiding-and-abetting claims in controversy for discovery purposes. It did not. Parties may only "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Good cause was required to conduct discovery on the then nonexistent aiding-and-abetting claim. *See id.*

However, the court grants Zemke and the Slagowskis' request to limit future discovery to the aiding-and-abetting claim. Zemke and the Slagowskis assert that future discovery should be limited to the one claim because Central Washington's motion to reopen discovery is a ruse: "CWA has filed this motion because it seeks to relieve itself of the negative consequences it incurred as a result of its untimely de-designation of Larry Miller." (Doc. #349 at 8:24–25; Doc. #355 at 3:25).

This argument is irrelevant. Discovery closed on January 30, 2015, and Central Washington moved "to reopen discovery for the limited purpose of addressing the new cause of action in the amended complaints." (Doc. #342 at 1:23, 27–8). For discovery purposes, the aiding-and-abetting claim is the only remaining issue. Therefore, Zemke and the Slagowski Plaintiffs' request to limit future discovery to the aiding-and-abetting claim is granted.

10

## II.     Whether Zemke should be Awarded Attorney's Fees and Costs

The court now turns to the parties' second discovery dispute: whether Zemke should be awarded attorney's fees and costs in connection with Central Washington's cancellation of Miller's deposition and his opposition to Central Washington's Motion to Reopen Discovery. The court begins its analysis with the governing law.

### A.     *Legal Standard*

Federal Rule of Civil Procedure 30(g) governs a person's failure to attend a deposition. It states, "[a] party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to attend and proceed with the deposition." FED. R. CIV. P. 30(g) (numeral omitted). Rule 37(d) supplements Rule 30(g) and states that "[t]he court where the action is pending may, on motion, order sanctions, if a party . . . fails, after being served with proper notice, to appear for that person's deposition." (Numeral omitted).

Courts routinely award expenses and attorney's fees where, as here, a party fails to attend a deposition without delivering sufficient notice of cancellation to the other party. *See e.g.*, *Albee v. Continental Tire N. Am., Inc.*, 780 F. Supp. 2d 1005 (E.D. Cal. 2011); 8A C. A. WRIGHT & A. R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2120 (3d ed. 2014). The district court is vested with "wide latitude" to issue discovery sanctions. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

### B.     *Zemke's Motion is Denied*

Central Washington's last-minute cancellation is sanctionable. On the morning of September 29, 2014, Central Washington cancelled Miller's deposition immediately before it began. This allegedly

11

resulted in Zemke needlessly incurring $18,775.71[4] in attorney's fees and costs. (Michalek Aff. (#351) at 3).

Nonetheless, the court declines to impose monetary sanctions for two reasons. First, Zemke failed to provide the court with any basis to determine whether his $18,775.71 figure is reasonable. A party seeking attorney fees must submit evidence to support the number of hours worked and the rates claimed. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Second, Central Washington's decision to de-designate Miller as an expert witness benefits plaintiffs: Central Washington's decision to de-designate Miller deprived Central Washington of an expert to rebut Grill's testimony, except for the aiding-and-abetting claim. As a result, Central Washington is now without a rebuttal expert.

The court also declines Zemke's motion for sanctions related to his opposition to Central Washington's Motion to Reopen Discovery. Central Washington's Motion prevailed. An award of fees and costs to the party opposing a meritorious motion is not countenanced by the rules. *See, e.g.*, FED. R. CIV. P. 37(a)(5).

## III.  <u>Whether the Court should enter a Protective Order</u>

The parties' filings present a third question: whether Defense Counsel the court should enter an order precluding the parties from using Hannon's draft answers to Zemke's interrogatories. The court begins its analysis with the governing law.

/// /// ///

/// /// ///

/// /// ///

---

[4] The parties' dispute the amount of expenses that Zemke allegedly incurred.

### A.   *Legal Standard*

Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b) govern claims of privilege. Rule 26(b)(5)(B), which is known as the claw back rule, provides the procedure for asserting a claim of privilege in connection with information produced in discovery. It states:

> [T]he party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.

Federal Rule of Evidence 502(b) supplements Rule 26(b)(5)(B) by supplying the substantive law for determining whether a privilege has been waived due to inadvertent disclosure. Rule 502(b) states that inadvertent disclosure "does not operate as a wavier" if (1) the disclosure was inadvertent, (2) the holder of the privilege or protection took reasonable steps to prevent disclosure, and (3) the holder promptly took reasonable steps to rectify the error, "including (if applicable) following [Rule] 26(b)(5)(B)." FED. R. EVID. 502(b).

Courts in the Ninth Circuit apply a totality-of-the-circumstances test when determining whether an inadvertent disclosure constitutes wavier under Rule 502(b). *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1045 (D. Nev. 2006), *aff'd in part, rev'd in part on other grounds*, 568 F.3d 684 (9th Cir. 2009). Relevant factors include (1) the time taken to rectify the error, (2) the scope of discovery, (3) the extent of the disclosure, and (4) the overriding issue of fairness. FED. R. EVID. 502, Advisory Comm. Notes (2007). The party asserting a privilege bears the burden of demonstrating that the privilege applies. *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 598 (D. Nev. 2012) (citing *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988)).

### B.    *Central Washington's Motion to Preclude is Denied*

Central Washington's motion to preclude is denied because Central Washington (1) failed to demonstrate that the document is privileged, (2) failed to comply with Rule 26(b)(5)(B)'s claw-back procedure and (2) waived the privilege under Rule 502.

As stated above, the party asserting a privilege bears the burden of demonstrating that the privilege applies. *LightGuard Sys.*, 281 F.R.D. at 598. Here, Central Washington contends that the draft answers are protected by the attorney-client privilege. In the Ninth Circuit, an attorney-client privilege exists "(1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived." *Id*. at 597–98. Central Washington did not argue these elements. Accordingly, it failed to carry its burden.

Additionally, the court finds that Central Washington failed to take reasonable steps to prevent further disclosure or promptly take reasonable steps to rectify the error, as Rule 26(b)(5)(B) requires. On March 27, 2014, Defense Counsel discovered that the claimed privileged document had been inadvertently disclosed. He immediately posted a letter to opposing counsel in the U.S. Mail, which complied with Rule 26(b)(5)(B) in form: it cited the correct rule of law, explained the error, and included an attachment correcting Defense Counsel's error. Nonetheless, Defense Counsel disregarded the substance of the rule by remaining silent when the document was used during a subsequent deposition the following day. This prevented Plaintiffs' Counsel from being notified of the privilege issue until April 1, 2014.

The fundamental command of the Federal Rules of Civil Procedure is "never to exalt form over substance." *Amron v. Morgan Stanley Inv. Advisors Inc*., 464 F.3d 338, 343 (2nd Cir. 2006). Central Washington's March 27, 2014 letter satisfied formally Rule 26(b)(5)(B); but its conduct during the

subsequent deposition disregarded the substance of the rule. When the drafter answers were referenced, no privilege objection was asserted. This constitutes waiver. *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) ("[T]he failure to assert the privilege when the evidence was first presented constituted a voluntary waiver of the right.").

Finally, the court finds that Central Washington waived the privilege under Rule 502(b) for three reasons. First, Central Washington waived the privilege by waiting nearly a year to enforce it. *SDI Future Health, Inc.*, 464 F. Supp. 2d at 1045 (stating that "the time taken to rectify the error" is a factor to consider when examine waiver). On March 27, 2014, Central Washington advised opposing counsel of the privilege issue, stating: "If you do not agree with the above, please advise so I can file the appropriate motion with the court." (Doc. #370 at Ex. 1). Opposing counsel responded by asserting that the draft interrogatory answers are not privileged. Nonetheless, Central Washington waited two hundred and thirty two days until the eve of the close of discovery before filing a motion with the court. This delay is unreasonable. *See, e.g.*, *Williams v. Dist. of Columbia*, 806 F. Supp. 2d 44, 52 (D. D.C. 2011) (finding a two-year delay unreasonable); *Amobi v. Dist. of Columbia Dept. of Corrections*, 262 F.R.D. 45, 55 (D. D.C. 2009) (stating in dicta that a fifty-five day would be unreasonable).

Second, the court finds that "the extent of the disclosure" strongly militates in favor of waiver. *SDI Future Health, Inc.*, 464 F. Supp. 2d at 1045 (identifying this as a factor to consider when examining wavier). Even after opposing counsel received the letter on April 1, 2014, the draft answers were used—repeatedly—in various depositions and by various experts in their reports. Even if the court were inclined to grant Central Washington's motion, which is not, there is no reasonable method to enforce the order. Central Washington's failure to timely move to preclude has resulted in the draft answers becoming enmeshed with the court's record.

Third, the court is unpersuaded by Defense Counsel's argument that Hannon should not be penalized for counsel's inadvertent disclosure. Hannon and Defense Counsel are equally responsible for the disclosure. Hannon signed a form verifying that the draft answers are his own. Additionally, Hannon admitted that he verified the draft answers during his May 6, 2014, deposition. (Doc. #377 at Ex. 1). Assuming the draft answers were privileged, these acts waived the privilege. In the words of the Court of Appeal for the D.C. Circuit, a "privilege must be jealously guarded by the holder of the privilege lest it be waived." *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).

Therefore, Central Washington's Motion to Preclude is denied.

## IV.   Whether the Laws' Settlement Offer was made in Good Faith

A final issue remains. On December 18, 2014, the Laws moved for a determination of good-faith settlement (#387). The motion is joined by Doreen Law, as a Third-Party Defendant, (#388); Central Washington filed a limited joinder (#392); and Zemke partially opposed (#390), which the Slagowskis (#393) and Fenton (#394) joined. For the reasons stated below, the court defers deciding the Laws' motion.

### A.   *Legal Standard*

Nevada Revised Statute section 17.245 requires a settlement to be a "good faith" settlement. *See* NEV. REV. STAT. § 17.245. If a good-faith settlement is reached, it provides the tortfeasor with "an affirmative defense to any claims for contribution by another joint tortfeasor found liable for damages to plaintiff." *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 927 (D. Nev. 1983). However, the statute gives "little guidance" in determining what constitutes good faith. *Velsico Chem. Corp. v. Davidson*, 107 Nev. 356, 811 P.2d 561 (1991) (per curiam).

Accordingly, courts apply the following factors when determine whether a settlement offer satisfies section 17.245's good-faith requirement: (1) the amount paid in settlement; (2) the allocation of the settlement proceeds among plaintiffs; (3) the insurance-policy limits of settling defendants; (4) the

16

financial condition of settling defendants; and (5) the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants. *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927 (citing *Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210 (9th Cir. 1981)). "The price of a settlement is the prime badge of its good or bad faith." *Id.* (citing *River Garden Farms, Inc. v. Superior Court for Cnty. of Yolo*, 26 Cal. App. 3d 986, 996 (1972)).

A trial court has discretion to determine whether a settlement has been made in good faith. *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927. A settling defendant bears the burden of proving that the settlement was in good faith. *Doctors Co. v. Vincent*, 98 P.3d 681, 686–87 (Nev. 2004).

## B.   *The Settlement Offer Satisfies the Good-Faith Requirement*

The Laws' motion is meritorious for two reasons. First, no party filed substantive opposition to the Laws' motion. This constitutes consent to the granting of the motion under Local Rule 7-2(d), which states that "[t]he failure of an opposing party to file point and authorities in response to any motion shall constitute a consent to the granting of the motion."[5]

Second, the court's review of the Laws' moving papers indicates that the proposed settlement appears to satisfy section 17.245's good-faith requirement. The court's finding is predicated on three of the *MGM* factors. With regard to the first factor, Central Washington proposes compensating Philip Law $1,500,000.00 and Doreen $160,000.00 for their injuries, medical bills, pain and suffering, and the disruption to their daily living. (Doc. #387 at 4:9–15). This amount, which is "the prime badge" for

---

[5] Zemke's opposition "does not object" to the proposed settlement "[i]n principle." (Doc. #390 at 2:4). He merely requests a copy of the settlement agreement for his review in order to "verify the information provided in the motion." (*Id.* at 2:7). Similarly, Central Washington does not oppose settlement. It merely clarifies for the record that it "dispute[s] liability" and agreed to settle so the Laws may "buy their peace" and "pursue recovery from [] third-party defendants." (Doc. #392 at 2:4–10).

determining good faith, *see MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927, represents a fair and reasonable amount in light of the nature of their injuries and the litigation costs that settling will save. (*See id*. at 4:16–23).

With regard to the second factor, the proposed settlement amount appears fair and reasonable under Central Washington's insurance policy limit, *see MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927, which is eight million dollars. (Doc. #387 at 4:24).

Finally, the propose settlement agreement was apparently reached in good faith because collusion, fraud, and other tortious conduct aimed to injure the interests of non-settling defendants is absent. *MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927. The proposed settlement was reached after substantial discovery, negotiations regarding each party's likelihood of success at trial, and a seven-hour mediation, which was conducted by retried District Court Judge David Wall. (Doc. #387 at 5:4–7).

Nonetheless, the court defers ruling on the Laws motion because the proposed settlement agreement has not been reduced to writing or served on the other parties to the action. This has prevented the parties from proffering substantive comments or objections to the settlement.[6]

Therefore, the parties are ordered to (1) reduce the settlement to writing by February 6, 2015, x(2) serve copies on all parties by February 9, 2015, (3) file substantive oppositions to the Laws' Motion (#387) by February 13, 2015, and (4) file replies by February 23 2015. The court will hear oral arguments on March 11, 2015, at 1:00 p.m.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Central Washington Asphalt's Motion to Reopen Discovery (#342) is GRANTED.

---

[6] As discussed during the hearing, the parties dispute the affect, if any, of Nevada Revised Statute § 17.225 on the settlement agreement.

18

IT IS FURTHER ORDERED that discovery is CLOSED.

IT IS FURTHER ORDERED that the Slagowskis are granted LEAVE to file a Motion to Compel in connection with the previously served written discovery on the newly added punitive damages claims by February 16, 2015. Oppositions are due by February 23, 2015. Replies are due by March 2, 2015. If oral argument is required, the court will set the Slagowski's Motion to Compel for a hearing during the court's March 11, 2015 hearing. (*See infra* p. 19:21–22).

IT IS FURTHER ORDERED that discovery is REOPENED for the limited purpose of conducting discovery on the newly added aiding-and-abetting claims.

IT IS FURTHER ORDERED that discovery is LIMITED as follows: (1) Timothy G. Tietjen, Esq. and Jason Runckel, Esq. may jointly serve ten interrogatories, twenty requests for production of documents, and ten requests for admissions; (2) Steven T. Jaffe may serve ten interrogatories, ten requests for production of documents, and twenty requests for admissions; and (3) Lewis Grill's deposition is limited to two hours and fifteen minutes.

IT IS FURTHER ORDERED that the parties' Stipulated Discovery Plan (#374) is REJECTED and that the following dates APPLY:[7]

| | |
|---|---|
| February 20, 2015 | Deadline to Serve Written Discovery on the Aiding-and-Abetting Claims |
| March 20, 2015 | Deadline to Complete the Four Idaho Depositions[8] per Stipulation of the Parties |
| March 23, 2015 | Deadline to Serve Rule 30(b)(6) Subpoena on Defendants |

[7] If the Laws and Central Washington do not timely finalize a settlement agreement, this schedule is subject to revision.
[8] These depositions are limited to: (1) David Slagowski, (2) Matthew Slagowski, (3) John Janzen, and (4) Brandi Weaver.

19

| March 23, 2015 | Deadline to Respond to Written Discovery Requests |
| April 3, 2015 | Deadline to Disclose Defendants' Aiding-and-Abetting Expert and Serve the Expert's Report |
| June 5, 2015 | Aiding-and-Abetting Discovery Cutoff Date |
| July 7, 2015 | Dispositive Motion Deadline |
| August 3, 2015 | Joint Pretrial Order Deadline. If dispositive motions are filed, the joint pretrial order is due 30 days from the entry of the court's ruling on the motions. |

IT IS FURTHER ORDERED that Mitchell Zemke's Counter Motion for Attorney's Fees and Costs (#351) is DENIED.

IT IS FURTHER ORDERED that Central Washington Asphalt's Motion to Preclude (#370) is DENIED.

IT IS FURTHER ORDERED that Doreen and Phillip Law's Motion for Determination of Good Faith Settlement (#387) is DEFERRED.

IT IS FURTHER ORDERED that the following dates APPLY to the Laws' Motion for Determination of Good Faith Settlement:

| February 6, 2015 | Deadline to Reduce the Settlement to Writing |
| February 9, 2015 | Deadline to Serve the Written Settlement on all Parties |
| February 13, 2015 | Deadline to File Substantive Oppositions to the Motion |
| February 23 2015 | Deadline to file a Reply to the Oppositions |

IT IS FURTHER ORDERED that a HEARING is set for the Laws' Motion (#387) on March 11, 2015, at 1:00 p.m. in Courtroom 3D.

IT IS SO ORDERED.

DATED this 4th day of February, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE