UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILLIAM TERRELL, Guardian Ad Litem for QUENTIN SLAGOWSKI, a minor, ANIKA SLAGOWSKI, a minor, and ROWAN SLAGOWSKI,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL WASHINGTON ASPHALT, INC.; DONALD HANNON, JAMES WENTLAND, and JERRY GOLDSMITH,<br><br>Defendants.<br><br>_____<br><br>AND ALL RELATED MATTERS. | Case No. 2:11-cv-00142-APG-VCF<br><br>**ORDER DENYING ZEMKE'S RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. #386, #418) |

This case arises out of a multi-vehicle accident that resulted in the death of Jon Michael Slagowski and injury to others. Third party defendant Mitchell Zemke previously moved for summary judgment on defendants/third party plaintiffs' contribution and indemnity claims against him. I denied that motion to allow the parties to depose two of the drivers alleged to have caused the accident. (Dkt. #323.)

Zemke renews his motion for summary judgment, contending there is no evidence he was negligent or that his negligence contributed to the accident. Rather, he contends all evidence shows defendants/third party plaintiffs Central Washington Asphalt, Inc., Donald Hannon, James Wentland, and Jerry Goldsmith (the "CW defendants") caused the accident. The CW defendants respond that there is evidence Zemke was speeding and not keeping a proper lookout because he did not notice headlights in his lane until just moments before the accident. The CW defendants also move for leave to file a supplemental opposition based on the deposition testimony of expert witness John Howell, who was deposed after the CW defendants filed their opposition to Zemke's renewed summary judgment motion.

## I. BACKGROUND

This case arises out of an accident that occurred on a two-lane highway in Nevada. (Dkt. #386-7 at 6.) The speed limit for that stretch of highway is 70 miles-per-hour. (Dkt. #391-1 at 50.) The road is straight and fairly level, although there is a curve approximately 2.4 miles north of the accident site. (*Id.* at 50-51, 56.) It was dark at the time of the accident. (Dkt. #386-8 at 4.) Accident reconstruction expert John Howell opines that "[i]n this situation[,] with the roadway being straight and no obstructions of visibility[,] the human eye should be able to distinguish two oncoming illuminated headlights at a distance of 3.26 miles." (Dkt. #391-1 at 59; *see also id.* at 51 (testimony of investigating officer that drivers "should be able to see quite a ways . . . as far as your eyes would limit you in the night, and giving benefit of no glare from other vehicles or obstructions from being behind another vehicle . . . .") Another accident reconstruction expert, Thomas Shelton, opined that after coming out of the curve, oncoming headlights would have been visible up to 3,600 feet away. (*Id.* at 71.)

Defendant Donald Hannon was driving a truck in the southbound lane. (Dkt. #386-7 at 6.) He was behind two other vehicles: a truck driven by defendant James Wentland and a white SUV driven by plaintiff Doreen Law. (*Id.* at 6-7; Dkt. #391-1 at 107.) Hannon and Wentland both work for defendant Central Washington Asphalt, Inc. and were driving company trucks at the time. (Dkt. #386-7 at 6-7; Dkt. #391-1 at 11.) Wentland, Law, and Hannon drove southbound in that order until they came upon a truck being driven by third party defendant Chip Fenton. (Dkt. #386-7 at 7.) Wentland moved into the northbound lane to pass Fenton. (*Id.*) After Wentland completed his pass, he contacted Hannon over CB radio and told him it was clear for him to do so as well. (*Id.*)

Hannon pulled into the northbound lane and observed four vehicles in the southbound lane: the Law SUV, the Fenton truck, and two flatbed trucks. (*Id.*) Hannon overtook the Law vehicle and started passing the Fenton truck. (*Id.*) Fenton states that as Hannon was starting to pass him, he saw oncoming headlights in the northbound lane, so he told Hannon over the CB that it was not clear to pass. (Dkt. #386-4 at 3.) According to Hannon, Fenton sped up to prevent

Hannon from passing him and told Hannon over the CB that he was not going to let Hannon back into the southbound lane. (Dkt. #386-7 at 5, 7; Dkt. #391-1 at 17.) Hannon states Fenton narrowed the distance between Fenton's truck and the flatbed truck to less than a car length, and thus Hannon had no room to get back into the southbound lane. (Dkt. #386-7 at 7.)

According to Hannon, it was about the time that Fenton refused to let him back into the southbound lane that Hannon noticed oncoming headlights in the northbound lane. (*Id.*) Hannon states he responded over the CB, "I'm in trouble out here," and requested Fenton let him back into the southbound lane, but Fenton did not respond or slow down. (Dkt. #391-1 at 18; Dkt. #386-7 at 7.) Fenton denies that Hannon requested he slow down or that he refused to allow Hannon back into the southbound lane. (Dkt. #386-4 at 5.) According to another witness, Hannon could have gotten back into the southbound lane. (Dkt. #386-3 at 3.)

Hannon continued driving southbound in the northbound lane, accelerated beyond the Fenton truck and the first flatbed truck, and then reentered the southbound lane between the two flatbed trucks. (Dkt. #386-4 at 4; Dkt. #386-7 at 7.) Hannon states that after he reentered the southbound lane, he saw a vehicle's headlights go past him. (Dkt. #386-7 at 7.) That vehicle was driven by third party defendant Mitchell Zemke. (Dkt. #386-2 at 5-6.) Hannon estimates that when he returned to the southbound lane, Zemke's vehicle was still approximately 500 yards in front of him. (Dkt. #391-1 at 21-22.) Hannon also estimates he had been in the northbound lane for one to two minutes. (*Id.* at 27-28; *see also id.* at 58-59 (Howell calculating that Hannon was in the northbound lane from between 26 and 84 seconds).) Although Hannon contends he reentered the southbound lane before Zemke passed by, other witnesses state that Hannon was still in the northbound lane when Zemke swerved off the road to avoid a head-on collision with Hannon's truck. (Dkt. #386-3 at 3; Dkt. #386-4 at 5-7.)

Just prior to the accident, Zemke was traveling 75 miles-per-hour. (Dkt. #391-1 at 76.) Zemke testified that he saw headlights from oncoming traffic traveling in the southbound lane, and he thought there must be a curve in the road because he also saw what appeared to be headlights in his own lane. (Dkt. #386-2 at 6, 8.) When he realized the headlights in fact were in

his own lane, he believed he had only "a split second to dodge or take a head-on collision." (*Id.* at 7.) His wife said, "There's headlights in our lane," and then Zemke said, "Oh, shit." (*Id.* at 7-8.) Zemke swerved off the road to the right and then steered back to the left. (*Id.*; Dkt. #391-1 at 55.) Zemke's car spun across the northbound travel lane and into the southbound travel lane, striking the rear of Fenton's vehicle. (Dkt. #386-2 at 7-8.) Zemke's car continued its spin and struck the Law vehicle. (Dkt. #391-1 at 55-56, 83-84.) Zemke's car was then struck by another vehicle that had been behind Zemke. (*Id.*) The accident caused severe injuries to several people in the various vehicles and resulted in the death of Jon Slagowski, who was a passenger in the Zemke vehicle. (Dkt. #143-1 at 9, 25, 30.)

After the collision, Hannon continued southbound and did not return to the scene of the accident. (Dkt. #386-3 at 3.) Hannon states he was unaware an accident had occurred. (Dkt. #386-5 at 6-7; Dkt. #386-7 at 8.) Wentland also denies he knew anything about the accident.[1] (Dkt. #386-6 at 3; Dkt. #386-7 at 8.)

Following the accident, the injured parties filed three separate lawsuits against the CW defendants. Those lawsuits were consolidated into this action. The CW defendants in turn filed a third party complaint against Zemke, Law, Fenton, and Fenton Trucking, LLC for contribution and indemnity.

Zemke now moves for summary judgment, arguing that neither of the parties' versions of the accident support a finding that he was at fault. He argues that taking Hannon's version of the facts as true, Hannon did not cause the accident, and if Hannon is not liable, then Zemke cannot be liable to the CW defendants for contribution or indemnity. He then argues that if the other witnesses' versions of the accident are taken as true, Hannon caused the accident and there is no evidence Zemke caused or contributed to the cause of the accident.

The CW defendants respond that even though Hannon denies he caused the accident, they still may bring contribution and indemnity claims because a jury may not accept Hannon's

---

[1] A third Central Washington Asphalt employee, defendant Jerry Goldsmith, was asleep in the Wentland truck at the time of the accident. (Dkt. #386-7 at 9.)

version. The CW defendants also argue that there is testimony and evidence that Zemke was negligent because (1) he was speeding and (2) he did not notice the headlights in his lane until just before he swerved, despite evidence that Hannon was in the northbound lane for over a minute, the road was straight, and oncoming headlights should have been visible from a considerable distance.

The CW defendants also move for leave to file a supplemental opposition. The CW defendants seek to add argument and evidence based on the deposition of accident reconstruction expert Howell, who was deposed after the CW defendants filed their opposition. Zemke opposes, arguing Howell did not opine in any of his reports or at his deposition that Zemke caused or contributed to the cause of the accident.

**II. ANALYSIS**

**A. Motion to Supplement**

The CW defendants move to supplement their opposition with the testimony of accident reconstruction expert Howell. They contend Howell was not deposed by the time they filed their opposition to Zemke's renewed summary judgment motion, and they therefore should be given 14 days to file a supplemental opposition based on his deposition testimony.

The CW defendants filed their opposition to Zemke's summary judgment motion on January 5, 2015. (Dkt. #391.) Howell was deposed on January 26, 2015. (Dkt. #420 at 7.) The CW defendants waited until April 2, 2015 to move for leave to file a supplement. Despite waiting over two months after the Howell deposition to file the motion to supplement, the CW defendants did not attach the proposed supplement or identify in their motion what testimony Howell provided that would raise an issue of fact regarding Zemke's liability for contribution or indemnity. I therefore deny the motion to supplement as untimely and unsupported. Additionally, it is moot because genuine issues of fact remain without the supplement.

**B. Motion for Summary Judgment**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact

1  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is
2  material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty
3  Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if "the evidence is such that a
4  reasonable jury could return a verdict for the nonmoving party." *Id.*

5  The party seeking summary judgment bears the initial burden of informing the court of the
6  basis for its motion, and identifying those portions of the record that demonstrate the absence of a
7  genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden
8  then shifts to the non-moving party to go beyond the pleadings and set forth specific facts
9  demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato
10 Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  I view the evidence and reasonable inferences in the
11 light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523
12 F.3d 915, 920 (9th Cir. 2008).

13 Zemke moves for summary judgment on the CW defendants' claims for contribution and
14 indemnity.  "A right to contribution exists 'where two or more persons become jointly or
15 severally liable in tort for the same injury to [a] person . . . even though judgment has not been
16 recovered against all or any of them.'" *Pack v. LaTourette*, 277 P.3d 1246, 1249 (Nev. 2012)
17 (quoting Nev. Rev. Stat. § 17.225(1)).  An equitable indemnity claim "allows a defendant to seek
18 recovery from other potential tortfeasors [where] the defendant, who has committed no
19 independent wrong, is held liable for the loss of a plaintiff caused by another party." *Id.* at 1248-
20 49 (quotation omitted).  Both of these claims rest on the theory that Zemke negligently caused or
21 contributed to the cause of the accident.

22 A negligence claim consists of four elements: (1) the existence of a duty, (2) breach of
23 that duty, (3) causation, and (4) damages. *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1158 (Nev.
24 2011) (en banc).  Causation requires actual and proximate cause. *Dow Chem. Co. v. Mahlum*, 970
25 P.2d 98, 107 (1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15
26 (Nev. 2001).  To show actual causation, the CW defendants must present evidence raising a
27 genuine issue of material fact that, but for Zemke's wrongdoing, the accident would not have
28

occurred. *Id.* "Proximate cause is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred." *Mahan v. Hafen*, 351 P.2d 617, 620 (Nev. 1960). "Where two or more causes proximately contribute to the injuries complained of, recovery may be had against either one or both of the joint tort-feasors." *Id.* Breach and causation generally are fact questions for the jury. *Klasch*, 264 P.3d at 1161. However, "[p]roof of negligence cannot be left to mere speculation or conjecture." *Gordon v. Hurtado*, 541 P.2d 533, 535 (Nev. 1975).

A driver owes duties to avoid an accident, to maintain a reasonable speed under the circumstances, to "keep a proper lookout for traffic and other conditions," and to "drive in such a manner that he can stop in time to avoid a collision with an object" within range of his vision or within the area lighted by his headlights. Nev. Rev. Stat. § 484B.603; Nev. J.I. 5.00, 5.01A. However, a driver is not negligent if the "object cannot be observed by the exercise of ordinary care in time to avoid a collision." Nev. J.I. 5.01A.

A driver who "has the right of way and is proceeding in a lawful manner is entitled to assume others will yield." Nev. J.I. 5.03; *see also Botts v. Rushton*, 172 P.2d 147, 153 (Nev. 1946). But "once he knows or, in the exercise of reasonable care, should know that another does not intend to yield, he must exercise reasonable care in endeavoring to avoid an accident." Nev. J.I. 5.03; *see also Botts*, 172 P.2d at 153; *Styris v. Folk*, 146 P.2d 782, 787 (Nev. 1944) (stating that a driver owes a duty of reasonable care to avoid an accident even if the other person is negligently failing to yield the right of way). A driver must not drive to the left of the center of a two-lane, two-directional highway to pass other vehicles traveling in the same direction, "unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken." Nev. Rev. Stat. § 484B.213(1).

Even if a driver breaches a duty, that breach is "not material, unless such failure was the proximate cause of the accident." *Bawden v. Kuklinski*, 228 P. 588, 590 (Nev. 1924). For

example, speeding does not proximately cause an accident if the speeding driver would have collided with the other person even if he had been driving within the speed limit. Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 26 cmt. f, illus. 2.  Similarly, where the alleged breach is a failure to keep a proper lookout or to take appropriate evasive measures, the breach does not proximately cause a collision unless the driver could have seen the other vehicle in time to take effective precautionary measures to avoid the accident. *See Brannan v. Nev. Rock & Sand Co.*, 823 P.2d 291, 293 (Nev. 1992); *Deiss v. So. Pac. Co.*, 53 P.2d 332, 333-34 (Nev. 1936).

Viewing the evidence in the light most favorable to the CW defendants, genuine issues of material fact remain regarding whether Zemke breached his duties as a motorist and whether those breaches were a cause of the accident.  Zemke owed a duty of reasonable care to avoid an accident even if Hannon negligently failed to yield the right of way.  Zemke was speeding seconds before the accident.  The highway was flat and straight, and oncoming headlights apparently should have been visible for over 3,000 feet.  Hannon was in the northbound lane for up to a minute and a half, yet Zemke testified that he did not notice the oncoming headlights were in his lane until he had only a split second to avoid a head-on collision.  A reasonable jury could find Zemke was negligent by not slowing down when he saw headlights that potentially were in his lane.  A reasonable jury also could find that although he saw the oncoming headlights and was considering whether they were in his lane, it was his wife that had to alert him to the gravity of the situation, and he therefore was not keeping a proper lookout.  With no physical evidence of the interaction between the Zemke vehicle and the Hannon truck, the jury will have to evaluate witness credibility to resolve fact questions about the relative speed, distance, and location of the various vehicles.  The jury will then have to use those predicate factual determinations to resolve the issues of breach and causation.

The CW defendants need not raise issues of fact that Zemke was the sole or even the primary cause of the accident.  Showing genuine issues of fact remain that he negligently contributed to causing the accident suffices, and the CW defendants have met that threshold here.

Although there is considerable evidence from which a jury could find Zemke did not negligently contribute to causing the accident, I cannot resolve credibility determinations or weigh the evidence on summary judgment. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005). With so many factual disputes about what happened that night, and viewing those disputes in the light most favorable to the CW defendants, a jury will have to determine which driver or drivers caused the accident.

### III. CONCLUSION

IT IS THEREFORE ORDERED that third party defendant Mitchell Zemke's renewed motion for summary judgment (Dkt. #386) is DENIED.

IT IS FURTHER ORDERED that the CW defendants' motion for leave to file a supplemental opposition (Dkt. #418) is DENIED.

DATED this 20th day of July, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE