UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILLIAM TERRELL, Guardian Ad Litem for QUENTIN SLAGOWSKI, a minor; ANIKA SLAGOWSKI, a minor; and ROWAN SLAGOWSKI,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL WASHINGTON ASPHALT, INC.; DONALD HANNON; JAMES WENTLAND; and JERRY GOLDSMITH,<br><br>Defendants. | Case No. 2:11-cv-00142-APG-VCF<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION**<br><br>(DKT. #464) |

AND ALL RELATED MATTERS.

Plaintiff William Terrell, as guardian ad litem for Quentin, Anika, and Rowan Slagowski, and plaintiff Patricia Dean, as personal representative for the estate of Jon Michael Slagowski, move for an adverse inference instruction due to alleged spoliation of evidence by defendants Central Washington Asphalt, Inc., Donald Hannon, James Wentland, and Jerry Goldsmith (the "CW defendants"). Plaintiffs Mitchell and Kathryn Zemke join in the motion. (Dkt. #469, #473.) According to the plaintiffs, the CW defendants admit that the three defendant drivers' hours-of-service records and logbooks have been lost or destroyed. The plaintiffs seek an adverse inference instruction stating that if the records had been produced, they would show the CW defendants had a pattern or practice of violating federal hours-of-service rules. The plaintiffs also seek an order precluding Central Washington Asphalt ("CWA") from using the lack of records to argue that rules violations did not occur or that CWA had no knowledge of violations.

The CW defendants respond that they had no obligation to preserve the pre-accident records because the plaintiffs did not request these documents until their fourth request for production of documents, over two years after the complaint was filed. They also argue that they

were not on notice to preserve the pre-accident records because these records were not relevant to any claim or defense in the lawsuit until the plaintiffs moved to amend to add aiding and abetting claims against CWA in June 2014. The CW defendants also contend the pre-accident records were either (1) largely produced because the defendants produced 650 daily time sheets from 2009 and 2010 or (2) do not exist because drivers for CWA generally were not required to maintain logbooks, as most of the work was intra-state and within 100 miles of the port of origin. As for the logbooks from the date of the accident, the CW defendants argue that these logbooks are irrelevant to a claim that CWA engaged in a pattern or practice of hours-of-service violations before the accident. They thus contend the requested adverse inference instruction and request to preclude argument are unrelated to the alleged spoliated evidence.

The parties are familiar with the facts, so I will not repeat them here except where necessary. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Nat'l Consumer Mtg., LLC*, No. 2:10-cv-00930-PMP-PAL, 2011 WL 1300540, at *8 (D. Nev. Mar. 31, 2011). I have inherent power to sanction a party for spoliation of evidence. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

A party spoliates evidence "only if [it] had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)). "The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *In re Nat'l Consumer Mtg., LLC*, 2011 WL 1300540, at *8 (citing *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). Thus, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *see also In re Napster*, 462 F. Supp. 2d at 1070. However, a "party does not engage in spoliation when, without notice

of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business." *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009). The party seeking sanctions bears the burden of establishing spoliation by showing that the spoliating party (1) destroyed evidence and (2) had notice that the evidence was potentially relevant to the litigation before it destroyed the evidence. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015).

If I find spoliation, sanctions may include dismissal, excluding evidence, or giving an adverse inference instruction which imposes a rebuttable presumption that the destroyed evidence would have been detrimental to the destroying party. *See Unigard*, 982 F.2d at 368-69; *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380-81 (9th Cir. 1988). In choosing among sanctions, if any, I consider such circumstances as whether the destruction was inadvertent or willful; whether other evidence exists to establish the non-offending party's case; the effectiveness of various sanctions given the circumstances; the relationship between the misconduct and the matters in dispute in the action; and prejudice to the other party, including whether the other party had an opportunity to inspect the evidence prior to its destruction. *See Unigard*, 982 F.2d at 369; *Halaco Eng'g Co.*, 843 F.2d at 380-82. I "should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the other party." *Harfouche v. Stars On Tour, Inc.*, No. 2:13-cv-00615-LDG-NJK, 2016 WL 54203, at *3 (D. Nev. Jan. 5, 2016) (citing *In re Napster*, 462 F. Supp. 2d at 1066-67).

Dismissal is not an appropriate sanction unless I find "willfulness, fault, or bad faith." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quotation omitted). The plaintiffs do not seek dismissal or striking the defendants' answer. Excluding evidence may be an appropriate sanction where spoliation has prevented the other party from obtaining evidence, thereby making the presentation of a claim or defense impossible. *Unigard*, 982 F.2d at 369. Excluding evidence also may be appropriate where lesser sanctions would be futile or would fail to cure the prejudice. *Leon*, 464 F.3d at 960.

The sanction of an adverse inference instruction is based on the rationale that "a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Akiona*, 938 F.2d at 161 (quotation omitted). Additionally, the possibility of an adverse inference deters parties from destroying evidence and punishes those who do. *Id.* Destruction in the face of notice of potential relevance to the litigation suffices to support the sanction of an adverse inference. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). However, when a party loses relevant evidence "accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002). Therefore, an adverse inference sanction "should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386-87 (9th Cir. 2010). If appropriate under the circumstances, I may allow the sanctioned party to attempt to overcome the presumption by presenting evidence "giving a satisfactory explanation, even when there is actual tampering." *Wong v. Swier*, 267 F.2d 749, 759 (9th Cir. 1959); *but see Unigard*, 982 F.2d at 369 (distinguishing *Wong* and stating that in some cases the destruction of evidence may be so prejudicial that a rebuttable presumption is not a sufficient sanction).

### A. CWA Engaged in Spoliation

There is no dispute that CWA destroyed or failed to reasonably protect and preserve evidence. CWA's truck manager, Brett Wolfe, testified that the following records are lost or destroyed: (1) Hannon's hours-of-service records prior to December 2010, (2) supporting documentation (such as credit card or fuel receipts) for the three drivers' hours-of-service for the three years prior to the accident, (3) logbooks for each of the three drivers prior to December 2010, and (4) the logbooks from the date of the accident for each of the three drivers. (Dkt. #464-2 at 3-4, 13-16.)

CWA had notice that the evidence was potentially relevant to the litigation before it lost or destroyed it. The plaintiffs' counsel sent a letter to CWA on December 28, 2010 advising that counsel represented the plaintiffs in relation to the car accident. (Dkt. #464-10 at 4-5.) The letter stated that Hannon caused the accident, that Hannon was "driving in a convoy with other [CWA] vehicles" at the time of the accident, and that the CWA vehicles "fled the scene." (Dkt. #464-10 at 4-5.) The letter advised CWA to contact its insurers and legal representatives, and, if the plaintiffs did not hear from CWA within ten days, the plaintiffs would "file a lawsuit against Central Washington Asphalt and all involved." (Dkt. #464-10 at 5.)

Wolfe testified that he is not aware of any logbooks or hours-of-service records being destroyed between the time of the accident and the date CWA received the letter from the plaintiffs' counsel. (Dkt. #464-2 at 16.) Wolfe also testified that after receiving the letter, he made no effort to preserve the logbooks or hours-of-service records. (*Id.*) The logbooks were not destroyed pursuant to any procedure for document retention or destruction. (*Id.*) To the contrary, Wolfe testified that CWA never throws out logbooks. (Dkt. #464-7 at 3.) It is unclear when the hours-of-service records were lost or destroyed and whether they were destroyed pursuant to a document retention or destruction policy.

There is no question that CWA was on notice that the logbooks for the drivers for the date of the accident were relevant to anticipated litigation. The December 28 letter accused Hannon of causing the accident while driving a CWA truck, referenced all three drivers' pre- and post-accident conduct, and threatened a lawsuit against CWA and all involved. CWA thus knew or reasonably should have known that the three drivers' logbooks for the date of the accident would be relevant to anticipated litigation. The three drivers' activities leading up to and following the accident plainly would be relevant. CWA does not dispute that it engaged in spoliation by not preserving the logbooks from the date of the accident. I therefore find CWA spoliated the logbooks from the date of the accident.

However, CWA argues that it was not on notice that the pre-accident hours-of-service records and logbooks were relevant to anticipated litigation. CWA argues that the December 28

letter did not request a document hold and did not notify CWA that hours-of-service or fatigue were at issue. Additionally, it contends that no such claim was included in the original complaint. CWA asserts that it was not on notice of the relevance of the pre-accident logbooks and hours-of-service records until June 2014, when the plaintiffs first moved for leave to amend their complaints to add an aiding and abetting theory. Only then, CWA argues, would pre-accident records purportedly showing a pattern or practice of rules violations become relevant.

CWA views the relevance inquiry too narrowly. The standard requires only that the documents be "potentially" relevant to anticipated litigation. As of December 28, 2010, CWA knew that it was likely going to be sued based on its drivers' alleged conduct. Although the December 28 letter did not detail what claims the plaintiffs were contemplating, as the drivers' employer CWA could anticipate potential claims such as negligent entrustment and negligent supervision and training. The three drivers' pre-accident records were potentially relevant to a range of claims against CWA, as well as potential defenses for CWA, particularly given that CWA knew that its drivers were subject to safety rules that require these records be created and retained. (Dkt. #464-2 at 4-5, 11-13, 15.) The original complaint in this action alleged that "CWA had actual knowledge of the unsafe driving habits and practices of its drivers" and "deliberately and willfully endorsed and permitted its drivers . . . to operate their vehicles in an unsafe and dangerous fashion . . . ." (Dkt. #30 at 6.) CWA thus knew or should have known from the outset that the drivers' pre-accident records potentially were relevant to the claims and defenses in the litigation, even without an aiding and abetting claim. I therefore find CWA engaged in spoliation with respect to the pre-accident logbooks, hours-of-service records, and supporting documentation for the hours-of-service records.

### B. Appropriate Sanction

Having found CWA engaged in spoliation, I must determine the appropriate sanction. With respect to the logbooks from the date of the accident, I find the destruction was willful. Wolfe testified that the logbooks were in CWA's possession[1] and that CWA never destroys

---

[1] (Dkt. #464-2 at 4, 15.)

logbooks. CWA knew or should have known from at least the date of the December 28 letter that the drivers' logbooks for the day of the accident would be relevant to litigation. CWA has not offered any explanation for why those logbooks were not preserved. Because the logbooks were destroyed, the plaintiffs have never had an opportunity to examine them.

However, other evidence exists to establish the plaintiffs' contention that the drivers violated the hours-of-service regulation on the date of the accident. Goldsmith and Hannon both testified to violations. (Dkt. #464-3 at 5-8, 10-11; Dkt. #464-5 at 3-5.) The prejudice to the plaintiffs is therefore lessened, but it is not completely eliminated. Although Goldsmith and Hannon admitted to certain violations, the logbooks may have shown other violations as well. Because the plaintiffs are arguing that fatigue contributed to the accident, evidence of hours-of-service violations leading up to the accident would be important in the case.

As for the pre-accident hours-of-service records and logbooks, the destruction was at least negligent. As discussed above, CWA knew or should have known that its documentation supporting its drivers' records (created and maintained under federal safety rules) was potentially relevant to claims and defenses in litigation accusing one of its drivers of causing an accident. Additionally, because Wolfe testified logbooks are never destroyed, it is unclear why CWA has not been able to produce the logbooks. As for the hours-of-service records, it is possible those records were destroyed pursuant to a document retention policy, but I have no evidence of when the records were destroyed and whether they were in fact destroyed pursuant to such a policy.

As with the logbooks, other evidence exists to establish the plaintiffs' contention that the drivers had a history of hours-of-service violations because CWA produced the drivers' daily time sheets. In their reply, the plaintiffs have used those time sheets to identify numerous potential hours-of-service violations. (Dkt. Nos. 494-2, 494-3, 494-4.) However, these timesheets do not completely cure the prejudice to the plaintiffs. The logbooks and hours-of-service records may have provided additional information about when the drivers were actually driving, as opposed to performing other work that would not violate the hours-of-service rules. The pre-accident records thus are important to the plaintiffs' aiding and abetting and negligent entrustment

claims against CWA, and the plaintiffs may be prejudiced by having to "rely on incomplete and spotty evidence at trial." *Leon*, 464 F.3d at 959 (quotation omitted).

Accordingly, I find an adverse inference instruction is appropriate. Giving an adverse instruction is consistent with this sanction's evidentiary purpose because if CWA thought these records were helpful in defending claims against it, it would have kept those records even in the absence of the plaintiffs' request for them. Thus, the fact that the records are missing supports the inference that the records are not favorable to CWA. Additionally, the policy considerations of deterrence and punishment support an adverse inference instruction. I therefore will instruct the jury that CWA lost or destroyed the logbooks from the day of the accident, as well as pre-accident logbooks and hours-of-service records, at a time when it knew or should have known those documents were relevant to anticipated litigation. I will further instruct the jury that CWA's conduct creates a rebuttable presumption that if these documents had been produced, they would show information favorable to the plaintiffs and unfavorable to CWA.[2]

This adequately balances CWA's misconduct with the prejudice to the plaintiffs. The plaintiffs will be able to present to the jury evidence that CWA possessed logbooks and hours-of-service records, knew it was going to be sued, but nevertheless lost or destroyed that evidence. The instruction will create a presumption against CWA, but CWA will not be deprived of the opportunity to rebut that presumption if it can offer an explanation for the missing or destroyed records. (*See* Dkt. #480 at 6-11 for CWA's explanations for why records may have never existed, are not as extensive as the plaintiffs claim, or do not actually show hours-of-service violations).

I deny the plaintiffs' request that I instruct the jury to find that if the documents had been produced, they would show CWA and its three drivers had a pattern or practice of violating the hours-of-service rules. (*See* Dkt. #464 at 13.) First, the logbooks from the date of the accident do not support such an instruction because they would not show a pattern or practice. As for the pre-accident records, CWA has presented explanations that, if believed, would show some of the

---

[2] There is no evidence Hannon, Goldsmith, or Wentland engaged in spoliation. I therefore will confine the instruction to CWA.

missing records never existed, are of limited scope, or would rebut the conclusion that the records show actual hours-of-service violations. The jury will determine whether CWA can overcome the presumption.

Finally, I will not exclude arguments by the CW defendants that CWA lacked knowledge of a pattern of rules violations by its drivers. If CWA can offer explanations for the missing records and what those records would have shown, and a reasonable jury could credit those explanations, then a reasonable jury also may find that the plaintiffs have not met their burden of proving CWA's knowledge.

### C. Conclusion

IT IS THEREFORE ORDERED that the plaintiffs' motion for evidentiary sanctions due to spoliation **(Dkt. #464) is GRANTED in part and DENIED in part.**

DATED this 7th day of March, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE