1  Timothy G. Tietjen, Esq.
   California Bar No. 104975
2  **ROUDA, FEDER, TIETJEN & McGUINN**
   44 Montgomery Street, Suite 4000
3  San Francisco, California 94104
   *Telephone:* 415-398-5398
4  *Facsimile:* 415-398-8169

5
   Timothy O'Reilly, Esq.
6  Nevada Bar No. 8866
   **O'REILLY LAW GROUP**
7  325 South Maryland Parkway
   Las Vegas, Nevada 89101
8  *Telephone:* 702-382-2500
   *Facsimile:* 702-382-6266
9

10 Attorneys for Plaintiffs

11                    **UNITED STATES DISTRICT COURT**

12                          **DISTRICT OF NEVADA**

13
   WILLIAM TERRELL, Guardian Ad Litem for    )    **NO.  2:11-cv-00142-APG-VCF**
14 QUENTIN SLAGOWSKI, a minor; ANIKA         )
   SLAGOWSKI, a minor; and ROWAN            )
15 SLAGOWSKI, a minor; the ESTATE OF JON     )    **ORDER GRANTING PETITION FOR**
   MICHAEL SLAGOWSKI, by and through its     )    **APPROVAL OF MINORS'**
16 personal representative, PATRICIA DEAN,    )    **COMPROMISE OF DISPUTED**
                                             )    **ACTION**
17                                           )
                     Plaintiffs,             )    (ECF No. 517)
18 vs.                                       )
                                             )
19 CENTRAL WASHINGTON ASPHALT, INC.;         )
20 DONALD HANNON;  and DOES 1 through 25,     )
   inclusive,                                )
21                                           )
                     Defendants.             )
22 _____   )

23
          Plaintiffs Quentin Slagowski, Anika Slagowski, and Rowan Slagowski, minors, through
24
   their Guardian Ad Litem William Terrell, and the Estate of Jon Michael Slagowski by and through
25
   its personal representative, Patricia Dean, have petitioned the Court for approval of a proposed
26
   compromise of a pending action involving the three minor plaintiffs.  ECF No. 517.  All notices
27

28
                                              1

1    required by law have been given and no opposition has been filed.  Good cause exists to grant the

2    petition.  Accordingly,

3           IT IS HEREBY ORDERED as follows:

4           1.      The Petition **(ECF No. 517) is GRANTED** and the proposed compromise of the

5    minor plaintiffs' claims is approved. The gross amount of the settlement is $5,000,000.00.

6           2.      The Court approves the distribution of attorneys' fees and costs to plaintiffs'

7    counsel as set forth in the Petition: $284,693 for advanced costs and $1,886,122.80 in fees (40% of

8    net settlement).

9           3.      The balance of the settlement proceeds of $2,829,184 shall be equally divided

10   among the three minor children, i.e., $943,061.33 per child.

11          4.      A structured settlement at a cost of $800,000 per child is approved per the terms

12   and conditions set forth in Exhibit 1, the Settlement Agreement and Release, incorporated herein

13   by this reference.

14          5.      The remaining cash balance of $143,061.33 per child shall be deposited in the

15   children's accounts at First Federal Bank in Twin Falls, Idaho. Usage and withdrawal of any of

16   these sums are subject to the terms and conditions of the Protective Order entered into by the Fifth

17   Judicial District of the State of Idaho in and for the County of Twin Falls, dated September 22,

18   2015, Case No. CV42-15-3103, a copy of which is incorporated herein and attached as Exhibit 2.

19          6.      Within 45 days of this Order, Petitioner and Timothy G. Tietjen, Esquire shall file

20   with this Court proof that the minors' funds have been deposited into their accounts at First

21   Federal Bank in Twin Falls, Idaho.

22          7.      The settling parties' counsel shall submit appropriate dismissal papers promptly

23   after payment of the agreed settlement amount.

24          DATED this 18th day of July, 2016.

25                                                          _____

26                                                          ANDREW P. GORDEN
                                                            UNITED STATES DISTRICT JUDGE

27

28

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into among: (a) Quentin Slagowski, a minor, Anika Slagowski, a minor, and Rowan Slagowski, a minor, by and through their Guardian Ad Litem, William Terrell (collectively, the "Slagowski Plaintiffs"); (b) the Estate of Jon Michael Slagowski, by and through its personal representative, Patricia Dean (the "Estate;" together with the Slagowski Plaintiffs, the "Slagowski Parties"); (c) Central Washington Asphalt, Inc. ("CWA"); (d) Donald Frank Hannon ("Hannon"); (e) James Wentland ("Wentland"); (f) Jerry Goldsmith ("Goldsmith;" collectively, with CWA, Hannon and Wentland, the "CWA Parties"); and (h) Great American Insurance Company ("Insurer"), solely in its capacity as a party funding certain settlement payments. The Slagowski Parties and the CWA Parties are hereinafter referred to as the "Parties" and each may be referred to individually as a "Party."

## RECITALS

WHEREAS, a motor vehicle accident occurred on or about December 12, 2010 in Nye County, Nevada (the "Accident"), in which Jon Michael Slagowski ("Mr. Slagowski') was fatally injured;

WHEREAS, Quentin Slagowski, Anika Slagowski and Rowan Slagowski are Mr. Slagowski's minor children and heirs.

WHEREAS, Patricia Dean was appointed as the personal representative of the Estate by Letters of Administration and Oath entered on December 30, 2010 in the matter captioned *In the Matter of the Estate of Jon Michael Slagowski, Deceased*; CV-2010-6076; in the District Court of the Fifth Judicial District of the State of Idaho, in and for the County of Twin falls, Magistrate Division;

WHEREAS, in connection with the Accident, a lawsuit was filed on or about June 9, 2011 in the United States District Court, District of Nevada, that, as amended, is, at the time of this Agreement, captioned *William Terrell, Guardian Ad Litem for Quentin Slagowski, a minor, Anika Slagowski, a minor, and Rowan Slagowski, a minor; the Estate of Jon Michael Slagowski, by and through its personal representative, Patricia Dean v. Central Washington Asphalt, Inc., Donald Hannon, James Wentland, Jerry Goldsmith and Does 1 through 25, inclusive*; 2:11-cv-00142-APG-VCF (the "Action");

WHEREAS, the Slagowski Plaintiffs and the Estate each sought the recovery of monetary damages in the Action;

WHEREAS, each of the CWA Parties was named as a Defendant in the Action;

WHEREAS, the CWA Parties brought a third-party complaint in the Action against third-party Defendants Mitchell Forrest Zemke, Chip Fenton and Fenton Trucking, LLC (the "Named Third-Party Defendants");

WHEREAS, by Order entered in the Action on March 8, 2013 [Dkt. # 71], William Terrell was appointed as Guardian Ad Litem for each of the Slagowski Plaintiffs;

WHEREAS, the Parties have reached a settlement regarding the Slagowski Parties' claims in the Action, the terms of which are set forth in this Agreement.

## **TERMS OF AGREEMENT**

For and in consideration of the foregoing premises, the following terms and conditions, mutual promises, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.      **Court Approval**.  All terms and conditions herein are subject to and contingent upon the entry of an order approving the settlement of the Slagowski Plaintiffs' claims (the "Approval Order").

2.0.    **Releases**.  In consideration of the settlement payments provided for in Section 3 of this Agreement, the Slagowski Parties shall release the CWA Parties as follows:

2.1     **Release of CWA by the Slagowski Plaintiffs**.  Plaintiffs Quentin Slagowski, a minor, Anika Slagowski, a minor, and Rowan Slagowski, a minor, by and through their Guardian Ad Litem, William Terrell (the "Slagowski Releasors), on behalf of themselves and each of their respective heirs, executors, administrators, attorneys-in-fact, representatives, agents, successors and assigns (collectively, the "Slagowski Releasor Affiliates"), hereby release and forever discharge CWA and its assigns, subsidiaries, parents, joint venturers, and affiliates, and each of their managers, officers, directors, shareholders, agents, heirs, successors, insurers, including but not limited to Great American Insurance Company and The Travelers Indemnity Company, attorneys and employees (collectively, the "CWA Affiliates"), from and against any and all claims, damages, demands, actions or causes of action or suits in law or equity of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, now existing or hereafter arising and whether based in tort, contract, violation of federal, state or local law or ordinance or otherwise, arising out of or related in any way to the Accident, the Action or any of those matters and things that were or are the subject matter of the Action, or which could have been asserted as claims or counterclaims in the Action, and from any and all claims or demands whatsoever in law or equity which the Parties, or any Party, has, had or may have by reason of any other matter, cause or thing whatsoever occurring or arising from the beginning of time through and to the Effective Date of this Agreement (the "Released Claims").

3

**2.2** __Release of Hannon, Wentland and Goldsmith by the Slagowski Plaintiffs__. The Slagowski Releasors and the Slagowski Releasor Affiliates hereby release and forever discharge Hannon, Wentland and Goldsmith (collectively, the "Driver Defendants") and each of their respective heirs, executors, administrators, attorneys-in-fact, employers, insurers representatives, agents, successors and assigns (collectively, the "Driver Defendant Affiliates") from and against any and all Released Claims.

**2.3** __Release of CWA by the Estate__.  The Estate, on behalf of itself and each of its respective heirs, executors, administrators, representatives, agents, successors and assigns (collectively, the "Estate Releasors") hereby releases and forever discharges CWA and the CWA Affiliates from and against any and all Released Claims.

**2.4** __Release of Hannon, Wentland and Goldsmith by the Estate__.  The Estate and the Estate Releasors hereby release and forever discharge the Driver Defendants and the Driver Defendant Affiliates from and against any and all Released Claims.

**2.5** __Release of Named Third-Party Defendants by the Slagowski Parties__.  As additional consideration, and as a material part of this Agreement, the Estate, the Estate Releasors, the Slagowski Releasors and the Slagowski Releasor Affiliates acknowledge and agree that the settlement payments herein fully extinguish the liability of every party, tortfeasor, potential tortfeasor and third-party defendant, including Chip Fenton, Fenton Trucking and all other Named Third-Party Defendants, that is named or could have been named in the Action, for the injuries sustained and damages sought by the Slagowski Parties, and nothing in this Agreement shall be construed to limit, preclude or extinguish any contribution or equitable indemnity claims that has been and/or may be pursued by the CWA Parties in connection with the Action.

**3.0**.   **Payments**.   In consideration of the releases set forth above, the CWA Parties, through the Insurer, shall pay or cause to be paid the sums in the manner described below:

**3.1**   **Lump Sum Payment**.   Within thirty (30) days of entry of the Approval Order, the CWA Parties, by and through the Insurer, shall pay or cause to be paid the sum of Two Million Six Hundred Thousand Dollars ($2,600,000.00) to the attorney trust account of Rouda, Feder, Tietjen & McGuinn (the "Lump Sum Payment").

**3.2**   **Periodic Payments**.   The CWA Parties, by and through the Insurer, shall cause periodic payments to be made according to the following schedule (the "Periodic Payments") to the individuals designated below and, in the case of any payment to be made following the death of any such individual, to such individual's Contingent Beneficiary, as designated under Section 4.5 of this Agreement (each individual designated below and each such Contingent Beneficiary being hereinafter referred to as a "Payee"):

**3.2.1**   **Quentin Slagowski**.   Periodic Payments to Quentin Slagowski shall be made as follows:

- $11,000.00 payable annually, guaranteed for 5 years, beginning on 08/15/2016 with the last payment on 08/15/2020.  Payments will increase at a rate of 4.00% annually.
- $11,000.00 payable annually, guaranteed for 5 years, beginning on 01/15/2017 with the last payment on 01/15/2021.  Payments will increase at a rate of 4.00% annually.
- $750.00 payable monthly, guaranteed for 8 years, beginning on 09/01/2016 with the last payment on 08/01/2024.
- $100,000.00 guaranteed lump sum payable on 08/10/2023.
- $250,000.00 guaranteed lump sum payable on 08/10/2028.
- $596,156.83 guaranteed lump sum payable on 08/10/2033.

**3.2.2**   <u>**Anika Slagowski**</u>.   Periodic Payments to Anika Slagowski shall be made as follows:

- $12,600.00 payable annually, guaranteed for 5 years, beginning on 08/15/2019 with the last payment on 08/15/2023.  Payments will increase at a rate of 4.00% annually.

- $12,600.00 payable annually, guaranteed for 5 years, beginning on 01/15/2020 with the last payment on 01/15/2024.  Payments will increase at a rate of 4.00% annually.

- $780.00 payable monthly, guaranteed for 8 years, beginning on 09/01/2019 with the last payment on 08/01/2027.

- $150,000.00 guaranteed lump sum payable on 11/15/2025.

- $250,000.00 guaranteed lump sum payable on 11/15/2030.

- $616,003.73 guaranteed lump sum payable on 11/15/2035.

**3.2.3**   <u>**Rowan Slagowski**</u>.   Periodic Payments to Anika Slagowski shall be made as follows:

- $13,800.00 payable annually, guaranteed for 5 years, beginning on 08/15/2021 with the last payment on 08/15/2025.  Payments will increase at a rate of 4.00% annually.

- $13,800.00 payable annually, guaranteed for 5 years, beginning on 01/15/2022 with the last payment on 01/15/2026.  Payments will increase at a rate of 4.00% annually.

- $810.00 payable monthly, guaranteed for 8 years, beginning on 09/01/2021 with the last payment on 08/01/2029.

- $165,000.00 guaranteed lump sum payable on 08/02/2027.

- $265,000.00 guaranteed lump sum payable on 08/02/2032.

- $648,132.27 guaranteed lump sum payable on 08/02/2037.

All payments provided for in Section 3.2 constitute damages on account of personal physical injuries and/or physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

**4.0**     **Terms and Conditions Related to the Periodic Payments.**

**4.1**     **Modification or Transfer of Payment Rights.**     The Slagowski Plaintiffs acknowledge and agree that neither the Periodic Payments nor any rights thereto or interest therein (collectively, " Payment Rights") can be (i) accelerated, deferred, increased or decreased by such Slagowski Plaintiff or any other Payee; or  (ii) sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, by such Slagowski Plaintiff or any other Payee. No Slagowski Plaintiff or other Payee shall have the power to effect, directly or indirectly, any such sale, assignment, pledge, hypothecation, transfer or encumbrance. Any purported sale, assignment, pledge, hypothecation, transfer or encumbrance of Payment Rights by any Slagowski Plaintiff or other Payee shall be wholly void.

**4.2**     **Annuity Purchase.**     The Insurer or, in the event of a qualified assignment (as provided in Section 4.3 below), the Assignee, may fund the obligation to make the Periodic Payments through the purchase of an annuity contract from Pacific Life Insurance Company (the "Annuity Issuer").   The Insurer or, if applicable, Pacific Life and Annuity Services, Inc., the Assignee shall be the sole owner of any such annuity contract and shall have all rights of ownership and control of such annuity contract.  The Insurer or the Assignee, as applicable, may have the Annuity Issuer mail payments directly to any Payee or deliver payments by electronic funds transfer to an insured deposit account in the Payee's name at an FDIC-insured institution in the United States.  Each Payee shall at all times keep the Annuity Issuer apprised of such Payee's current street address and telephone number and, if such Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the Payee's depository institution and the account number of the Payee's account at such institution.

7

The Slagowski Plaintiffs are hereby notified that a portion of any money spent to purchase an annuity or other asset to fund a structured settlement may be used by the issuer of such annuity or other funding asset to pay commissions or other fees.

**4.3** **Consent to Qualified Assignment**. Each Slagowski Plaintiff acknowledges and agrees that the Insurer may make a "qualified assignment," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the obligation to make the Periodic Payments to Pacific Life and Annuity Services, Inc. (the "Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Insurer immediately preceding the assignment of the Periodic Payments obligation.

Any such assignment, if made, shall be accepted by each Slagowski Plaintiff without right of rejection and shall completely release and discharge the Insurer from any and all obligations to make the Periodic Payments. Each Slagowski Plaintiff recognizes and acknowledges that in the event of such an assignment, the Insurer shall have no further obligation to make any of the Periodic Payments. If so requested by the Insurer each Slagowski Plaintiff shall execute the qualified assignment to confirm such Slagowski Plaintiff's acceptance of the assignment and such Slagowski Plaintiff's release and discharge of the Insurer.

**4.4** **Discharge of Obligation**. The obligation of the Insurer or the Assignee to make each Periodic Payment to the Payee designated to receive such payment shall automatically be discharged upon the mailing of a valid check in the amount of such payment to the address of such Payee most recently designated pursuant to Section 4.5 of this Agreement or upon completion of an electronic funds transfer in the amount of such payment to the deposit account of such Payee most recently designated pursuant to Section 4.5 of this Agreement.

**4.5**    **Contingent Beneficiaries**.  Any payments to be made after death of any Payee pursuant to the terms of this Agreement shall be made to such party (the "Contingent Beneficiary") as shall have been designated in writing to the Insurer or the Assignee, as applicable, by a Payee authorized to make such designation.  If no such Contingent Beneficiary has been designated, or if no such Contingent Beneficiary is living at the time of a Payee's death, payments shall be made to the estate of the deceased Payee.  No designation of a Contingent Beneficiary and no revocation of any such designation, shall be effective unless it is in writing, in a form acceptable to the Insurer or the Assignee, as applicable, duly executed by the Payee and delivered to the Insurer or Assignee, as applicable.  Unless otherwise expressly provided in this Settlement Agreement, any designation of a Contingent Beneficiary made by a Payee shall be deemed to be revocable, and no party designated as a Contingent Beneficiary by any Payee shall, by virtue of such designation, be deemed to have any cognizable interest in any Periodic Payments prior to the death of the Payee that has designated such party as a Contingent Beneficiary.

**4.6**    **Periodic Payment Delays**.  Periodic Payments to a Payee may be delayed if (i) such Payee fails to provide the Annuity Issuer with current address or banking information, as required under Section 4.2 of this Settlement Agreement, or (ii) if a Payee dies and the Annuity Issuer does not receive appropriate written direction from the contingent beneficiary designated under Section 8 of this Settlement Agreement (including, if the contingent beneficiary is the estate of the deceased Payee, letters of appointment or equivalent proof of the authority of the executor, personal representative or administrator of the estate).

**5.**    **Dismissals**.  Within ten (10) days of receipt of the Lump Sum Payment, the Slagowski Parties shall cause their respective causes of action against the CWA Parties to be

dismissed with prejudice by filing a Stipulation of Dismissal in accordance with Rule 41 of the Federal Rules of Civil Procedure.

6. **Compromise of All Matters**. The Slagowski Parties expressly waive and assume the risk of any and all claims for damages which exist as of this date, and of which the Slagowski Parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the Slagowski Parties' decision to enter into this Agreement. The Slagowski Parties further agree that the Slagowski Parties have accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact. The Slagowski Parties assume the risk that the facts or law may be different from what the Slagowski Parties believe.

7. **Discharge and Release of Liens**. The Slagowski Parties discharge and release any and all liens, whether actual or asserted, present or prospective, including but not limited to any claims, causes of action or rights to attorney's fees, medical liens, interest and costs incurred. It is further understood and agreed that the CWA Parties and their insurers shall be held harmless of and from and indemnified for and against all losses, damages, costs and expenses, including attorney fees, workers compensation fees, benefits or liens, Medicare or Medicaid benefits, now or in the future, and all other sums which the CWA Parties, their insurers, and all of their associated or related companies, subsidiaries and parent corporations, including all owners, employees, agents and representatives, may hereafter incur, pay, be required, obligated, or called-upon to pay on account of and each and every further, additional, or other demand, claim or suit by or on behalf of the Slagowski Parties.

8. **Representation Regarding Medicare**. The Slagowski Parties represent and warrant that each of them are not Medicare beneficiaries, nor do they reasonably anticipate that

10

they will become a Medicare beneficiary within thirty (30) months from the date of this Agreement. Medicare has not paid any medical expense purportedly related to the Accident or Action, and the Slagowski Parties will not seek payment of medical expenses by Medicare for any injuries. The Slagowski Parties acknowledge that they have duly considered Medicare's interests in accordance with applicable law and they are responsible for identifying any existing Medicare or other liens or conditional payments relating to injuries, and for advising the CWA Parties of the amount of such liens or conditional payments, including providing a copy of the Centers for Medicare & Medicaid Services' Final Demand letter, but because the Slagowski Parties are not and do not anticipate being eligible for Medicare or Medicaid in the next 30 months, there are no such conditional payments.

9.     **Compromise of Disputed Claim**.  It is further understood that this Agreement is a compromise of a disputed claim and execution of this Agreement is not to be construed as an admission of liability on the part of any Party hereby released and that said Parties each deny liability therefore and intend merely to avoid further litigation.   To the extent necessary, however, the CWA Parties acknowledge that for purposes of any existing or potential third-party claim, the CWA Parties may be considered tortfeasors and/or joint tortfeasors in connection with any other party or parties that may be liable to the CWA Defendants for the Slagowski Parties' claims against them.

10.     **Severability**.  If any provision in the Agreement shall, for any reason, be held invalid or unenforceable in any respect, it shall not affect any other provisions in the Agreement, but shall be construed by limiting it so as to be enforceable to the maximum extent compatible with applicable law.

11.     **Entire Agreement**.  This Agreement contains the entire agreement among the Parties regarding the matters addressed herein, and supersedes any prior offer of settlement, negotiation, representation, promise, or warranty (oral or otherwise) made by any Party or counsel for any Party.  No party shall be liable or bound to any other Party for any prior offer of settlement, negotiation, representation, promise or warranty (oral or otherwise) except for those expressly set forth in this Agreement.

12.     **Binding Nature of Agreement**.  This Agreement shall be binding on, and shall inure to the benefit of, the Parties and their respective legal representatives, successors, heirs, parents, affiliates or permitted assigns.

13.     **Fees or Costs for Enforcement**.  In the event that any Party shall commence any legal proceeding seeking to interpret or enforce this Agreement, the prevailing Party in such action shall be entitled to recover its costs and expenses associated therewith, including without limitation, its reasonable attorneys' fees from the non-prevailing Party.

14.     **Representations and Warranties**.  Each Party represents and warrants as follows: (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and all documents required to be executed and delivered by it hereunder, and to fulfill its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby; (ii) the making and performance by it of this Agreement does not and will not violate any law or regulation of the jurisdiction under which it is formed or incorporated, any other law or regulation applicable to it or any agreement to which it is a party or by which it is bound; (iii)  this Agreement has been duly executed and delivered by it and constitutes its legal, valid and binding obligations, enforceable in accordance with the terms hereof; and (iv) all approvals, authorizations or other actions by, or filings with, any

governmental authority necessary for the validity or enforceability of its obligations under this Agreement, and all documents required to be executed and delivered by it hereunder, have been obtained.

      **15.**    **Consultation with Counsel**. The Parties represent that their respective counsel of record have explained the effect of a release of all claims, known or unknown and, based upon that explanation and their independent judgment by the reading of this Agreement, the Parties to this Agreement understand and acknowledge the legal significance and the consequences of the claims being released by this Agreement. The Parties further represent that they understand and acknowledge the legal significance and consequences of a release of unknown claims against any Party related to the Litigated Claims and/or for any claims or issues against any Party set forth in, or arising from, the Litigated Claims and each Party hereby assumes full responsibility for any injuries, damages, losses or liabilities that he, she or it may incur in the future arising from, or in any manner related to, the matters, issues and claims released by this Agreement, and hereby expressly waive and release any and all claims against any other Party for any such future injuries, damages, losses or liabilities.

      **16.**    **Covenant Not to Sue**. The Parties covenant and agree they will forever refrain from instituting, prosecuting, maintaining, proceeding on or advising to be commenced a suit against each other which arises out of, or is or may be, in whole or in part, based upon, related to, or connected with the claims or issues in this Agreement, except any such claim to enforce the terms and conditions of this Agreement.

      **17.**    **Waiver**. The Parties hereby waive any and all rights that they may have under the provisions of any rule of law that may be adopted by the State of Nevada that provides that a release does not extend to claims that are unknown or unsuspected at the time of executing the

Agreement, which if known would have materially affected the provisions of the Agreement. The Parties acknowledge and agree that this waiver is an essential and material term of the Agreement and without such waiver the Settlement Payment and releases that constitute the consideration for the Agreement would not have been made.

17.1   The delay or failure of any Party to exercise any of its rights herein shall not be deemed by any other party to constitute a waiver of such rights, unless the Party possessing such rights has clearly and expressly given notice in writing to the contrary to all other parties hereto.

17.2   The waiver by any Party of any breach of this Agreement by another Party shall not operate as a waiver of any subsequent breach.

18.   **Governing Law**.  This Agreement and any dispute arising out of or related to the Agreement shall be governed by the laws of the State of Nevada, without regard to the choice of law rules thereof.

19.   **Counterparts**.  This Agreement may be executed in one or more counterparts and transmitted by facsimile or electronically in .pdf format, each of which shall be deemed an original and, when taken together, shall constitute one fully-executed Agreement.

20.   **No Amendment or Modification**.  This Agreement may not be supplemented, changed, waived, discharged, terminated, modified or amended except by written instrument executed by all of the Parties.

21.   **Captions**.  Underlined captions are for ease of reference only, and shall not be relied upon or referenced to in the interpretation or construction of this Agreement.

22.     **Effective Date**.  The effective date of this Agreement shall be the date the last Party hereto executes this Agreement, as evidenced by the latest dated signature (the "Effective Date").

**(Signatures on Following Page)**

**IN WITNESS WHEREOF,** this Agreement is entered into as of the Effective Date.

THE PARTIES HEREBY CERTIFY THAT THEY HAVE READ ALL OF THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND FULLY UNDERSTAND THE SAME, AND IN WITNESS THEREOF, SETTLING PARTIES HAVE EXECUTED THIS AGREEMENT IN THE PLACES AND ON THE DATES SET FORTH OPPOSITE THEIR RESPECTIVE SIGNATURES BELOW.

Dated:_____     THE ESTATE OF JON MICHAEL SLAGOWSKI

By:_____
        PATRICIA DEAN, Personal Representative

Dated:_____     QUENTIN SLAGOWSKI

By:_____
        WILLIAM TERRELL, as Guardian Ad Litem
        for Quentin Slagowski, a Minor

Dated:_____     ANIKA SLAGOWSKI

By:_____
        WILLIAM TERRELL, as Guardian Ad Litem
        for Anika Slagowski, a Minor

Dated:_____     ROWAN SLAGOWSKI

By:_____
        WILLIAM TERRELL, as Guardian Ad Litem
        for Rowan Slagowski, a Minor

Dated:_____     WILLIAM TERRELL

By:_____
        WILLIAM TERRELL, individually

Dated:_____     CENTRAL WASHINGTON ASPHALT, INC.

By:_____
        PAMP MAIERS, JR., PRESIDENT

Dated:_____          DONALD FRANK HANNON

                                  By:_____


Dated:_____          JAMES WENTLAND

                                  By:_____


Dated:_____          JERRY GOLDSMITH

                                  By:_____


Dated:_____          GREAT AMERICAN INSURANCE COMPANY

                                  By:_____

                                  Its:_____

17

# EXHIBIT 2

C O P Y

**Daniel S. Brown**
**Greg J. Fuller**
**FULLER LAW OFFICES**
Attorneys at Law
161 Main Avenue West
P. O. Box L
Twin Falls, ID 83303
Telephone: (208) 734-1602
Facsimile : (208) 734-1606
ISB #7538
ISB #1442

Attorneys for Petitioner

DISTRICT COURT
TWIN FALLS CO. IDAHO
FILED

2015 SEP 22 PM 1: 00

BY_____
                    CLERK
_____DEPUTY

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF TWIN FALLS

\* \* \* \* \*

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. CV42-15-3103 |
| | ) | |
| QUENTIN SLAGOWSKI, | ) | **PROTECTIVE ORDER** |
| ANIKA SLAGOWSKI, and | ) | |
| ROWAN SLAGOWSKI, | ) | |
| | ) | |
| | ) | |
| Minors. | ) | |
| | ) | |

\* \* \* \* \*

This matter came before the Court on the 11th day of September, 2015.   The

Petitioner, Candace Slagowski, was present and represented by her attorneys of record, Fuller

Law Offices.

PROTECTIVE ORDER - 1

The Court having heard argument and good cause appearing therefore,

IT IS HEREBY ORDERED AS FOLLOWS:

1. That Candace Slagowski is hereby appointed as guardian of the Estate of the minors, Quentin Slagowski,  Anika Slagowski, and Rowan Slagowski, relative to life insurance proceeds;

2. That Candace Slagowski shall apply the insurance proceeds to the support and education of the minors.  No funds shall be distributed before the minor childrens' eighteenth birthday, unless related to the minors' support or education or otherwise provided for in this Order.  Petitioner will not pay herself except by way of reimbursement for out-of-pocket expenses for goods and services necessary for the minors' support and/or education. Any excess sums shall be preserved for future support of the minors and any balance not so used and any property received for the minors will be turned over to the minors when they attain majority pursuant to Idaho Code Section 15-5-103;

3. That Candace Slagowski shall have the authority to invest the settlement proceeds at a bank of her choosing into either an interest bearing account or certificate of deposit, or in the alternative, deposit said funds with a certified/licensed financial investor for the benefit of the children.  The insurance proceeds shall be split into thirds and separate accounts shall be maintained for each of the minor children; and

4. That Candace Slagowski shall provide an annual accounting to the Court relative to any expenditures from the insurance proceeds.  Candace Slagowski shall maintain written receipts and records of all expenditures made on behalf of the minor

PROTECTIVE ORDER - 2

children, including those expenditures for which reimbursement is sought.  Candace

Slagwoski is specifically authorized to retain legal counsel for the minor children, if

necessary.  In addition, Candace Slagwoski shall reimburse the costs and attorneys fees

incurred in this matter.

DATED this 22 day of September, 2015.


CALVIN H. CAMPBELL
Magistrate


PROTECTIVE ORDER - 3